No. 23-10718

---

## IN THE UNITED STATES COURT OF
## APPEALS FOR THE FIFTH CIRCUIT

---

Jennifer VanDerStok; Michael G. Andren; Tactical Machining, L.L.C., a limited liability company; Firearms Policy Coalition, Incorporated, a nonprofit corporation,

*Plaintiffs-Appellees,*

Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms; Defense Distributed; Second Amendment Foundation, Incorporated; Not An L.L.C., doing business as JSD Supply; Polymer80, Incorporated,

*Intervenor Plaintiffs-Appellees,*

v.

Merrick Garland, U.S. Attorney General; United States Department of Justice; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Bureau of Alcohol, Tobacco, and Firearms, and Explosives,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Northern District of Texas

---

## RESPONSE IN OPPOSITION TO EMERGENCY MOTION PURSUANT
## TO CIRCUIT RULE 27.3 FOR STAY PENDING APPEAL

Cody J. Wisniewski
FPC Action Foundation
550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
(916) 517- 1665
cwi@fpchq.org

David H. Thompson
*Counsel of Record*
Peter A. Patterson
William V. Bergstrom
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs – Appellees*

# CERTIFICATE OF INTERESTED PERSONS

*VanDerStok v. Garland*, No. 23-10718

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| *Plaintiffs-Appellees* | *Counsel for Plaintiffs-Appellees* |
|---|---|
| Jennifer VanDerStok | David H. Thompson |
| | Peter A. Patterson |
| Michael G. Andren | William V. Bergstrom |
| | COOPER & KIRK, PLLC |
| Tactical Machining, L.L.C., a limited | |
| liability company | Richard Brent Cooper |
| | Benjamin David Passey* |
| Firearms Policy Coalition, | COOPER & SCULLY, P.C. |
| Incorporated, a nonprofit corporation | |
| | Brian A. Abbas* |
| | Erin M Erhardt* |
| | MOUNTAIN STATES LEGAL FOUNDATION |
| | |
| | Cody J. Wisniewski* |
| | FPC ACTION FOUNDATION |
| | |
| | Kaitlyn D. Schiraldi* |
| | NEW CIVIL LIBERTIES ALLIANCE |

| Intervenor Plaintiffs-Appellees | Counsel for Intervenor Plaintiffs-Appellees |
|---|---|
| Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms<br><br>Defense Distributed<br>Second Amendment Foundation, Incorporated<br><br>Not An L.L.C., doing business as JSD Supply<br><br>Polymer80, Incorporated | Brian Daniel Poe<br>BRIAN D. POE, ATTORNEY AT LAW PLLC<br><br>Joseph Christopher Amrhein, Jr.*<br>Michael J. Sullivan*<br>Nathan P. Brennan*<br>ASHCROFT LAW FIRM, LLC<br><br>Chad Flores, Esq.<br>FLORES LAW, PLLC<br><br>Nicholas Bruno<br>BECK REDDEN LLP<br><br>Zachary Nelson*<br>LATHAM & WATKINS LLP<br><br>Matthew Joseph Smid<br>EVANS, DANIEL, MOORE, EVANS, BIGGS, & SMID<br><br>J. Mark Brewer*<br>BREWER & PRITCHARD, P.C.<br><br>Dennis Daniels<br>James W. Porter*<br>Marc A. Nardone*<br>BRADLEY ARANT BOULT CUMMINGS, L.L.P. |
| Defendants-Appellants | Counsel for Defendants-Appellants |

| | |
|---|---|
| Merrick Garland, in his official capacity as Attorney General of the United States<br><br>United States Department of Justice<br><br>Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives<br><br>Bureau of Alcohol, Tobacco, Firearms and Explosives | Sean Janda<br>Daniel M. Riess<br>Jeremy S.B. Newman*<br>Martin M. Tomlinson*<br>Taisa M. Goodnature*<br>U.S. DEPARTMENT OF JUSTICE |

Attorneys whose names are denoted with an asterisk entered appearances in the district court but have not entered appearances in the Fifth Circuit.

