No. 23-10718

_____

In the United States Court of Appeals for the Fifth Circuit

_____

Jennifer VanDerStok, *et al.*,

Plaintiffs-Appellees,

v.

Merrick Garland, *et al.*,

Defendants—Appellants.

_____

Appeal from the United States District Court for the
Northern District of Texas; No. 4.22-cv-00691-O

_____

**Response by Defense Distributed, the Second Amendment Foundation, Inc. and Not An LLC, LLC, doing business as JSD Supply to the Emergency Motion for a Stay Pending Appeal**

_____

| | |
|---|---|
| J. Mark Brewer | Chad Flores |
| Brewer & Pritchard, P.C. | Flores Law PLLC |
| 800 Bering Dr., Suite 201 | 917 Franklin Street, Suite 600 |
| Houston, TX 77057 | Houston, Texas 77002 |
| (713) 209-2910 | (713) 893-9440 |
| | |
| Counsel for Not An LLC, LLC, doing business as JSD Supply | Counsel for Defense Distributed and the Second Amendment Foundation, Inc. |

## Table of Contents

Page

Table of Contents ........................................................................................................ ii

Table of Authorities .................................................................................................. iii

Summary of the Argument .......................................................................................... 1

Argument ..................................................................................................................... 2

I.     The motion for a stay pending appeal should be denied ................................. 2

    A.     The Agencies will not succeed on the merits. ........................................ 3

        1.     The district court's opinion warrants invalidating the Rule's new "firearm" definition. ........................................................... 3

        2.     Additional claims not ruled on below but assertable on appeal warrant invalidating the Rule's new "firearm" definition. ......... 3

    B.     Scope-of-remedy issues do not justify a stay. ......................................... 6

II.     At a minimum, Defense Distributed, SAF, and JSD are entitled to individualized protection during the appeal. ................................................... 7

Conclusion ................................................................................................................... 8

Certificate of Compliance ........................................................................................... 9

## Table of Authorities

**Page**

**Cases**

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
 648 F.2d 956(5th Cir. Unit B 1981) ................................................................ 2

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*,
 463 U.S. 29 (1983) ............................................................................................ 4

*New York State Rifle & Pistol Ass'n, v. Bruen*,
 142 S.Ct. 2111 (2022) ............................................................................. 3, 4, 5

*Ruiz v. Estelle*,
 650 F.2d 555 (5th Cir. 1981) ........................................................................... 2

## Summary of the Argument

President Biden's newly minted administrative definition of "firearm" illegally expands that term's meaning far beyond both its statutory and constitutional boundaries. It is an unprecedented ATF power grab with sweeping consequences. The new "firearm" definition egregiously departs from what Congress actually enacted, deeming illegal for the first time ever vast swaths of traditional Second Amendment conduct that Congress did not and could not choose to make illegal.

Congress in the Gun Control Act defined the key term "firearm" to include a weapon's actually finished "frame or receiver." Yet the new Rule expands the definition to criminalize (1) *unfinished* frames and receivers—*i.e.*, non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes occur, and (2) frame and receiver "part kits"—*i.e.*, kits of non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes occur. These expansions contradict the Gun Control Act's keystone "firearm" definition, which understands that an *unfinished* frame or receiver is not an *actual* frame or receiver and that a *part kit* to make a frame or receiver is also not an *actual* frame or receiver. The district court was right to vacate the Rule's new "firearm" definition, which if enforced during this appeal would inflict massive amounts of irreparable harm needlessly. No stay should occur, administratively or otherwise.

## Argument

This response is filed on behalf of Intervenor Plaintiff Appellees Defense Distributed, the Second Amendment Foundation, Inc. ("SAF"), and Not An LLC, LLC, doing business as JSD Supply ("JSD"). The district court correctly stated the case's statutory and regulatory background, Doc. 227 at 3-6, as well as its procedural posture, *id.* at 6-10.

