No. 23-10718

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Jennifer VanDerStok; Michael G. Andren; Tactical Machining, L.L.C., a limited liability company; Firearms Policy Coalition, Incorporated, a nonprofit corporation,
Plaintiffs-Appellees,

Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms; Defense Distributed; Second Amendment Foundation, Incorporated; Not An L.L.C., doing business as JSD Supply; Polymer80, Incorporated,
Intervenor Plaintiffs-Appellees,

v.

Merrick Garland, U.S. Attorney General; United States Department of Justice; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Bureau of Alcohol, Tobacco, Firearms, and Explosives,
Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas

**REPLY IN SUPPORT OF EMERGENCY MOTION PURSUANT
TO CIRCUIT RULE 27.3 FOR STAY PENDING APPEAL**

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT
SEAN R. JANDA
*Attorneys, Appellate Staff
Civil Division, Room 7260
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
202-514-3388*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY ............................................................................. 1

ARGUMENT ................................................................................................................... 2

I.     The Government Is Likely to Prevail on the Merits ............................................... 2

II.    The Remaining Factors Favor a Stay ..................................................................... 8

CONCLUSION ............................................................................................................. 11

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

**INTRODUCTION AND SUMMARY**

Plaintiffs do not dispute that the Rule they challenge advances critical public-safety and law-enforcement interests by keeping firearms out of the hands of individuals who cannot lawfully possess them and preventing the proliferation of untraceable firearms. Plaintiffs likewise do not dispute that the Rule does not prohibit any plaintiff from purchasing or selling any firearm. Plaintiffs also fail to show that the Rule conflicts with the statute—the basis upon which the district court vacated the Rule. Plaintiffs nonetheless ask this Court to leave in place the district court's judgment vacating the Rule in its entirety and permitting plaintiffs—and all other entities—to continue to deal in unserialized firearms without performing background checks. This Court should decline that invitation.

As the government demonstrated in its stay motion, the district court's decision to vacate the Rule was incorrect on every level: each of the challenged provisions of the Rule comports with the statute, and there is no warrant for the court's universal vacatur of the entire Rule, especially as the district court's order finds fault with only discrete portions of the rule. Plaintiffs rebut none of these showings. On the remedy, plaintiffs fail to explain how the district court's universal vacatur—of provisions plaintiffs do not challenge and as applied to third parties—could possibly be necessary to remedy their alleged injuries. And on the equities, plaintiffs fail to explain how any minimal costs the Rule engenders could possibly outweigh the critical public-safety and law-enforcement interests advanced by the Rule. This Court should stay the

vacatur in full. In the alternative, it should stay the vacatur as to the provisions not held unlawful by the district court and as to parties other than plaintiffs.

## ARGUMENT

I. **The Government Is Likely to Prevail on the Merits**

The district court vacated the Rule based on its conclusion that two provisions of the Rule violate the Gun Control Act. Plaintiffs fail entirely to rebut the government's showing that this conclusion was erroneous. Nor do plaintiffs explain how it was proper for the district court to vacate the entire Rule, which has an express severability provision. A stay pending appeal is therefore warranted.

A. The government demonstrated in its stay motion that the district court erred in concluding that the Rule's provision making clear that a "frame" or "receiver" (terms not defined in the statute) includes a partially complete, disassembled, or nonfunctional frame or receiver that may "readily" be converted into a functional one, *see* 27 C.F.R. § 478.12(c), conflicts with the Gun Control Act. This provision implements the text of the statute and continues ATF's longstanding practice of treating certain partially complete frames or receivers as frames or receivers for these purposes. Any contrary approach would permit individuals to circumvent federal firearms requirements that keep firearms out of the hands of felons and other prohibited persons and enable law enforcement to trace firearms used in crimes. *See* Mot. 8-11.

Plaintiffs barely engage with these points. Instead, they rely almost entirely on the proposition, endorsed by the district court, that Congress implicitly precluded the Rule's interpretation because a different provision of the definition of "firearm" includes nonfunctional versions that may "readily" be converted or assembled to functional versions but the provision relating to frames and receivers does not. *See* VanDerStok Resp. 8-9. But the government demonstrated the error of this argument in its stay motion: it "proceeds from the incorrect premise that § 921(a)(3)(B) defines 'frame or receiver' and so some inference may be drawn from the nonexistence of 'readily' language in that provision." Stay Mot. 10.

Beyond that, plaintiffs' only other substantive argument is that the Rule contradicts the statute by sweeping within the definition of "frame" and "receiver" items that are "*not* frames or receivers but merely could be made into them." VanDerStok Resp. 10-11. But as the government explained, the Rule does not regulate items that are "not frames or receivers"; it simply defines as frames or receivers those partially complete frames and receivers that are designed to, or may readily be converted to, function as frames or receivers. Stay Mot. 10-11. Plaintiffs do not dispute that this understanding is consistent with Congress's approach across the firearms laws. And to the extent plaintiffs suggest that only fully functional frames and receivers are covered by the statute, their argument would prove far too much. A violent felon could simply purchase, for example, a frame or receiver with a single extra plastic tab or with one small piece missing and wait to complete the assembly

3

until the moment he intended to use it in a crime. That result would make a mockery of the regulatory scheme, and even plaintiffs do not affirmatively defend that implication of their arguments.

