No. 23-10718

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

JENNIFER VANDERSTOK; MICHAEL G. ANDREN; TACTICAL MACHINING, L.L.C.; FIREARMS POLICY COALITION, INCORPORATED, a nonprofit corporation,

*Plaintiffs-Appellees*,

BLACKHAWK MANUFACTURING GROUP, INCORPORATED, doing business as 80 PERCENT ARMS; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INCORPORATED; NOT AN L.L.C., doing business as JSD SUPPLY; POLYMER80, INCORPORATED,

*Intervenor Plaintiffs-Appellees*,

v.

MERRICK GARLAND, U.S. Attorney General; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

*Defendants-Appellants*.

On Appeal from United States District Court
for the Northern District of Texas, Case No. 4:22-CV-00691-O

## BRIEF FOR APPELLEE
## BLACKHAWK MANUFACTURING GROUP, INC.

BRIAN D. POE
BRIAN D. POE, ATTORNEY AT LAW PLLC
THE BRYCE BUILDING
909 THROCKMORTON STREET
FORT WORTH, TX 76102
(817) 870-2022

MICHAEL J. SULLIVAN
NATHAN P. BRENNAN
ASHCROFT LAW FIRM LLC
200 State St., 7th Floor
Boston, MA 02109
(617) 573-9400

*Counsel for Intervenor Plaintiff-Appellee*
*BlackHawk Manufacturing Group, Inc.*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Plaintiff-Appellees: | Counsel for Plaintiff-Appellees: |
|---|---|
| Jennifer VanDerStok | David H. Thompson<br>Peter A. Patterson |
| Michael G. Andren | William V. Bergstrom<br>COOPER & KIRK, PLLC |
| Tactical Machining, L.L.C., a limited liability company | Richard Brent Cooper<br>Benjamin David Passey* |
| Firearms Policy Coalition, Inc. | COOPER & SCULLY, P.C. |
| | Brian A. Abbas*<br>Erin M Erhardt*<br>MOUNTAIN STATES LEGAL FOUNDATION |
| | Cody J. Wisniewski*<br>FPC ACTION FOUNDATION |
| | Kaitlyn D. Schiraldi*<br>NEW CIVIL LIBERTIES ALLIANCE |
| Intervenor Plaintiffs-Appellees: | Counsel for Intervenor Plaintiffs-Appellees: |
| Blackhawk Manufacturing Group Inc., d/b/a 80 Percent Arms | Brian Daniel Poe, BRIAN D. POE ATTORNEY AT LAW, PLLC |

i

|                                        | Michael J. Sullivan<br>Nathan P. Brennan*<br>Joseph Christopher Amrhein, Jr.*<br>ASHCROFT LAW FIRM, LLC |
|----------------------------------------|--------------------------------------------------|
| Defense Distributed                    | Charles Flores<br>Flores Law, P.L.L.C. |
| Second Amendment Foundation Inc.       | Nicholas M. Bruno*<br>Zachary Nelson*<br>BECK REDDEN LLP |
| Not an LLC dba JSD Supply              | J. Mark Brewer,<br>BREWER & PRITCHARD, P.C., |
|                                        | Matthew Joseph Smid,<br>EVANS, DANIEL, MOORE,<br>EVANS, BIGGS, & SMID |
| Polymer80, Inc.                        | Dennis Daniels<br>Connor McCarthy Blair<br>John Parker Sweeney<br>James W. Porter*<br>Marc A. Nardone*<br>BRADLEY ARANT BOULT<br>CUMMINGS LLP |

**Defendant-Appellants:**

**Counsel for All Appellants:**

Merrick Garland, U.S. Attorney General

Sean Janda
Daniel Riess
Abby Christine Wright

U.S. Department of Justice

Jeremy S.B. Newman*
Martin M. Tomlinson*

Steven Dettlebach, ATF Director

Taisa M. Goodnature*
U.S. DEPARTMENT OF JUSTICE

Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attorneys whose names are denoted with an asterisk entered appearances in the district court but have not entered appearances in the Fifth Circuit.

Dated: August 23, 2023

/s/*Michael J. Sullivan*
Michael J. Sullivan

*Counsel for Blackhawk Manufacturing
Group Inc., d/b/a 80 Percent Arms*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Court has scheduled oral argument for September 7, 2023. *See* Dkt. 63.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... iv

INTRODUCTION ................................................................................................. 1

STATEMENT OF JURISDICTION ..................................................................... 2

COUNTER-STATEMENT OF THE ISSUES ....................................................... 2

STATEMENT OF THE CASE.............................................................................. 4

A.    STATUTORY BACKGROUND ................................................................. 4

      1.    Legal Framework ................................................................... 4

      2.    Five Decades of Consensus That the Scope of ATF's Authority Is Limited to the GCA's Definition of "Firearm" .............................................................................. 6

      3.    The Biden Administration Announces "Will Not Wait for Congress to Act" on Expanded Gun Control ................................. 8

B.    PROCEDURAL BACKGROUND ............................................................. 11

SUMMARY OF THE ARGUMENT .................................................................... 14

STANDARD OF REVIEW .................................................................................. 17

ARGUMENT ....................................................................................................... 17

I.    THE RULE VIOLATES THE PLAIN LANGUAGE OF THE GUN CONTROL ACT ........................................................................ 17

A. Congress Deliberately Excluded Partially Complete Frames and Receivers from the Statutory Definition of "Firearm" ................................................................18

B. The Rule's Definition of "Frame or Receiver" Exceeds the Scope of ATF's Authority to Regulate "Firearms" as Defined by the GCA ...............................................................21

C. The Rule's Definition of "Weapons Parts Kits" Exceeds the Scope of ATF's Congressionally Delegated Authority .....................27

D. The Government Downplays the Magnitude of the Expanded Regulatory Power ATF Will Wield with the Rule's Definitions ...........................................................................29

II.    THE DISTRICT COURT FOLLOWED CIRCUIT PRECEDENT AND PROPERLY APPLIED STATUTORY AUTHORITY IN VACATING THE RULE....................................32

A. Vacatur Is The Proper Remedy In This Circuit .......................................33

B. There Is No Basis to Remand ATF's Unlawful Agency Action .................................................................................36

C. The Rule Is Not Severable........................................................36

D. At a Minimum, the Court Should Fashion a Remedy—Via Vacatur or Injunction—That Provides BlackHawk With Protection from Enforcement of the Rule ...............................37

CONCLUSION....................................................................38

CERTIFICATE OF SERVICE ...............................................39

CERTIFICATE OF COMPLIANCE ....................................40

# TABLE OF AUTHORITIES

## Cases

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
   141 S. Ct. 2485 (2021)....................................................................................38

*Alaska Airlines, Inc. v. Brock*,
   480 U.S. 678 (1987)........................................................................................37

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002)........................................................................................32

*Biden v. Nebraska*,
   143 S. Ct. 2355 (2023)....................................................................... 16, 30, 31

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)........................................................................................16

*California v. ATF*,
   3:20-cv-06761 (N.D. Cal. Nov. 30, 2020) ..................................................... 7

*California Rifle & Pistol Ass'n, Inc. v. ATF*,
   No. 1:14-CV-1211 (E.D. Cal. Jan. 9, 2015) ................................................... 7

*Carcieri v. Salazar*,
   555 U.S. 379 (2009)........................................................................................17

*Cargill v. Garland*,
   57 F.4th 447 (5th Cir. 2023)............................................................ 16, 17, 21

*Catlin Syndicate Ltd. v. Imperial Palace of Mississippi, Inc.*,
   600 F.3d 511 (5th Cir. 2010).........................................................................17