Dated: July 20, 2023

s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellees*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .................................................................................................1

STATEMENT ......................................................................................................2

  I.  Statutory Background ...................................................................................2

  II.  Plaintiffs..........................................................................................................6

  III.  Procedural History ......................................................................................7

ARGUMENT ......................................................................................................7

  I.  The District Court's Ruling Is Likely to Be Affirmed. ...................................8

    A. The Final Rule Is Inconsistent With the Statute.........................................8

      1.  "Frame or Receiver" .........................................................................8

      2.  Weapons Part Kits..........................................................................11

    B. Vacatur Was the Appropriate Remedy.....................................................13

  II.  The Remaining Factors Favor a Stay ...........................................................16

CONCLUSION ...................................................................................................17

## INTRODUCTION

The district court correctly held that a new rule, promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), which greatly expanded the regulatory purview of the agency beyond what any statute authorizes, was invalid under the Administrative Procedure Act ("APA") and therefore, according to this Circuit's default rule, subject to vacatur. That decision was correct and, as such, this Court should decline to stay the judgment pending appeal.

This case involves a Department of Justice ("DOJ") and ATF rule that expanded the definition of "firearm" under key provisions of federal law to encompass things that *cannot* be considered firearms under the governing statute. For more than four decades, ATF uniformly construed the Gun Control Act of 1968 to permit it to regulate as "firearms" the "frames or receivers of any weapon" (the lower portions of handguns and rifles that form the "base" of a firearm) or any weapon that may be readily converted to fire projectiles. At the same time, ATF has *not* treated anything that may readily be converted to become a "frame or receiver" as a firearm, nor has it construed the Gun Control Act to permit regulation of parts of a weapon *other than* the frame or receiver. In August 2022, that changed when ATF promulgated a rule: *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) ("the Final Rule"). The Final Rule

reversed these two positions and overnight declared thousands of items that had never before been "firearms" under federal law to be exactly that.

The district court correctly held that this action was taken in excess of statutory authority; the plain text of the Gun Control Act is antithetical to the Final Rule, and the district court persuasively explained why common canons of statutory construction require a finding that the Final Rule was invalid agency action. The appropriate remedy for an agency rulemaking in excess of its authority is vacatur of the challenged rule and, after correctly assessing the degree of disruption that would be caused by a return to the pre-August 2022 status quo (and finding any disruption would be slight) the district court correctly ordered the rule be vacated. Because both of these decisions align with the statutory text and this Court's precedents, and because the balance of harms favors Plaintiffs, this Court should deny the Government's motion for a stay pending appeal. If the Court does grant the Government's motion, in light of the harm faced by Plaintiffs if the Final Rule is enforced against them, the Court should simultaneously reinstate the injunction that existed in this case prior to final judgment.

## STATEMENT

### I.    Statutory Background

Congress enacted the National Firearms Act ("NFA") in 1934 "[t]o provide for the taxation of manufacturers, importers, and dealers in certain firearms and

machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof." National Firearms Act of 1934, Ch. 757, 48 Stat. 1236, 1236 (1934). The National Firearms Act "imposed a tax on the making and transfer of firearms defined by the Act, as well as a special (occupational) tax on persons and entities engaged in the business of importing, manufacturing, and dealing in [National Firearms Act] firearms." *National Firearms Act*, ATF, https://bit.ly/3Y2kzP9 (last visited July 20, 2023). "Firearms subject to the 1934 Act included [short barreled] shotguns and rifles . . . , certain firearms described as 'any other weapons,' machine guns, and firearm mufflers and silencers." *Id.* Four years later, Congress enacted the Federal Firearms Act which defined "firearm" more broadly to include "any weapon . . . designed to expel a projectile or projectiles by the action of an explosive . . . or any part or parts of such weapon." Federal Firearms Act of 1938, ch. 850, Pub. L. 75-785, 52 Stat. 1250, 1250 (1938) (repealed 1968).

Thirty years later, Congress enacted the Gun Control Act of 1968, which amended the NFA and established a four-part definition of what constitutes a "firearm." *See* 18 U.S.C. § 921, *et seq.* As defined in the Gun Control Act, and as it has stood since 1968,

> [t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any

3

such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). The term "frame or receiver" in subsection (B) is not defined

by statute.

> The 1968 definition superseded the Federal Firearms Act definition in which,
>
> any part or parts of such a weapon [were] included. It [was] [] found that it [was] impractical to have controls over each small part of a firearm. Thus, the revised definition substitute[d] only the major parts of the firearm (that is, frame or receiver) for the words 'any part or parts.'