Familiar rules govern stays and injunctions pending appeal. *See, e.g.*, *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957 (5th Cir. Unit B 1981). Factors to consider include the likelihood of success on the merits, irreparable harm, equities between the parties, and public interest. *See, e.g.*, *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). All factors oppose the Agencies' request for a stay pending appeal and administrative stay. The Court should deny the motion in full.

Defense Distributed, SAF, and JSD adopt by reference the stay-opposing arguments presented in (1) the July 20 filing by Plaintiffs Michael G. Andren, Firearms Policy Coalition, Incorporated, Tactical Machining, L.L.C. and Jennifer VanDerStok, (2) the July 20 filing by Blackhawk Manufacturing Group, Inc., (3) the July 20 filing by amicus the Firearms Regulatory Accountability Coalition, Inc. Additionally, Defense Distributed, SAF, and JSD oppose for the following reasons.

I.   **The motion for a stay pending appeal should be denied.**

A.   **The Agencies will not succeed on the merits.**

1.   **The district court's opinion warrants invalidating the Rule's new "firearm" definition.**

The district court was right to vacate the Rule's new "firearm" definition "on grounds that the Final Rule was issued in excess of ATF's statutory jurisdiction." Doc. 231. The analysis at pages 24-35 of the summary judgment order speaks for itself and is correct: "Because the Final Rule purports to regulate both firearm components that are not yet a 'frame or receiver' and aggregations of weapon parts not otherwise subject to its statutory authority, the Court holds that ATF has acted in excess of its statutory jurisdiction by promulgating it." Doc. 227 at 24-35.

2.   **Additional claims not ruled on below but assertable on appeal warrant invalidating the Rule's new "firearm" definition.**

The district court's vacatur of the Rule's "firearm" definition is also justified by additional APA claims that, though not ruled upon expressly below, are fully preserved and can be presented to this Court as independent grounds for affirmance. On top of the main claims about statutory contradiction are equally valid claims showing that President Biden's "firearm" definition violates both *New York State Rifle & Pistol Ass'n, v. Bruen*, 142 S.Ct. 2111 (2022), and the nondelegation doctrine.

These issues have to be grappled with before the requisite likelihood of success could be determined. Yet the Agencies' motion says nothing about them.

Specifically, Defense Distributed and SAF can justify the district court's judgment with claim asserted below as Count Two, a unique process-based claim about the Agencies having violated the APA by promulgating the Rule with insufficient considerations. *See* Doc. 143 at 22-23. Whenever an agency makes a rule, the Agency's rulemaking process "must examine" "relevant factors" and "relevant data." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983). For this rule, the Agencies had to consider the "relevant" Second Amendment framework required by *New York State Rifle & Pistol Association, v. Bruen*, 142 S.Ct. 2111 (2022). That is, the APA required the Agencies to consider whether this "regulation is consistent with this Nation's historical tradition of firearm regulation" and to do so without using the "means-end scrutiny" that *Bruen* deemed unconstitutional. *Id.* at 2126-32. This Rule entailed no such inquiry.

When promulgating the Rule, the Agencies doubly violated the APA by both (1) failing to consider the factors and data that *Bruen* deems constitutionally mandatory and (2) relying instead on factors and data that *Bruen* deems constitutionally improper. Most importantly, the record shows no *Bruen*-compliant considerations because the Agencies did not even try to determine whether this

"regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-32. The Agencies never attempted to consider whether the Rule "addresses a general societal problem that has persisted since the 18th century," and if so whether there was "a distinctly similar historical regulation addressing that problem." *Id.* These failures are established as a matter of law.

Instead of promulgating the Final Rule by considering the legally relevant factors and data, the record shows that the Agencies compounded their APA violation by relying upon legally *irrelevant* matters. They infected their rulemaking process with the very presumptions of legality and means-ends scrutiny that *Bruen* deems illegal. *Compare* 87 Fed. Reg. 24,676-24,677 (relying on "compelling governmental interests" and "presumptively lawful regulatory measures"), *with Bruen*, 142 S. Ct. at 2126 ("*Heller* and *McDonald* do not support applying means-end scrutiny"). This too is established as a matter of law.