In short, the Rule implements Congress's direction and properly adheres to the well-established principle that statutes should be interpreted "to work rather than fail." Antonin Scalia & Bryan A. Garner, *Reading Law* 63 (2012) (explaining the presumption against ineffectiveness).

B. As the government demonstrated, the Rule's clarification that certain weapon parts kits constitute "firearms" under the Gun Control Act also comports with the statute. The Act's definition of "firearm" as including any weapon that "is designed to or may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A), makes clear Congress's intent to cover certain partially complete, or nonoperational, weapons. A weapon parts kit that enables the ready assembly of an operational firearm plainly satisfies the statute's definition: it is both "designed to" and "may readily be converted" to be an operational firearm. Fundamentally, such a kit is no different from a disassembled firearm, and consistent with the Rule's conclusion, courts have long held that such weapons may constitute "firearms." *See* Stay Mot. 11-13.

The only plaintiffs to address this provision nowhere engage with the statutory text nor do they even attempt to refute ATF's plain-text explanation that a weapon parts kit containing the parts necessary to readily assemble an operational firearm is

"designed to" be, and "may readily be converted" to be, an operational firearm. *See* VanDerStok Resp. 11-13. Nor do plaintiffs offer any persuasive response to the longstanding precedent cited by the government holding that even disassembled or nonoperational weapons may constitute "firearms" under the "designed to" or "readily converted" prongs of the Gun Control Act's definition. *See* Stay Mot. 12 (collecting cases). Indeed, plaintiffs do not dispute that a weapon parts kit is, in essence, a disassembled firearm.

Instead, the original plaintiffs primarily suggest that a weapon parts kit is different from a disassembled firearm because a disassembled firearm "was, at least once, a fully functional and complete firearm." VanDerStok Br. 12. But nowhere do plaintiffs justify a distinction between a complete assemblage of parts that is newly gathered and one previously assembled. And their suggestion is untethered from the statutory text, which looks only at what an assemblage of parts is "designed to" and "may readily be converted to" function as—not at whether those parts were previously assembled.

C. Perhaps recognizing that they cannot persuasively demonstrate that the Rule is contrary to the statute, the Defense Distributed plaintiffs spend much of their response contending that "additional APA claims" that were "not ruled upon" by the district court nevertheless support the vacatur. Defense Distributed Resp. 3. And in particular, those plaintiffs argue that the Rule violates the APA because it does not

5

follow the Second Amendment analysis required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Id.* at 3-6.

But that argument was not ruled on by the district court, and it does not provide any basis for upholding the district court's vacatur, which was entered on an entirely different theory. In any event, the argument is unavailing. As an initial matter, to the extent any aspects of the agency's discussion could be understood as reflecting a now-outdated legal test, *see Bruen*, 142 S. Ct. at 2125-31, any such error would provide no basis for relief. The APA requires courts to take account of the "rule of prejudicial error." 5 U.S.C. § 706. Under that rule, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). Here, plaintiffs fail to develop any argument that the Rule violates the Second Amendment, which means they have not met their burden of showing that any flaw in the agency's explanation related to this issue has prejudiced them.

In any event, ATF correctly concluded that the Rule does not violate the Second Amendment. The Supreme Court has confirmed that nothing in its decisions interpreting the Second Amendment "cast[s] doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see also Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (same). As ATF explained, the statutory licensing, recordkeeping,

6

and background check requirements implicated by the Rule are such commercial restrictions; they "do not prohibit individuals from assembling or otherwise making their own firearms." 87 Fed. Reg. at 24,676. Nor do those requirements "burden the ability of non-prohibited people to buy, sell, or possess firearms." *Id.* Thus, as the Rule properly explains, nothing in the Rule or the underlying statute "prevents law-abiding citizens" from exercising the Second Amendment "right to bear arms in public for self-defense." *Bruen*, 142 S. Ct. at 2156.

D. As the government explained in its stay motion, and as plaintiffs barely contest, at the absolute least, the district court's universal vacatur of the entire Rule was overbroad.

Plaintiffs' only defense of the vacatur of the entire Rule is that the challenged provisions are "central to the Final Rule" and so the rest of the Rule should be vacated so "the agency" can decide "how it would like to proceed" with the rest of the provisions. VanDerStok Resp. Br. 15. But the agency has already made that decision: it made clear in the Rule that it intended for each provision to be severable. *See* Stay Mot. 13-14. And plaintiffs fail to explain, for example, how the utility of the Rule's provisions extending recordkeeping requirements or regulating silencers depends on the enforceability of the two provisions addressed by the district court. In short, the remaining provisions of the Rule—which no plaintiff currently contends are unlawful—operate independently of the challenged provisions and advance important public safety interests of their own, as the government has explained. *See id.* at 17-18.