*Cf. Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Sch.*,
   183 F. Supp. 3d 79 (D.D.C. 2016) ................................................................24

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) .................................................................. 32, 33

*Defense Distributed v. Platkin*,
   55 F.4th 486 (5th Cir. 2022) ........................................................................12

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) .......................................................................................31

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) ...................................................................................17

*Franciscan All., Inc. v. Becerra*,
   47 F.4th 368 (5th Cir. 2022) ..........................................................................33

*Garland v. VanDerStok, __ S. Ct. __*,
   No. 23A82, 2023 WL 5023383 (Aug. 8, 2023) ............................................13

*Garland, et. al. v. VanDerStok, et al.*,
   No. 4:22-cv-00691-O (N.D. Tex. Aug. 17, 2023) ........................................14

*Gonzalez v. Denning*,
   394 F.3d 388 (5th Cir. 2004) ........................................................................17

*Gun Owners of Am., Inc. v. Garland*,
   19 F.4th 890 (6th Cir. 2021) ...........................................................................5

*Gutierrez-Brizuela v. Lynch*,
   834 F.3d 1142 (10th Cir. 2016) ....................................................................26

*Hagans v. Lavine*,
   415 U.S. 528 (1974) .......................................................................................11

*Kaluom v. Stolt Offshore, Inc.*,
    504 F.3d 511(5th Cir. 2007) ..........................................................17

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988) .....................................................................13

*MD/DC/DE Broad. Ass'n v. FCC*,
    253 F.3d 732 (D.C. Cir. 2001) ......................................................36

*Midship Pipeline Co., L.L.C. v. FERC*,
    45 F.4th 867 (5th Cir. 2022)..........................................................30

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010).....................................................................35

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018).................................................................37

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety*
*& Health Admin.*,
    142 S. Ct. 661 (2022)............................................................. 18, 24

*NFIB v. Sebelius*,
    567 U.S. 519 (2012).....................................................................15

*Perrin v. United States*,
    444 U.S. 37 (1979).......................................................................19

*Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC*,
    962 F.2d 27 (D.C. Cir. 1992) .................................................. 31, 32

*Sandifer v. U.S. Steel Corp.*,
    134 S. Ct. 870 (2014)...................................................................18

*Sw. Elec. Power Co. v. EPA*,
    920 F.3d 999 (5th Cir. 2019)........................................................13

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022)................................................... 34, 35

*Texas v. United States*,
   497 F.3d 491 (5th Cir. 2007)................................................. 16, 31

*United Steel v. Mine Safety & Health Admin.*,
   925 F.3d 1279 (D.C. Cir. 2019) ....................................................34

*Utility Air Regulatory Group v. EPA*,
   573 U.S. 302 (2014)................................................................ 27, 32

*VanDerStok v. Garland*,
   625 F. Supp. 3d 570 (N.D. Tex. 2022).........................................11

*Wisconsin Central Ltd. v. United States*,
   138 S. Ct. 2067 (2018)................................................................31

*W. Virginia v. Env't Prot. Agency*,
   142 S. Ct. 2587 (2022)............................................................ 16, 30

## **Statutes**

Administrative Procedure Act.........................................................*passim*

Gun Control Act of 1968 ..............................................................*passim*

5 U.S.C. § 706(2) ..................................................................... 32, 33

18 U.S.C. § 921............................................................................. 5

18 U.S.C. § 921(a)(3) .........................................................3, 5, 15, 27

18 U.S.C. § 921(a)(3)(A).............................................................7, 18

18 U.S.C. § 921(a)(3)(B) ........................................................ 7, 28, 29

18 U.S.C. § 923(i) ....................................................................... 6

18 U.S.C. § 924(a)(1)(D) ............................................................ 6

18 U.S.C. § 926(a) ...................................................................... 5

## **Regulations**

27 C.F.R. § 478.11 (2020) .......................................................... 6

28 C.F.R. § 0.130(a) ................................................................... 5

*Title and Definition Changes*,
    43 Fed. Reg. (Mar. 31, 1978) ............................................... 6

## **Other Authorities**

111 Cong. Rec. 5527 (March 22, 1965) .................................... 19

Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24,652 (Apr. 26, 2022) ............................... *passim*

Federal Firearms Act of 1938 ............................................... 4, 27

Ghost Guns Are Guns Act,
    H.R. 1278, 115th Cong. (Mar. 1, 2017) ............................... 16

H.R. Rep. 90-1577 (June 21, 1968) ......................................... 19

National Firearms Act of 1934 ............................................ 4, 6, 7

Olson's Encyclopedia of Small Arms 72 (1985) ......................... 20

S. Rep. No. 90-1097 (1968) ....................................................... 5

Steindler's New Firearms Dictionary (1985) ............................. 20

Traffic in Overseas Proliferation of Ghost Guns Act,
    S. 459, 116th Cong. (Feb. 12, 2019)............................................................16

Untraceable Firearms Act of 2018,
    H.R. 6643, 115th Cong. § 2(a)(36) (July 31, 2018) ....................................16

Untraceable Firearms Act of 2018,
    S. 3300, 115th Cong. § 2(a)(36) (July 31, 2018)........................................16

WEBSTER'S INTERNATIONAL DICTIONARY 902, 1894 (1971)........................... 19, 20

## **INTRODUCTION**

The central provisions of the challenged Rule are premised upon an authority Congress deliberately declined to delegate, rendering the Rule an unlawful agency action that must be set aside under the APA. In response, Appellants (the "Government") allege the Rule was needed to respond to the urgent public safety and law enforcement crisis posed by "an exponential rise in the number of untraceable firearms commonly known as 'ghost guns'", Gov't Br. at 1, and that the setting aside of the Rule will impede ATF's ability "to apprehend violent individuals who may pose an ongoing threat to public safety." *Id*. at 44–43. But these explanations—even if true, which they are not —are beside the point if Congress did not provide ATF the authority to take such action—and the text of the Gun Control Act of 1968 ("GCA") shows that Congress unquestionably did not.

Congress's statutory definition of "firearm" in the GCA established the limits of ATF's regulatory authority. The Rule ignored those limits and introduced new, sweeping definitions that expanded ATF's authority over objects that are not "firearms" under the GCA and which have never been subject to regulation since the enactment of the GCA. In its (correct) analysis of the challenged definitions, the district court applied the well-worn tools of judicial review—statutory construction canons, grammatical precision, and logical consistency—and found that the definitions exceed the scope of ATF's authority. Because the Rule constitutes

unlawful agency action under the Administrative Procedure Act ("APA"), the district court next correctly followed Circuit precedent holding that the remedy of vacatur is the default rule under the APA.

This Court should affirm the decision on appeal, finding the Rule's definitions of "frame or receiver" unlawful. The Rule's unlawful provisions should not be enforced against Intervenor Plaintiff-Appellee BlackHawk Manufacturing Group, Inc. ("BlackHawk"), either by imposition of vacatur or an injunction precluding ATF and any federal law enforcement from enforcing the Rule's unlawful provisions against BlackHawk.

## STATEMENT OF JURISDICTION

The district court granted motions for summary judgment on June 30, 2023, and entered final judgment on July 5, 2023. *See* ROA.4780, 4857–58. The Government filed a timely notice of appeal from the judgment on July 13, 2023. *See* ROA.4868. The district court had jurisdiction over the case under 28 U.S.C. § 1331, and this Court has jurisdiction under 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF THE ISSUES

The ATF rule at issue rewrites, modifies and expands the statutory definition of "firearm" in the GCA to encompass objects and activities previously and correctly determined by ATF to be outside the scope of its regulatory authority.   In promulgating the Rule, ATF adopted an interpretation of the central provisions of

the GCA that departed sharply from decades of the agency's regulatory precedent and contradicted the plain language of the statutory text. The district court concluded that two central provisions of the Rule—revising the definitions of "firearm" and "frame or receiver"—constituted unlawful agency action taken in excess of ATF's statutory jurisdiction. On that basis, the district court vacated the Rule in its entirety under the APA.