S. Rep. No. 90-1097 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2200.

Congress delegated to the Attorney General the authority to promulgate rules necessary to carry out the Gun Control Act. 18 U.S.C. § 926(a). The Attorney General then delegated this power to ATF "to administer, enforce, and exercise the functions and powers of the Attorney General." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 897 (6th Cir. 2021). ATF established a definition for "frame or receiver" in a 1978 regulation as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978).

This case involves the promulgation of a superseding Final Rule that changed the definition of the terms "frame or receiver" and "firearm" in the Gun Control Act. The definition promulgated in 1978 prevailed until 2022. In August 2022, however,

ATF changed this definition, in part rewriting the existing regulatory definition with "more precise technical terminology," Addendum to Defs.-Appellants Emergency Mot. Pursuant to Cir. Rule 27.3 for Stay Pending Appeal, Doc. 9, Add.5 (July 18, 2023) ("Add.") (detailing specific changes), but, as relevant here, it also expanded the previous definition to "include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a . . . receiver." 27 C.F.R. § 478.12(c). The new definition excludes "a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material.)" *Id.* And the new rule allows ATF to consider "extrinsic factors when determining if an object is a frame or receiver," including " 'any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed or possessed with [or otherwise made available to the purchaser or recipient of] the item or kit.' " Add.6 (quoting 27 C.F.R. § 478.12(c)).

Finally, the new rule functionally redefined "firearm" under the Gun Control Act to "include a weapon parts kit that is designed to or may readily be completed,

assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 C.F.R. § 478.11.

## II.  Plaintiffs

The Plaintiffs in this case (excluding intervenors, who are separately represented) are two individuals (Jennifer VanDerStok and Michael Andren) one producer and retailer (Tactical Machining, LLC), and one membership organization (Firearms Policy Coalition).

The individual plaintiffs are Texas residents who own items implicated by the Final Rule that they have and/or intend to manufacture into firearms for personal, lawful use and they wish to purchase additional products directly online to facilitate their manufacture of their own firearms. Add.6. Under the challenged rule, all such purchases would have to be channeled through a federal firearms licensee, incurring fees and adding time to the process. Add.6.

Tactical Machining produces and sells items that are subject to regulation under the Final Rule. Add.7. The sale of newly regulated items constitutes more than 90% of Tactical Machining's business. Add.7. FPC is a non-profit organization dedicated to promoting and defending the constitutionally protected rights of American Citizens through public education and legislative and legal advocacy. Add.7. In addition to itself owning items that are subject to regulation under the Final Rule, FPC has hundreds of thousands of members nationwide, including the

6

individual Plaintiffs in this lawsuit. Add.7. FPC brings this suit on behalf of itself and its members.

## III.    Procedural History

Plaintiffs filed this suit in August 2022, before the Final Rule took effect, and sought preliminary injunctive relief, which the district court granted. Add.7 & n.14; *see also VanDerStok v. Garland*, 625 F. Supp. 3d 570 (N.D. Tex. 2022). That preliminary relief remained in effect until the district court resolved the parties' cross motions for summary judgment, Add.9, and held that the Final Rule exceeded ATF's rulemaking authority in the way it defines "frame or receiver" and "firearm" and ordered the Final Rule to be vacated. Add.37–38. On July 18, 2023, the district court denied the Government's request for a stay of that decision but granted a 7-day administrative stay to permit the Government to seek emergency relief from this Court. *See* Add.41. This motion followed.

## ARGUMENT

When considering whether to grant a stay pending appeal, a court must consider,

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009). The party requesting the stay bears the burden of demonstrating it is warranted. *Id.* Here, none of these factors favor a stay.

## I.     The District Court's Ruling Is Likely to Be Affirmed.

### A. The Final Rule Is Inconsistent With the Statute.

As the district court concluded, ATF's new and broad definitions of "frame or receiver" and "firearm" under federal law are inconsistent with the Gun Control Act. Under the APA, a court is required to "hold unlawful and set aside agency action" that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2); *see Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022).