Given that the Agencies did not even attempt to consider the correct Second Amendment factors and data, it is no surprise to see that the resulting Final Rule violates the Constitution. But that important result-based violation is a different and distinct problem addressed by other claims. At issue here is the Agencies' procedural failure to *consider* the historical factors and data that *Bruen* deems relevant—a process-based APA illegality that warrants setting the Final Rule aside

5

regardless of how outcome-based claims turn out. This is an independent basis on which the judgment below can be affirmed.

There are more issues as well. The parties below preserved a full panoply of APA claims that can now be asserted on appeal, each of which is meritorious and each of which can independently justify invalidation of the Rule's new "firearm" definition. *See, e.g.*, Doc. 143 at 23-24 ("Count Three: APA § 706(2)(A), (C)—Delegation"); *id.* at 24-25 ("Count Four: APA § 706(2)(A), (C)—Change of position"); *id.* at 25-26 ("Count Five: APA § 706(2)(B)—Right to Keep and Bear Arms"); *id.* at 25-26 ("Count Six: APA § 706(2)(B)—Due Process Clause"); Doc. 166 at 2 (Defense Distributed and SAF's motion for summary judgment asserted all counts); Docs. 140, 141, 144, 145 (other parties' motions for summary judgment). Yet the Agencies' instant motion for a stay mentions none of these.

### B.   Scope-of-remedy issues do not justify a stay.

The Agencies' supposedly strongest argument is that, even if the challenged portions of the Rule should have been vacated, the district court "had no warrant to stay the many portions of the Rule that the court did not address." Mot. at 8. But if that were really so dire a problem, the Agencies should have utilized all available methods of addressing the issue below. Specifically, the Agencies could very easily have filed a post-judgment Rule 59 motion calling the scope-of-remedy issue to the

Court's attention. That would have been a perfectly appropriate vehicle by which to argue, as the Agencies do now, that the district court's summary judgment failed to grapple with the scope-of-remedy problem that had been briefed. But instead of taking that rudimentary step, the Agencies opted to skip past the Rule 59 avenue for relief altogether and appeal immediately. If not a complete bar to their use of this argument to get a stay, the Agencies' failure to utilize this readily-available avenue for relief below should at least discount its importance in the overall stay calculus.

## II. At a minimum, Defense Distributed, SAF, and JSD are entitled to individualized protection during the appeal.

If the Court deems a stay of some kind warranted due to concerns about the judgment's *nationwide* scope of relief, it should not enter a complete blanket stay. In that case, the Court should instead stay the district court's judgment only to the extent that it applies beyond the action's parties—*i.e.*, the Court's stay should leave the judgment in effect insofar as it applies to Defense Distributed, SAF, JSD, and the other party claimants.

Procedurally, the parties agree that this Court *can* fashion this kind of stay. The choice is not all or nothing. A partial stay is possible. As the Agencies' rightly concede (at 8), the Court has the authority to stay just "overbroad portions of the order" if the "remedy should have been limited to the parties themselves." So even if the Court issues a stay of some kind, the order should be careful to carve out

7

continuing protection for Defense Distributed, SAF, and JSD, whose need for either the final judgment or a separate injunction pending appeal is not seriously contested.

## Conclusion

The motion should be denied.

Respectfully submitted,

Flores Law PLLC

*/s/ Chad Flores*

Chad Flores
cf@chadfloreslaw.com
Texas Bar No. 24059759
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Defense Distributed and the Second Amendment Foundation, Inc.

J. Mark Brewer
brewer@bplaw.com
Texas Bar No. 02965010
Brewer & Pritchard, P.C.
800 Bering Dr., Suite 201
Houston, TX 77057
 (713) 209-2910

Counsel for Not An LLC, LLC, doing business as JSD Supply

## Certificate of Compliance

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,630 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.74 in 14-point font.

/s/ Chad Flores
Chad Flores