7

Thus, at the least, the government is likely to succeed on its argument that the vacatur of those provisions was overbroad.

In addition, no plaintiff contends that the court's vacatur of the rule as applied to non-parties was necessary to remedy any injuries to the plaintiffs. Instead, plaintiffs appear to suggest (at VanDerStok Resp. 14; BlackHawk Resp. 10) that the universal vacatur was appropriate because vacatur is simply a universal remedy. But the government already explained that this Court's precedents make clear that vacatur is a discretionary equitable remedy, not an automatic one, and that vacatur thus must be limited by equitable and constitutional principles that require remedies be tailored to redress the plaintiffs' injury. *See* Stay Mot. 14-16. Nowhere do plaintiffs engage with any of those precedents or principles, and the government is thus likely to succeed on its argument that the district court's universal vacatur—which was not justified with any equitable balancing—is overbroad.

## II.    The Remaining Factors Favor a Stay

A. As the government explained in its stay motion, *see* Stay Mot. 16-19, vacatur of the Rule would irreparably harm the government and the public, including by permitting the continued proliferation of unserialized firearms (which the government generally cannot trace when used in crimes) and by allowing felons and other prohibited persons to continue to buy readily assembled firearms online without a background check.

Plaintiffs' primary response is to contend that the vacatur is not problematic because it "merely reinstates the status quo that prevailed" before the Rule. VanDerStok Resp. 16. But the very need for the Rule demonstrates the error in this argument. As the Rule explains, unserialized firearms have proliferated in recent years, with nearly 20,000 such firearms being reported to ATF as recovered from crime scenes in 2021. *See* 87 Fed. Reg. at 24,656-57. Returning to a status quo that permits the continued proliferation of such firearms—including to the very criminals who most obviously have an incentive to purchase and use them—would inflict irreparable public-safety harms.

And although the BlackHawk plaintiffs suggest (at 7-8) that the harms ATF has articulated are only "inconveniences" or "unwelcome adjustments," those plaintiffs do not even acknowledge the substantial public-safety harms that ATF has explained would follow from any vacatur of the Rule.

B. Conversely, plaintiffs do not seriously contend that they will be substantially harmed by a stay of the vacatur. As the government has explained, *see* Stay Mot. 19-20, the challenged provisions of the Rule do not forbid the sale or purchase of any firearm. Instead, they only clarify that certain items, such as ready-to-assemble kits, are "firearms" within the meaning of the statue and so must be sold in compliance with the statutory requirements for firearm sales. But any plaintiff who wishes to purchase or sell any item subject to those requirements may continue to do so.

9

In contending otherwise, plaintiffs do not articulate any substantial harm from a stay of the vacatur. Instead, the only harm they suggest is that they might be required to incur compliance costs—or that they might face criminal penalties if they violate the Gun Control Act as implemented by the Rule. But as the government has explained, the relevant compliance costs are the relatively minor costs of producing and selling firearms—such as running background checks on purchasers—that tens of thousands of licensees bear every day. *See* Stay Mot. 20. And plaintiffs can avoid any criminal liability by simply complying with the statutory and regulatory requirements; if they instead choose to disregard their obligations, any resulting liability would be "self-inflicted" injury that "does not qualify as irreparable." *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (per curiam) (quotation omitted).

And although the plaintiffs generally suggest (at VanDerStok Resp. 17; BlackHawk Resp. 10; Defense Distributed Resp. 7-8) that this Court should grant them an injunction pending appeal if this Court stays the vacatur, that suggestion is unfounded. As the government has explained, it is likely to succeed on the merits of its appeal, including with respect to the two provisions addressed by the district court. And the equitable balancing cuts decisively in favor of permitting the Rule's requirements to remain in effect to ensure that firearms are sold in compliance with statutory requirements that prevent prohibited persons from obtaining firearms and that permit law enforcement to trace firearms that are used in crimes. There is thus no

basis for providing plaintiffs with a separate injunction pending appeal if the Court concludes that staying the vacatur is warranted.

## CONCLUSION

For the foregoing reasons, and those in the stay motion, the Court should grant a stay of the judgment pending appeal. At a minimum, and in the alternative, the Court should stay the vacatur to the extent that it vacates provisions of the Rule beyond those addressed by the district court and as applied to non-parties.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
*United States Attorney*

MICHAEL S. RAAB
ABBY C. WRIGHT

*/s/ Sean R. Janda*
SEAN R. JANDA
*Attorneys, Appellate Staff
Civil Division, Room 7260
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-3388*

July 2023

# CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system except for counsel listed below, who will be served by US Mail:

Dennis Daniels
Bradley Arant Boult Cummings, L.L.P.
1445 Ross Avenue, Suite 3600
Fountain Place
Dallas, TX 75202

*/s/ Sean R. Janda*
SEAN R. JANDA

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2579 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

/s/ *Sean R. Janda*
SEAN R. JANDA