BlackHawk disagrees with the issues as characterized by the Government and identifies the following issues:

1.      Whether the Rule's provisions that newly expand ATF's authority over parts that may be "readily converted" into frames or receivers are consistent with Congress's delegation of regulatory power over a "firearm", as defined in 18 U.S.C. § 921(a)(3)(B).

2.      Whether the Rule's provisions that newly expand ATF's authority to regulate aggregations of weapons parts or "weapons parts kits" are consistent with Congress's delegation of regulatory power over a "firearm", 18 U.S.C. § 921(a)(3).

3.      Whether the district court correctly followed Circuit precedent interpreting and applying the APA's directive that an unlawful agency action be "set aside" through vacatur of the Rule.

## STATEMENT OF THE CASE

**A.**     **STATUTORY BACKGROUND**

**1.     Legal Framework**

In 1934, Congress enacted the National Firearms Act "[t]o provide for the taxation of manufacturers, importers, and dealers in certain firearms and machine guns, to tax the sale or other disposal of such weapons, and to restrict importation and regulate interstate transportation thereof." National Firearms Act of 1934, Ch. 757, 48 Stat. 1236, 1236 (1934) ("NFA"). "Firearms subject to the 1934 Act included shotguns and rifles having barrels less than 18 inches in length, certain firearms described as 'any other weapons,' machine guns, and firearm mufflers and silencers." *National Firearms Act*, ATF, https://bit.ly/3Y2kzP9 (last visited Aug. 15, 2023).

Four years followed, and Congress enacted the Federal Firearms Act which defined "firearm" more broadly to include "any weapon . . . designed to expel a projectile or projectiles by the action of an explosive . . . or any part or parts of such weapon." Federal Firearms Act of 1938, ch. 850, Pub. L. 75-785, 52 Stat. 1250, 1250 (1938) (repealed 1968) ("FFA") (emphasis added).

Three decades later, Congress passed the Gun Control Act of 1968, which amended the NFA, superseded the FFA, and established a new definition of

"firearm." *See* 18 U.S.C. § 921, *et seq.* ("GCA"). Congress's new four-part definition of "firearm" as the center of the GCA was as follows:

> [t]he term 'firearm' means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3).

Congress's definition of "firearm" in the GCA deliberately rejected the FFA's 1938 definition which included "any part or parts of such a weapon" because Congress "found that it [was] impractical to have controls over each small part of a firearm. Thus, the revised definition substitute[d] only the major parts of the firearm (that is, frame or receiver) for the words 'any part or parts.'" S. Rep. No. 90-1097 (1968), as reprinted in 1968 U.S.C.C.A.N. 2112, 2200.

In enacting the GCA, Congress delegated to the Attorney General the authority to "prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter", 18 U.S.C. § 926(a) (referring to Title 18, Chapter 44), which authority was in turn delegated to ATF "to administer, enforce, and exercise the functions and powers of the Attorney General." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 897 (6th Cir. 2021) (citing 28 C.F.R. § 0.130(a)).

The GCA provides for a licensing regime that governs the importation, manufacture, and dealing of products that constitute "firearms". The GCA requires

licensed importers and licensed manufacturers of firearms to "identify by means of a serial number engraved or cast on the receiver or frame of the weapon, in such manner as the Attorney General shall by regulations prescribe, each firearm imported or manufactured by such importer or manufacturer." 18 U.S.C. § 923(i).

Violations of the GCA, as well as the NFA, carry criminal penalties, including up to five years' imprisonment. 18 U.S.C. § 924(a)(1)(D) ("[W]hoever … willfully violates any other provision of this chapter, shall be fined under this title, imprisoned not more than five years, or both.").

The GCA does not define the term "frame or receiver" used in subsection (B) of the 1968 definition of "firearm".  In 1978, ATF issued a regulation which defined "frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) (formerly codified at 27 C.F.R. § 478.11 (2020)). ATF's 1978 definition was consistent with the terms "frame" and "receiver" at the time the GCA was enacted.

## 2. Five Decades of Consensus That the Scope of ATF's Authority Is Limited to the GCA's Definition of "Firearm"

For over five decades, ATF steadfastly held the position that Congress's 1968 statutory definition of "firearm" and ATF's 1978 regulatory definition of "frame or receiver" set the proscribed limits of ATF's congressionally granted authority to

enforce federal firearm regulations. During this time, ATF recognized that although they could regulate *weapons* that "may readily be converted" to expel a projectile by the act of an explosion, 18 U.S.C. § 921(a)(3)(A), ATF had no authority to regulate items that "may readily be converted" into a "frame or receiver," 18 U.S.C. § 921(a)(3)(B). ATF's position on the interpretation of these definitions remained unchanged until 2022.

For the last several decades prior to 2022, ATF issued numerous written classification determinations as to whether a particular object or product is a "firearm" subject to regulation under the GCA or NFA. For example, in a recent lawsuit that dealt with whether a particular product was a "firearm," the government submitted a certified administrative record containing numerous classification determinations sent to manufacturers stating that their receiver-blank products were not firearms. *See* ROA.2865–2866 (referencing ATF's Certified Set of Documents Comprising the Record at 64–70, *California Rifle & Pistol Ass'n, Inc. v. ATF*, No. 1:14-CV-1211 (E.D. Cal. Jan. 9, 2015)).

In this and other recent litigation prior to the Rule, ATF filed briefs in which the agency took the same statutory interpretation position it has long held in making classification decisions. ATF admitted that "Congress has chosen to exclude firearms parts from the scope of the GCA, including parts that could be assembled

with a homemade receiver and frame to make a firearm." ROA.2493 (Gov't Motion

to Dismiss, *California v. ATF*, 3:20-cv-06761 (N.D. Cal. Nov. 30, 2020)).

### 3. The Biden Administration Announces "Will Not Wait for Congress to Act" on Expanded Gun Control

In April 2022—after the President directed his U.S. Department of Justice to

take action to address a perceived shortcoming in existing federal law[1]—ATF

published a Final Rule changing, among other things, the 1978 definition of "frame

or receiver." *See Definition of "Frame or Receiver" and Identification of Firearms*,

87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479

(2022)) (the "Rule").  ATF split the phrase into two parts, assigning the term "frame"

to handguns and the term "receiver" to any firearm other than a handgun, such as

rifles and shotguns. *See* ROA.2438, 87 Fed. Reg. at 24,735. ATF then defined the

terms "frame" and "receiver" in a manner generally consistent with the 1978

rulemaking, though with updated, more precise technical terminology. ROA.2438,

87 Fed. Reg. at 24,735.

However, the Rule did far more than merely update terminology.  Rather, ATF

decided to regulate non-firearm parts that ATF, unilaterally and under certain

conditions, determined might be a "partial" frame or receiver, under a new definition

---

[1] *Remarks by President Biden on Gun Violence Prevention*, THE WHITE HOUSE (Apr. 8, 2021), available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/04/08/remarks-by-president-biden-on-gun-violence-prevention/?utm_source=link (last accessed Aug. 15, 2023).

introduced in the Rule. That definition states "[t]he terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." ROA.2430-31; 87 Fed. Reg. at 24,727–28. The definition also states "[t]he terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material)." ROA.2431; 87 Fed. Reg. at 24,728.