#### 1.   "Frame or Receiver"

The district court correctly found that ATF's redefinition of "frame or receiver" to include items that are not yet frames or receivers (and therefore not "firearms" within the meaning of the Gun Control Act) was in excess of its statutory jurisdiction. Add.24. As explained above, the Gun Control Act, in relevant part, defines "firearm" to include "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[, or,] the frame or receiver of any such weapon." 18 U.S.C. § 921(a)(3). While the statute explicitly permits considering any *weapon* that could "readily be

converted to expel a projectile by the action of an explosive" as a firearm, it conspicuously omits to include similar language about "the *frame or receiver* of any such weapon." *Id.* (emphasis added). If an item can merely be readily converted to be the frame or receiver of a firearm, that is insufficient under the Gun Control Act's plain text to make it a firearm. But the Final Rule considers it sufficient anyway. The district court found that, by greatly expanding the universe of items that could be considered a "frame or receiver," the Final Rule conflicted with the controlling "plain and unambiguous meaning of the statutory language." Add.26–27 (quoting *NPR Invs., L.L.C. ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014)). As it put it, "that which *may become* or *may be converted to* a functional receiver is not itself a receiver" and though Congress *could have* included such items within the definition of firearm under the Gun Control Act, it did not. Add.27 (emphasis in original). In fact, that Congress, in the clause just before its mention of "frame or receiver," *did* include items that were not yet functioning firearms but could readily be converted to become them is strong evidence that the Final Rule (which imports that language where Congress excluded it) exceeds statutory authority. Add.27–28 (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1782 (2021)).

In response, the Government argues that in defining weapons "Congress has repeatedly made clear that non-operational weapons that are either 'designed to' or may 'readily' be converted or restored to operational weapons are included" within

its regulatory purview, Defs.-Appellants Emergency Mot. Pursuant to Cir. Rule 27.3 for Stay Pending Appeal, Doc. 9 at 9 (July 18, 2023) ("Mot."), and that the district court erred in considering the difference in the statutory treatment of "frame or receiver" and "weapon" in defining firearms, because the statute does not define "frame or receiver" and so, the Government argues, it leaves it to ATF to "follow[] the statute's lead," Mot. at 10. But there is no rule that, merely because a term is not explicitly defined in a statute, courts cannot employ the ordinary rules of statutory interpretation to determine whether an agency's definition comports with the congressional text. Instead, as the district court correctly noted, "[the] structure of the law itself" is the "proper starting point" for any dispute over the meaning of a statute, Add.24 (quoting *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019)); *see also Cargill v. Garland*, 57 F.4th 447, 461 (5th Cir. 2023) (en banc), and "courts must presume that a legislature says in a statute what it means and means in a statute what it says," *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

The district court's opinion could be boiled down to the sensible proposition that the term "frame or receiver" unambiguously excludes items that are *not* frames or receivers but merely could be made into them. Add.28–29. The Government disputes this reading, noting that "[t]he Rule explains when a partially complete frame or receiver is a frame or receiver within the meaning of the statute," but even

10

saying such a thing—"a partially complete frame . . . is a frame"—demonstrates that the district court was right to find "a plain reading of the Final Rule's text belies this objection." Mot. at 11; Add.29. Finally, the Government argues that the district court's reading conflicts with the purpose of the Gun Control Act by "permit[ting] persons to circumvent statutory requirements" and that the Final Rule "is consistent . . . with the statutory scheme." Mot. at 9. But "vague notions of a statute's basic purpose are . . . inadequate to overcome the words of its text." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) (quotation marks omitted); *see also Bd. of Governors of Fed. Rsrv. Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 374 (1986) ("Invocation of the 'plain purpose' of legislation at the expense of the terms of the statute itself takes no account of the processes of compromise and, in the end, prevents the effectuation of congressional intent."). The district court was correct to dismiss these concerns. Add.30.

### 2.  Weapons Part Kits

The district court was also correct to find that the Final Rule exceeded statutory authority when it added, to the statutory definition of "firearm," "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 27 C.F.R. § 478.11. The problem with this addition is that, if it has any meaning at all, it operates to regulate firearm parts *other than a frame or receiver*, when the Gun

Control Act specifically limited ATF's purview to that *one* part of the weapon. *See* Add.31–32 (detailing history of Gun Control Act removing authority to regulate "any part or parts" of a firearm in favor of authority to regulate frames and receivers). As the district court explained, "[t]he statutory context repeatedly confirms that Congress intentionally chose not to regulate 'weapon' parts generally." Add.32–33 (collecting examples). "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." Add.32 (quoting *SEC v. Hallam*, 42 F.4th 316, 337 (5th Cir. 2022)). The Government's position, which would permit ATF to regulate all manner of weapon parts that are not frames or receivers, is incompatible with this rule of interpretation.