The Rule further authorizes the ATF Director to consider a variety of extrinsic, largely subjective factors when determining if an object is a partially complete, disassembled, or nonfunctional "frame" or "receiver". ROA.2442; 87 Fed. Reg. at 24,739. Specifically, "[w]hen issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with [or otherwise made available to the purchaser or recipient of] the item or kit." *Id*.

In an additional departure from ATF's long-held position, the Rule requires ATF's to broaden the definition of a "firearm" in the GCA to now include "weapon parts kits" that are "designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive."

ROA.2430–31; 87 Fed. Reg. at 24,727–28.  Under this new provision, a collection of parts, none of which independently has ever constituted a firearm, may now deemed by the Government as a firearm based on a determination that the items, when grouped together, can "readily" be assembled into a firearm. The Rule creates a new definition of "readily": a "process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state." ROA.2431; 87 Fed. Reg. at 24,728. The Rule provides a non-exclusive list of eight unranked, unweighted factors, none of which is dispositive.  ROA.2438; 87 Fed. Reg. at 24,735.[2]

The Rule also created a new term, "privately made firearm," which it defines as a "firearm, including a frame or receiver, completed, assembled, or otherwise produced by a person other than a licensed manufacturer, and without a serial number placed by a licensed manufacturer at the time the firearm was produced." ROA.2431; 87 Fed. Reg. at 24,728. The Rule expands the statutory obligations of licensed dealers by stating that "licensees must legibly and conspicuously identify each privately made firearm or 'PMF' received or otherwise acquired (including

---

[2] The "readily" factors are (a) "Time, i.e., how long it takes to finish the process"; (b) "Ease, i.e., how difficult it is to do so"; (c) "Expertise, i.e., what knowledge and skills are required"; (d) "Equipment, i.e., what tools are required"; (e) "Parts availability, i.e., whether additional parts are required, and how easily they can be obtained"; (f) "Expense, i.e., how much it costs"; (g) "Scope, i.e., the extent to which the subject of the process must be changed to finish it"; and (h) "Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction").

from a personal collection) not later than the seventh day following the date of receipt or other acquisition, or before the date of disposition (including to a personal collection), whichever is sooner." ROA.2445; 87 Fed. Reg. at 24,742.  It further states that "PMFs must be identified by placing, or causing to be placed under the licensee's direct supervision, an individual serial number on the frame or receiver, which must not duplicate any serial number placed by the licensee on any other firearm." *Id*. The Rule requires licensees to retain records indefinitely until the "business or licensed activity is discontinued." ROA.2449; 87 Fed. Reg. at 24,746.

## B.  PROCEDURAL BACKGROUND

Appellees filed this lawsuit shortly before the Rule took effect in August 2022. The action challenged the Rule on multiple statutory and constitutional grounds and requesting preliminary injunctive relief, which the district court granted. ROA.1196–1217, 1666–1677; *see also VanDerStok v. Garland*, 625 F. Supp. 3d 570 (N.D. Tex. 2022). The district court later granted Appellees' motions for summary judgment, ROA.4743–4780, and held that the Rule exceeded ATF's rulemaking authority in the way it defines "frame or receiver" and "firearm". ROA.4777. Determining that its decision on statutory grounds was dispositive, the district court declined to address the federal constitutional questions presented in Respondents' remaining claims, ROA.4765 (citing *Hagans v. Lavine*, 415 U.S. 528, 547 (1974), and ordered the Rule vacated. ROA.4777–4780.  On July 18, 2023, the district court

denied the Government's request for a stay of that decision but granted a seven-day administrative stay to permit the Government to seek emergency relief from this Court. ROA.4908.

On appeal, the Government's emergency motion for a stay was denied in part by this Court in its July 24, 2023 order. Dkt. 45-1 at 3. Like the district court, this Court concluded that "ATF has not demonstrated a strong likelihood of success on the merits, nor irreparable harm in the absence of a stay[.]" *Id*. This Court likewise denied "[the Government's] request to stay the vacatur of the two challenged portions of the Rule" and agreed with the district court's determination that vacatur "reestablish[es] the *status quo ante* … which is the world before the Rule became effective." *Id*. (citing *Defense Distributed v. Platkin*, 55 F.4th 486, 491 (5th Cir. 2022), and noting that vacatur "effectively maintains, pending appeal, the *status quo* that existed for 54 years from 1968 to 2022").

This Court departed from the district court in finding that the Government had shown a strong likelihood of success in their assertion that the vacatur of the several non-challenged parts of the Rule was overbroad. *Id*. This Court noted that the district court's finding of illegality concerned only two of the Rule's provisions and referenced the Rule's severability clause. *Id*. (citing 87 Fed. Reg. at 24730). This Court observed that severance of unlawful regulatory provisions is preferred when doing so "will not impair the function of the [rule] as a whole, and there is no

indication that the regulation would not have been passed but for its inclusion." *Id.* (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) and citing *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1033 (5th Cir. 2019) (vacating only challenged portions of a rule)).

This Court's order granted the Government's request for a ten-day administrative stay to permit further proceedings. Dkt. 45-1 at 4. The Government filed an application with the Supreme Court of the United States for a stay of the district court's July 5, 2023 judgment. In addition to arguing the merits, the Government's application argued that the remedy of a "nationwide vacatur" was not available because "[s]uch universal remedies contradict Article III and traditional equitable principles, which limit courts to case-by-case judgments with respect to the parties in each case." Gov't Application for Stay of Judgment, *Garland v. VanDerStok*, No. 23A82 (July 2023) (internal quotes omitted).[3]

The Supreme Court granted the Government's application on August 8, 2023, and stayed the district court's June 30, 2023 order and July 5, 2023 judgment only "insofar as they vacate the final rule." *Garland v. VanDerStok*, __ S. Ct. __, No. 23A82, 2023 WL 5023383 (Aug. 8, 2023).

---

[3] The Government's Application for Stay is available at:
https://storage.courtlistener.com/recap/gov.uscourts.txnd.366145/gov.uscourts.txnd.366145.251.1.pdf

Despite (1) the district court's granting of injunctive relief, (2) a favorable summary judgment ruling on the merits of plaintiffs' claims, (3) a ruling by this Court that the Government was unlikely to succeed on the merits, and (4) the limitation in the Supreme Court's order declining to stay any aspect of the district court's ruling or judgment that does not "vacate the final rule," the Government currently takes the position that the provisions of the Rule the district court found unlawful may be enforced against plaintiffs, including BlackHawk, during the pendency of this appeal, and any injunctive relief would be inconsistent with the Supreme Court's limited stay. Gov't Opp. to Emergency Motions for Injunction Pending Appeal, *Garland, et. al. v. VanDerStok, et al.*, No. 4:22-cv-00691-O (N.D. Tex. Aug. 17, 2023) (ECF No. 254 at 5).[4]

## <u>SUMMARY OF THE ARGUMENT</u>

Congress has carefully defined the scope of ATF's jurisdiction to regulate firearms. In promulgating the Rule, ATF has extended its regulatory reach beyond the limits set by Congress and seeks to wield a power it does not possess under federal law. Specifically, the statutory text shows that ATF lacks the authority to regulate weapons *parts* and *potential* frames or receivers. Such regulatory authority is something that Congress considered but ultimately declined to grant in the GCA.

---

[4] The Government's Opposition Brief is available at:
https://storage.courtlistener.com/recap/gov.uscourts.txnd.366145/gov.uscourts.txnd.366145.254.0.pdf

This Court should set aside such improper Executive Branch action and vacate the Rule. This Court therefore should deny the Government's appeal and affirm the district court's judgment.