The Government responds that "a weapons part kit is essentially an unassembled firearm, and courts have long recognized that even disassembled, or nonoperational, weapons constitute 'firearms' for Gun Control Act purposes." Mot. at 11–12. But again, the district court addressed this very argument, finding that the cases the Government cites in support only serve to "demonstrate that courts understand the constraints of the Gun Control Acts definitions." Add.34 (discussing *United States v. Ryles*, 988 F.2d 13, 16 (5th Cir. 1993)). Unlike "weapons part kits" which may be more or less complete (and if they are missing a frame or receiver, then *less* is accurate), a disassembled firearm was, at least once, a fully functional and complete firearm, and as such, subject to regulation under the Gun Control Act.

That is not true of a weapons part kit that lacks a frame or receiver. As with the change to the definition of "frame or receiver," the altered definition of "firearm" greatly expands the agency's purview beyond what the Gun Control Act permits and the district court was correct to find it invalid under the APA.

### B. Vacatur Was the Appropriate Remedy

Based on these deficiencies, the district court vacated the Final Rule. There are two typical remedies available for violations of the APA: remand and vacatur. Remand is only appropriate when an agency can fix the APA violations underlying its action through additional investigation or explanation. *See O'Reilly v. U.S. Army of Eng'rs*, 477 F.3d 225, 238–39 (5th Cir. 2007) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). On the other hand, when an agency action is unlawful, the "ordinary practice" is to vacate the action. *See Data Mktg. P'ship*, 45 F.4th at 859–60 (quoting *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019)).

The Government paints vacatur of the Final Rule as "vastly overbroad," Mot. at 13, and likens it to a "universal injunction[]" affecting parties not before the Court, Mot. at 15, but the Fifth Circuit has explained that vacatur "does nothing but re-establish the status quo absent the unlawful agency action . . . . [V]acatur neither compels nor restrains further agency decision-making." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022). In this sense, it is considerably more limited than an

injunction. *Data Mkt'g P'ship*, 45 F.4th at 859–60. And though the Government claims vacatur should be reserved for "truly extraordinary circumstances," Mot. at 16 (quoting *United States v. Texas*, 143 S. Ct. at 1985–86 (Gorsuch, J., concurring)), this Court has called it "the default rule," *Data Mkt'g P'ship*, 45 F.4th at 860; *Cargill*, 57 F.4th at 472.

The Government argues that the district court should have just vacated *part* of the rule, or only vacated it as applied to Plaintiffs. Taking these in reverse order, the Government has no authority suggesting courts have the power to vacate a rule as to some people and not others. Vacatur is not like an injunction, it "retroactively undoes or expunges a past state action." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021), *reh'g denied* (Nov. 16, 2021). It "unwinds the challenged agency action" as if it no longer exists. *Id*; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 912 (1990) (Blackmun, J., dissenting) ("In some cases the 'agency action' will consist of a rule of broad applicability; and if the plaintiff prevails, the result is that the rule is invalidated, *not simply that the court forbids its application to a particular individual*.") (emphasis added). And as for a more limited relief, the district court considered the seriousness of the deficiencies of the Final Rule (discussed above) as well as the possible "disruptive consequences of vacatur" in deciding to vacate the Final Rule and it correctly noted that, as it would merely return the law to the status quo that prevailed before the unlawful agency action,