The Government's statutory interpretation arguments to support ATF's new-found power appear to be: (1) inherent in the GCA's legislative purpose is an overriding policy intent that granted ATF discretion to "update" the statutory definition of "firearm" in its regulations if the agency deems it necessary; (2) ATF has possessed this implicit power since 1968 but declined to exercise it until 2022; (3) ATF's exercise of this "updating" authority is not constrained by ATF's own previous interpretation of the GCA (or for that matter, by traditional statutory interpretation principles); and (4) any resulting Rule is largely immune from either serious judicial review or the well-established remedy of vacatur under the APA.

But the Government's defense of the Rule on these grounds cannot be reconciled with the basic interpretive principle that "the best evidence of Congress's intent is the statutory text." *NFIB v. Sebelius*, 567 U.S. 519, 544 (2012). As aptly observed by the district court, "the text of 18 U.S.C. § 921(a)(3), read in context, indicates that when Congress sought to regulate parts of weapons, it did so meticulously. Vague countervailing assertions about Congress's purpose in enacting the federal firearms laws do not override this analysis." ROA.4772.

15

Indeed, the proposed–but–failed bills introduced in both the House of Representatives and Senate show that Congress is aware of the specific concerns raised by the Government but thus far has declined to permit ATF to regulate in this area. *See, e.g.*, Ghost Guns Are Guns Act, H.R. 1278, 115th Cong. (Mar. 1, 2017) (not enacted); Untraceable Firearms Act of 2018, H.R. 6643, 115th Cong. § 2(a)(36) (July 31, 2018) (not enacted); Untraceable Firearms Act of 2018, S. 3300, 115th Cong. § 2(a)(36) (July 31, 2018) (not enacted); Stopping the Traffic in Overseas Proliferation of Ghost Guns Act, S. 459, 116th Cong. (Feb. 12, 2019) (not enacted).

This case is yet another recent example of "the Executive seizing the power of the Legislature [by ATF's] assertion of administrative authority [which] has 'conveniently enabled [it] to enact a [statutory change]' that Congress has chosen not to enact itself." *Biden v. Nebraska*, 143 S. Ct. at 2373–74 (quoting *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2614 (2022)); *see also Cargill v. Garland*, 57 F.4th 447, 461 (5th Cir. 2023). "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In short, "[a]gency authority may not be lightly presumed." *Texas v. United States*, 497 F.3d 491, 502–03 (5th Cir. 2007) ("Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony[.]"). Here, ATF sought to expand its power through newly invented

16

definitions by which the agency could begin regulating what Congress has repeatedly denied. This Court should reject ATF's attempt to do so and affirm the district court's judgment.

## STANDARD OF REVIEW

This Court reviews *de novo* both the grant of summary judgment and a district court's statutory construction, *see Kaluom v. Stolt Offshore, Inc.*, 504 F.3d 511, 514 (5th Cir. 2007), "applying the same legal standards as the district court to determine whether summary judgment was appropriate." *Catlin Syndicate Ltd. v. Imperial Palace of Mississippi, Inc.*, 600 F.3d 511, 513 (5th Cir. 2010) (quoting *Gonzalez v. Denni*ng, 394 F.3d 388, 391 (5th Cir. 2004)).

## ARGUMENT

### I.    THE RULE VIOLATES THE PLAIN LANGUAGE OF THE GUN CONTROL ACT

In any statutory interpretation challenge to an agency's action, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). The Supreme Court has consistently held that statutory text must be given its plain meaning as of the time the statute was written. *See Carcieri v. Salazar*, 555 U.S. 379, 388 (2009) ("We begin with the ordinary meaning of the [words], as understood when the [statute] was enacted."). Indeed, "[i]t is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as

17

taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (quotation marks and citation omitted).

Here, the ordinary meaning of the word "firearm"—both at the time the GCA was passed in 1968 and as consistently interpreted by ATF thereafter until 2022—does not include weapons *parts* or *potential* frames or receivers. ATF overstepped a firmly established perimeter of its regulatory authority delegated by Congress in seeking to regulate these items and the Government provides no basis for this Court to reach a different conclusion. To the contrary, ATF appears to have disregarded the Supreme Court's admonition that "[a]dministrative agencies are creatures of statute [and] accordingly possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 142 S. Ct. 661, 664–65 (2022) (*per curiam*).

## A.    Congress Deliberately Excluded Partially Complete Frames and Receivers from the Statutory Definition of "Firearm"

"Firearm" is the central term of the GCA and was carefully defined by Congress. The primary definition of "firearm" contains three elements: "any weapon (including a starter gun) which [1] will or [2] is designed to or [3] may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). Under this primary definition, a "firearm" is first and foremost a "weapon"—a point accentuated by Congress's explicitly including starter guns, which are not obviously weapons, in its definition.  Recognizing that weapons parts

are not weapons, Congress created a secondary definition covering specific weapon parts: "the frame or receiver of any such weapon." *Id*. § 921(a)(3)(B). Congress's definition does not encompass all weapons parts, only "frames and receivers"—a deliberate departure from the FFA's definition which included "any part or parts" of a firearm. *See* 111 Cong. Rec. 5527 (March 22, 1965) ("The present definition of this term includes 'any part or parts' of a firearm. It has been impractical to treat each small part of a firearm as if it were a weapon. The revised definition substitutes the words 'frame or receiver' for the words 'any part or parts."); *see also* H.R. Rep. 90-1577, at 4416 (June 21, 1968) ("Under former definitions of 'firearm,' any part or parts of such a weapon were included. … [T]his definition includes only the major parts of the firearm, that is, the frame or receiver.").

While not defined in the GCA, "frame" and "receiver" had distinct, settled meanings when Congress enacted the law in 1968.  Accordingly, "unless otherwise defined,  words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979); *accord Cargill*, 57 F.4th at 459 (considering the definition of relevant terms "[a]t the time the statue was passed"). Only three years after passage of the GCA, the Webster's International Dictionary defined a "frame" as "the basic unit of a handgun which serves as a mounting for the barrel and operating parts of the arm[,]'" and a "receiver" as "the metal frame in which the action of a firearm is fitted and to which the breech end of

19

the barrel is attached[.]" ROA.2357 (Rule at 24,654 (quoting WEBSTER'S INTERNATIONAL DICTIONARY 902, 1894 (1971)).[5]

The Rule's attempt to expand Congress's definition to cover partial, incomplete and other non-receivers is foreclosed by the plain text of the GCA, along with the historical context and meaning. Congress defined "firearm" to include the "frame or receiver" of a "weapon" and excluded other weapons parts. Nor did Congress provide for any expansion of its definition when the possessor of the non-firearm parts also has access to assembly instructions, jigs, or tools. The Rule's definition "frame or receiver" attempts to modify the statute to include what Congress intentionally excluded. The definition, therefore, falls outside of the scope of ATF's delegated authority.

ATF's abandonment of basic statutory construction principles and repudiation of its own historical interpretation position leaves the Government unable to answer the central question of this case, as articulated by the district court:

> [T]he issue in this case is whether ATF may properly regulate a component as a "frame or receiver" even after ATF determines that the component in question is not a frame or receiver. It may not. Logic dictates that a part cannot be both not yet a receiver and receiver at the same time. Defendants' reliance on that logical contradiction is fatal to their argument.