there was little possibility of significant disruption resulting from its order. Add.36. The Government points to the severability clause of the regulation to suggest that the district court should have gone through the Final Rule and excised only the problematic definitions and permitted the rest of the Final Rule to stand. *See* Mot. at 14. But the definitions of "frame or receiver" and "firearm" are *central* to the Final Rule and the aims it was intended to serve. *See, e.g.,* Press Release, Fact Sheet: The Biden Administration Cracks Down on Ghost Guns, Ensures That ATF Has the Leadership it Needs to Enforce Our Gun Laws, White House Briefing Room (Apr. 11, 2022), https://bit.ly/3Q59BX9. Where, as here, the putatively severable provisions of a rule are in fact central to its aims, courts can and do chose to vacate the entire rule, leaving it to the agency that decided to enact the rule with the unlawful provisions in the first place how it would like to proceed. *See MD/DC/DE Broad. Ass'n v. FCC*, 253 F.3d 732, 735–36 (D.C. Cir. 2001) (denying reh'g en banc) ("[I]t is clear that severing one of the two options and thereby making the other mandatory would create a rule that the Commission did not consider and which, according to the Commission's own analysis in the course of rulemaking, would not have accomplished the Commission's two goals as it described them."). The district court's choice of remedy was appropriate.

## II.    The Remaining Factors Favor a Stay

The Government asserts that it and the public will be irreparably injured absent a stay. Mot. at 16. It cites the proliferation of unserialized firearms and the fact that the rule changed the ways federal firearms licensees keep records of efforts to mark unserialized firearms as "critical to public safety." Mot. at 16–18. But as just explained, the vacatur of the Final Rule merely reinstates the status quo that prevailed for decades before August 2022. And ATF's hands are in no way tied by the vacatur—it could immediately set about re-promulgating the same recordkeeping requirements if it wanted, provided it did not again pair them with the same expansive redefinition of the Gun Control Act.

On the other side of the ledger, "[t]he public interest is served when administrative agencies comply with their obligations under the APA." *N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009). "[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to [their] statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58–59 (D.C. Cir. 1977). In fact, it is *Plaintiffs* who face irreparable injury if the judgment below is stayed. The district court preliminarily enjoined the Final Rule's enforcement against Plaintiff Tactical Machining almost immediately after it went into effect in, finding that, if the Final Rule could be enforced against it, Tactical Machining faced "irreparable harm, either by shutting down its operations forever

or paying the unrecoverable costs of compliance." *VanDerStok*, 625 F. Supp. 3d. at 584. The same harm awaits Tactical Machining today if the district court's judgment is stayed. And indeed, all Plaintiffs risk the possibility of criminal penalties for production, sale, purchase, possession, or trafficking of items that have not historically been considered firearms if the Final Rule is not vacated. The balance of harms favors denying the motion to stay.

At the very least, if the Court is inclined to stay the district court's judgment—and to be clear, it should not—it should also re-enter the injunction that prevented the Final Rule from being enforced against Individual Plaintiffs and Tactical Machining and its customers. The Government implicitly acknowledges that party-specific relief would not present the same alleged injury to ATF or to the public, *see* Mot. at 15-16, and indeed, the Final Rule has been enjoined against Individual Plaintiffs, Tactical Machining, and its customers for months without the suggestion from the Government that the injunction raises the need for emergency relief.

## CONCLUSION

The Court should deny stay of the judgment pending appeal. At a minimum, and in the alternative, if the Court stays the judgment, it should re-enter the injunction that prevailed prior to the district court's entry of judgment.

Dated: July 20, 2023

Respectfully submitted,

/s/David H. Thompson

Cody J. Wisniewski
FPC Action Foundation
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149
(916) 517-1665
cwi@fpchq.org

David H. Thompson
Peter A. Patterson
William V. Bergstrom
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com

*Counsel for Plaintiffs-Appellees*

## **CERTIFICATE OF COMPLIANCE**

I certify that this Response in Opposition to Emergency Motion for Stay of Plaintiffs-Appellees complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(A) because this brief contains 4,198 words, excluding the parts exempted by FED. R. APP. P. 32(f).

This brief also complies with the typeface and type style requirements of FED. R. APP. P. 27(d)(1)(E) and 32(a)(5)-(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 (Version 2212) in Times New Roman 14-point font.

Dated: July 20, 2023

/s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs- Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit on July 20, 2023 by using the appellate CM/ECF system and that service was accomplished on all counsel of record by the appellate CM/ECF system except for counsel listed below, who was served by US Mail:

> Dennis Daniels
> Bradley Arant Boult Cummings, L.L.P.
> 1445 Ross Avenue
> Suite 3600
> Fountain Place
> Dallas, TX 75202

Dated: July 20, 2023

/s/ David H. Thompson
David H. Thompson

*Counsel for Plaintiffs-Appellees*