---

[5] The Rule itself cites additional examples indicating settled definitions of "frame" and "receiver" contemporaneous with passage of the GCA, including OLSON'S ENCYCLOPEDIA OF SMALL ARMS 72 (1985) (the term "frame" means "the basic structure and principal component of a firearm") and STEINDLER'S NEW FIREARMS DICTIONARY, p. 209 (1985) ("receiver" means "that part of a rifle or shotgun . . . that houses the bolt, firing pin, mainspring, trigger group, and magazine or ammunition feed system."). ROA.2357

ROA.4770–71 (footnote omitted).

As this Court observed in *Cargill*, context and grammar matter and, as in that case, "Congress knew how to write a definition" that would have followed the Government's preferred reading "if it wanted to[, b]ut it did not." 57 F.4th at 460. And again, as in *Cargill*, "[t]he Government offers nothing to overcome this plain reading[.]" *Id*.

**B.    The Rule's Definition of "Frame or Receiver" Exceeds the Scope of ATF's Authority to Regulate "Firearms" as Defined by the GCA**

The statutory definition found in Section 921(a)(3) consists of two parts pertinent here, with subsection (A) discussing "weapons" which are "designed to" or "may readily be converted" to fire ammunition, and subsection (B) discussing "the frame or receiver of any such weapon." The Rule, however, takes the "may readily be converted" phrase in subsection (A) and imports it into subsection (B)— thereby giving subsection (B) a semantic elasticity that potentially brings, based on ATF's subjective interpretation, any unfinished, incomplete "frame or receiver" within the GCA's definition "firearms" upon ATF's determination that a non-frame or non-receiver crosses the "may readily be converted" threshold. *See* ROA.2430; 87 Fed. Reg. at 24,727. This is impermissible on its face.

Nevertheless, the Government urges this Court to overlook the fact Congress declined to include parts or repeat its use of "readily converted" included in subsection (A) to the defined term "frame or receiver of any such weapon" in

21

subsection (B).  By the Government's view, the Court should read the phrase "readily converted" in subsection (A) as also supplying semantic information critical to the definition in subsection (B). But that's not how the law is written, and the Government does not explain what authority might allow this Court, or any court, to undertake the statutory rearranging they advocate.

A plain reading of the text of the GCA demonstrates that Congress included any "weapon" that is "designed to" or "may readily be converted" to fire an explosive projectile in the federal definition of "firearm," and deliberately excluded the expansions of "may readily be converted" and "designed to" out of the regulation of "the frame and receiver of any such weapon." ROA.4769–70.  As such, the Rule plainly rewrites and expands the statute by inserting these terms where Congress declined to include them.

The Government also contends that the Rule's splicing in of the statutory term "readily" to the new regulatory definition of a partially complete, disassembled, or nonfunctional "frame or receiver" is consistent with the GCA's "firearm" as a matter of ordinary usage. Gov't Br. at 19. The Government relies upon an analogy of a disassembled bicycle, positing that "[a] bicycle is still a bicycle even if it lacks pedals, a chain, or some other component needed to render it complete or allow it to function." *Id*. The Government continues: "So too if a bicycle is shipped with plastic guards attached to the gears or brakes that must be removed before it is used, or with

a seat tube that the user must cut to length before installing." *Id*. The Government concludes that "[n]o one could deny that a company selling products in those conditions was engaged in selling 'bicycles.'" *Id*. But the analogy is flawed for many reasons.

First, the analogy replicates the begging-the-question fallacy made by the Government throughout this litigation: the analogy (1) starts by assuming the conclusion that a settled definition of *bicycle* already exists; (2) then proposes that "a *bicycle* is a *bicycle* even if it lacks pedals, a chain, or some other component" or "a *bicycle* is shipped with plastic guards"; and (3) reaches the tautological conclusion that "no one could deny that a company selling products [read: *bicycles*] in those conditions was engaged in selling '*bicycles*'". Indeed, nothing in the self-contained, circular logic of the analogy makes a relevant point here.

Second, the Government's "ordinary usage" argument-by-analogy conflates two very different types of language having vastly different interpretive importance. One the one hand, as relevant here, the word "firearm" is the central defined term in a 54-year old statute governing a federal regulatory agency and is expressly included in the legal guarantees enshrined in our Nation's highest law. The same cannot be said with respect to a term like "bicycle".

The Government's bicycle analogy, like many of its arguments, depends on circular reasoning and produces a logical fallacy lending no support for the

Government's new statutory interpretation. It also functionally disavows the position ATF held over the course of five decades. *See Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. at 666 ("It is telling that OSHA, in its half century of existence, has never before adopted a broad public health regulation of this kind[.] … This lack of historical precedent, coupled with the breadth of [newly claimed] authority … is a telling indication that the mandate extends beyond the agency's legitimate reach.") (internal quotation marks omitted). ATF is a well-established agency that has repeatedly recognized the limitations of its authority as demarcated in the text and structure of the GCA, *see, e.g.*, ROA.2493, which nowhere empowers the agency to expand its regulatory reach by simply pronouncing a new interpretation of its governing statute. *Cf. Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Sch.*, 183 F. Supp. 3d 79, 84 (D.D.C. 2016) ("Although it is understandable that new agencies like the CFPB will struggle to establish the exact parameters of their authority, they must be especially prudent before choosing to plow head long into fields not clearly ceded to them by Congress."), *aff'd*, 854 F.3d 683 (D.C. Cir. 2017).

The Government turns this past practice on its head and argues that the "correctness of ATF's interpretation is likewise confirmed by its consistency with previous regulatory practice." Gov't Br. at 21. Quoting the Rule, the Government asserts that "ATF has long held that a piece of metal, plastic, or other material

becomes a frame or receiver when it has reached a critical stage of manufacture[.]" *Id*. The Government recites phrases like "critical stage of manufacture" and "degree of completeness" to emphasize ATF's historical discretion to make qualitative determinations, claiming the Rule "does no more than explain what 'degree of completeness' is required for a partially complete frame or receiver to be a frame or receiver within the meaning of the statute." Gov't Br. at 22.  The Government also attempts to marshal support by the district court's observation that "ATF does indeed have discretion to decide whether a particular component is a frame or receiver based upon that component's degree of completeness." Gov't Br. at 22; *id*. at 11.

    However, the Government presents an incomplete and inaccurate portrayal of ATF's "longstanding regulatory practice" that obscures the Rule's radical divergence from it.  Prior to the Rule, ATF examined the tangible, measurable physical features of an unfinished component to render it capable of being or becoming a frame or receiver of a regulated firearm, exercising its discretion to make classification determinations consistent with the GCA's definition of "firearm". *See, e.g.*, ROA.228–244. Over the course of four decades, ATF's determinations produced scores of detailed technical analyses, measurements, and images cumulatively comprising a library of objective, quantitative, understandable and publicly available guidance documenting the agency's recognition that its discretion

was confined to limitations defined by Congress. *See, e.g.*, ROA.228–244; ROA.1150–59.

With the Rule, however, ATF claims discretion to make determinations regarding objects and activities over which ATF has long acknowledged having no statutory authorization. The Government's claim that the Rule "does no more than explain what 'degree of completeness' is required for a partially complete frame or receiver to be a frame or receiver within the meaning of the statute" is a misleading denial of the reality that the Rule is an unprecedented expansion of ATF's discretion in scope and substance far beyond "longstanding regulatory practice".[6] Like the Rule, the Government's brief is exceedingly selective in citing and discussing ATF's enforcement history and offers little more than self-serving commentary while carefully avoiding contrary factual history or editorializing around any previous ATF acknowledgment of facts that show the Rule departs from "longstanding regulatory practice."[7] *See Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1152 (10th

---

[6] In addition to reinterpreting the GCA's definition of "firearm", the Rule introduces a series of new definitional phrases—e.g., "partially complete," "may readily be completed, assembled, restored, or otherwise converted," and "stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon"—that are *subjective*, *qualitative*, and *patently susceptible to divergent interpretations*. These phrases, when combined with the Rule's authorization of the ATF Director to "consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials," effectively delegate to the ATF Director unbounded discretion to unilaterally determine the reach of ATF's jurisdiction over any raw materials, components, fabrication tools, and documentation utilized or involved in the firearm manufacturing process and supply chain. *See* ROA.2442; 87 Fed. Reg. at 24,739.

[7] The Government repeatedly relies on the terms "functional" and "nonfunctional" in making its arguments; however, neither of those terms appears in the text of the GCA and they add no

Cir. 2016) (an agency cannot "reverse its current view 180 degrees anytime based merely on the shift of political winds and still prevail"); *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 325–26 (2014) (an agency may not "rewrit[e] ...unambiguous statutory terms" to suit "bureaucratic policy goals").

## C.    The Rule's Definition of "Weapons Parts Kits" Exceeds the Scope of ATF's Congressionally Delegated Authority

ATF's attempt to regulate "weapon parts kits" under the GCA is equally improper. The GCA defines a "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921(a)(3). The Rule expands that definition, adding that the term "firearm" "shall include a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." ROA.2438; 87 Fed. Reg at 24,738. But that language conflicts with the statute's definition of "firearm."

ATF has no general authority to regulate weapon parts, as demonstrated by Congress's enactment in 1968 of a superseding definition of "firearm" that replaced the FFA's authorized regulation of "any part or parts of" a firearm. Federal Firearms

---

interpretative value in understanding what the language in the statute makes explicit: the relevant *function* is that of a "weapon which will … expel a projectile by the action of an explosive."

Act of 1938, Ch. 850, Pub. L. No. 75-785, 52 Stat. 1250, 1250 (1938) (repealed 1968). ROA.4745–46.

Under the GCA's superseding definition, the only firearm parts that come within ATF's purview are "the frame or receiver of any such weapon" that Congress defined as a firearm. 18 U.S.C. § 921(a)(3)(B).  The Rule, however, expands the regulatory definition of statutory "firearms" to now include weapon parts kits, or "aggregations of weapon parts", that are "designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." ROA.2364–65; 87 Fed. Reg. at 24,661–62.  In doing so, the Rule exceeds Congress's definition of "firearms" in the GCA, which does not cover weapon parts, or aggregations of weapon parts, regardless of whether the parts may be readily assembled into something that may fire a projectile or if the parts come with instructions, jigs, or such instructions or gigs are readily available.  The district court correctly determined that "reading § 921(a)(3)(A) as authorizing ATF to regulate any aggregation of weapon parts that may readily be converted into a weapon would render § 921(a)(3)(B)'s carveout for 'frame[s] or receiver[s]' superfluous." ROA.4774 ("Accepting Defendants' interpretation would be to read the statute as authorizing regulation of (A) weapon parts generally, and (B) two specific weapon parts.").

28

While the Government argues that there is no superfluity between the two provisions, on December 27, 2022, ATF issued an open letter to all Federal Firearms Licensees which announced the following:

> Applying the regulatory text of Final Rule 2021-05F, partially complete Polymer80, Lone Wolf, and similar striker-fired semiautomatic pistol frames, including, but not limited to, those sold within parts kits, have reached a stage of manufacture where they "may readily be completed, assembled, restored, or otherwise converted" to a functional frame. This definition of "readily" applies to each and every classification of a partially complete frame or receiver under this Rule, whether sold alone or as part of a kit. Therefore, even without any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials, **these partially complete pistol frames are "frames" and also "firearms" as defined in the GCA and its implementing regulations**, 18 U.S.C. § 921(a)(3)(B) and 27 CFR 478.12(a)(1), (c).

ROA.2981–2990 (emphasis added). Despite the Government's position in its Brief, ATF's open letter suggests that the Rule has already rendered the aforementioned statutory language superfluous in practice.

### D. The Government Downplays the Magnitude of the Expanded Regulatory Power ATF Will Wield with the Rule's Definitions

If the Government's reading of the GCA is endorsed by this Court, the ramifications go well beyond the Rule's regulation and criminalization of particular unregulated components and activities common among the homemade gunmaking community. The equally consequential result is that it will legitimize ATF's statutory interpretation arguments and fundamentally disconnect the agency from its statutory origins and constraints. As a practical matter ATF will have acquired an

interpretive mechanism to marshal Congress's delegation of authority to unilaterally revise and reimagine the scope of ATF's legal mandate however it sees fit going forward. *See Midship Pipeline Co., L.L.C. v. FERC*, 45 F.4th 867, 877 (5th Cir. 2022) ("A statutory interpretation that gives an agency the power to 'change the plot line' of its enabling legislation is erroneous.") (quoting *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2609 (2022)).

The Supreme Court recently addressed similar consequences in *Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023), where the Court determined the Secretary of Education did not have authority to release millions of borrowers of their student loan obligations. In addressing the ramifications of the government's statutory interpretation arguments, the Court observed that

> [u]nder the Government's reading of the HEROES Act, the Secretary would enjoy virtually unlimited power to rewrite the Education Act. This would "effec[t] a 'fundamental revision of the statute, changing it from [one sort of] scheme of ... regulation' into an entirely different kind," … one in which the Secretary may unilaterally define every aspect of federal student financial aid….

143 S. Ct. at 2373 (quoting *W. Virginia v. Env't Prot. Agency*, 142 S. Ct. at 2612). In the same way, the Government's proposed interpretation uncouples ATF rulemaking from the constraints of its enabling statute, and would result in an agency exercising self-granted discretion to pursue regulatory ambitions as it see fit.

Indeed, as the Supreme Court has aptly observed: "The question here is not whether something should be done; it is who has the authority to do it." *Biden v.*

*Nebraska*, 143 S. Ct. at 2372. The Government suggests a reading of the GCA in which the requirement that regulatory actions be within the scope of an agency's delegated authority can be suspended if an agency is responding to a purported social crisis or modern technology advancements. But no matter how "important, conspicuous, and controversial the issue . . . an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000)). "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wisconsin Central Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018).

\* \* \*

The Government contends that the expansive revision of existing definitions and the introduction of brand new terms in the Rule are necessary to achieve the purpose for which the GCA was enacted. Gov't Br. at 31–32; ROA.2389; 87 Fed. Reg. at 24,686. But courts encountering similar arguments have rejected an agency's "whatever-it-takes" approach to regulation predicated on Congress's allegedly broad purposes for a statute. *Texas v. United States*, 497 F.3d 491, 502 (5th Cir. 2007) (citing *Platte River Whooping Crane Critical Habitat Maint. Trust v. FERC*, 962

F.2d 27, 33 (D.C. Cir. 1992) (appeals to a statute's broad purposes do not allow the discovery of implicit delegations of authority when Congress has explicitly delineated the boundaries of delegated authority)).

"Under our system of government, Congress makes laws and the President, acting at times through agencies like [ATF], 'faithfully execute[s]' them." *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 327 (2014) (quoting U.S. CONST., Art. II, § 3). While the power to execute laws "necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration ... it does not include a power to revise clear statutory terms[,]" *Id.*; *see, e.g.*, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) (agency lacked authority "to develop new guidelines or to assign liability in a manner inconsistent with" an "unambiguous statute"). The Rule represents an attempt by ATF to implement policy change and enact omnibus federal gun control legislation through bureaucratic regulation, rather than through legislation, and in so doing exceeds its statutory authority.

## II.   THE DISTRICT COURT FOLLOWED CIRCUIT PRECEDENT AND PROPERLY APPLIED STATUTORY AUTHORITY IN VACATING THE RULE

Fifth Circuit precedent recognizes the district court's power "to 'set aside'— i.e., formally nullify and revoke—an unlawful agency action". *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022) (quotation omitted) (permitting vacatur under 5 U.S.C. § 706(2)). The district court correctly recognized

and followed this Court's view that vacatur is the "default rule" for agency action otherwise found to be unlawful. *Id*. at 859–60; *accord Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75, 375 n.29 (5th Cir. 2022) (concluding that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation"). Nor was there any basis to remand to ATF given the lack of statutory authority to act.

### A.    Vacatur Is The Proper Remedy In This Circuit

In applying the plain language of the APA's "set aside" directive, the district court followed this Court's precedent and correctly applied the law in determining that "the proper remedy for a finding that an agency has exceeded its statutory jurisdiction is vacatur of the unlawful agency action." ROA.4777–78 (citing *Data Mktg. P'ship*, 45 F.4th at 859 (permitting vacatur under 5 U.S.C. § 706(2)).

The district court acknowledged circumstances in which a court may remand a rule or decision to the agency to cure procedural defects, but found that "the Fifth Circuit considers vacatur the 'default rule' for agency action otherwise found to be unlawful." ROA.4778 (quoting *Data Mktg. P'ship*, 45 F.4th at 859–60 and citing *Franciscan All., Inc.*, 47 F.4th at 374–75, 375 n.29 (concluding that "[v]acatur is the *only* statutorily prescribed remedy for a successful APA challenge to a regulation") (emphasis added by district court)).

The district court also considered out-of-circuit cases and noted that the D.C. Circuit shares the Fifth Circuit's view regarding vacatur as the appropriate remedy in most cases. ROA.4778 (citing *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action …. In rare cases, however, we do not vacate the action but instead remand for the agency to correct its errors.")).

Applying the analysis summarized above, the district court determined its finding that the ATF has exceeded its statutory authority warranted the remedy of vacatur. ROA.4778. The district court considered—but declined to apply— the option of remand, reasoning (correctly) that "an illegitimate agency action is *void ab initio* and therefore cannot be remanded as there is nothing for the agency to justify." ROA.4778. The district court noted the Government's tacit concession of this point in contending  that "if vacatur is authorized under the APA, it is not warranted here in the event that Plaintiffs succeed on the merits of any procedural claim, because the agency can likely correct any such error on remand." ROA.4778.

The district court's order also considered the disruptive impact of vacatur of the unlawful agency action, and found it "would be minimally disruptive because vacatur simply 'establish[es] the status quo' that existed for decades prior to the agency's issuance of the Final Rule last year." ROA.4779 (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)).

34

Further, the district court considered the Government's argument that any vacatur should be limited to the parties in the lower proceedings—a contention the Government urged "while citing no binding authority in support." ROA.4779. The district court noted that the Government's suggested litigant-specific vacatur remedy would be "more akin to an injunction that would prohibit the agencies from enforcing their unlawful Final Rule against only certain individuals." ROA.4779. The district court rejected the Government's targeted-vacatur suggestion with an apt recitation of the Supreme Court's guidance as cited by the Fifth Circuit that "[t]here are meaningful differences between an injunction, which is a 'drastic and extraordinary remedy,' and vacatur, which is 'a less drastic remedy.'" ROA.4779 (quoting *Texas v. United States*, 40 F.4th at 219 (in turn quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (assuming the availability of vacatur under the APA))).

Indeed, "vacatur does nothing but re-establish the status quo absent the unlawful agency action [and] neither compels nor restrains further agency decision-making." ROA.4779 (quoting *Texas v. United States*, at 220). The districts court's decision accounted for all the relevant factors and applied the correct legal analysis in ordering vacatur of the Rule.

**B.     There Is No Basis to Remand ATF's Unlawful Agency Action**

The Government suggests that the district court erred by not applying severability principles to limit the vacatur to the offending provisions and otherwise allow the Rule to proceed as an enforceable regulation. Gov't Br. at 16, 34. But the Government fails to cite any provision of the APA or applicable caselaw to support the notion that the district court was required to undertake a severability analysis in applying the APA's "set aside" directive.  Indeed, the APA directs courts to "set aside" unlawful agency action and says nothing regarding severability or requiring remand.

**C.     The Rule Is Not Severable**

While the Rule includes a severability clause, *see* ROA.2433; 87 Fed. Reg. at 24,730, that clause is located amid hundreds of pages of regulatory content most of which includes or refences the unlawfully defined terms "firearm", "frame" or "receiver.  The definitions of "frame or receiver" and "firearm" give the Rule its title and are central to its intended objectives. Where, as here, the putatively severable provisions of a regulation are the central, weight-bearing supports to its objectives, courts are authorized to vacate the entire rule and leave the agency to decide whether and how to proceed. *See MD/DC/DE Broad. Ass'n v. FCC*, 253 F.3d 732, 735–36 (D.C. Cir. 2001) (*denying reh'g en banc*) ("[I]t is clear that severing one of the two options and thereby making the other mandatory would create a rule that the

Commission did not consider and which, according to the Commission's own analysis in the course of rulemaking, would not have accomplished the Commission's two goals as it described them.").

It is evident that the unlawful provisions of the Rule "were obviously meant to work together" with the remainder of the regulation, *Murphy v. NCAA*, 138 S. Ct. 1461, 1483 (2018), and therefore cannot be severed. S*ee also Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (unaffected portions of law that are "incapable of functioning independently" cannot be severed). The invalid provisions are at the core of the Rule and impact nearly every aspect of the regulation. The district court appropriately declined to apply severance in issuing its remedy.

### D.    At a Minimum, the Court Should Fashion a Remedy—Via Vacatur or Injunction—That Provides BlackHawk With Protection from Enforcement of the Rule

To the extent the Court declines to affirm the district court's vacatur of the Rule in its entirety and instead fashion a narrowed relief by virtue of vacatur or injunction, such relief should provide BlackHawk with durable, meaningful protection against federal enforcement of the Rule. Such relief is warranted to protect BlackHawk from ATF's regulatory efforts to wield power outside the scope of regulatory authority granted by Congress.

## **CONCLUSION**

For the forgoing reasons, this Court should affirm the district court's order and judgment.

Respectfully submitted:

*/s/ Michael J. Sullivan*
Michael J. Sullivan
Nathan P. Brennan
ASHCROFT LAW FIRM, LLC
200 State Street
Boston, MA 02109
(617) 573-9400
msullivan@ashcroftlawfirm.com
nbrennan@ashcroftlawfirm.com

Brian D. Poe
BRIAN D. POE, ATTORNEY AT LAW PLLC
The Bryce Building
909 Throckmorton Street
Fort Worth, TX 76102
(817) 870-2022 (office)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit on August 23, 2023 by using the appellate CM/ECF system and that service was accomplished on all counsel of record by the appellate CM/ECF system except for counsel listed below, who was served by US Mail:

Dated: August 23, 2023                    /s/*Michael J. Sullivan*
                                          Michael J. Sullivan

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that this Response Brief of Plaintiff-Appellee BlackHawk Manufacturing Group, Inc. complies with the type-volume limitation of FED. R. APP. P.27(d)(2)(A) because this brief contains 8,968 words, excluding the parts exempted by FED. R. APP. P. 32(f).

This brief also complies with the typeface and type style requirements of FED.R. APP. P. 27(d)(1)(E) and 32(a)(5)-(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 (Version 2212) in Times New Roman 14-point font.

Dated: August 23, 2023                    */s/ Michael J. Sullivan*
                                          Michael J. Sullivan