No. 23-10718

_____

In the United States Court of Appeals for the Fifth Circuit

_____

Jennifer VanDerStok; Michael G. Andren; Tactical Machining, L.L.C.,
a limited liability company; Firearms Policy Coalition, Incorporated,
a nonprofit corporation,

Plaintiffs – Appellees

Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent
Arms; Defense Distributed; Second Amendment Foundation, Incorporated; Not
An L.L.C., doing business as JSD Supply; Polymer80, Incorporated,

Intervenor Plaintiffs – Appellees

v.

Merrick Garland, U.S. Attorney General; United States Department
of Justice; Steven Dettelbach, in his official capacity as Director of the
Bureau of Alcohol, Tobacco, Firearms and Explosives; Bureau of Alcohol,
Tobacco, Firearms, and Explosives,

Defendants – Appellants

_____

Appeal from the United States District Court for the
Northern District of Texas; No. 4.22-cv-00691-O

_____

**Brief of Defense Distributed, the Second Amendment Foundation, Inc.,
And Not An LLC, LLC, doing business as JSD Supply**

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

## Certificate of Interested Persons

The undersigned counsel of record certifies that, in addition to the persons already certified by parties to this action, the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Parties | Counsel |
| --- | --- |
| Jennifer VanDerStok | Cooper & Kirk PLLC |
| | David H. Thompson |
| Michael G. Andren | Peter A. Patterson |
| | William V. Bergstrom |
| Tactical Machining, L.L.C., a limited liability company | Cooper & Scully, P.C. |
| | Richard Brent Cooper |
| Firearms Policy Coalition, Incorporated, a nonprofit corporation | Benjamin David Passey* |
| | Mountain States Legal Foundation |
| Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms | Brian A. Abbas |
| | Erin M Erhardt |
| | FPC Action Foundation |
| Defense Distributed | Cody J. Wisniewski |
| Second Amendment Foundation, Incorporated | New Civil Liberties Alliance |
| | Kaitlyn D. Schiraldi |
| Not An L.L.C., doing business as JSD Supply | Brian D. Poe, Attorney At Law PLLC |
| | Brian Daniel Poe |
| Polymer80, Incorporated | Ashcroft Law Firm LLC |
| | Joseph Christopher Amrhein, Jr. |

i

Merrick Garland, in his official capacity
as Attorney General of the United
States

United States Department of Justice

Steven Dettelbach, in his official
capacity as Director of the Bureau of
Alcohol, Tobacco, Firearms and
Explosives

Bureau of Alcohol, Tobacco, Firearms
and Explosives

Michael J. Sullivan
Nathan P. Brennan

Flores Law PLLC
Chad Flores

Beck Redden LLP
Nicholas Bruno

Latham & Watkins LLP
Zachary Nelson

Evans, Daniel, Moore, Evans, Biggs &
Smid
Matthew Joseph Smid

Brewer & Pritchard, P.C.
J. Mark Brewer*

Bradley Arant Boult Cummings, LLP
Dennis Daniels
James W. Porter*
Marc A. Nardone*

United States Department of Justice
Sean Janda
Daniel M. Riess
Jeremy S.B. Newman
Martin M. Tomlinson
Taisa M. Goodnature

s/ Chad Flores
Chad Flores

**Statement Regarding Oral Argument**

The Court has already expedited this appeal and set it for oral argument, which due to time constraints cannot comfortably accommodate a separate submission by counsel for every group of appellees. So for efficiency's sake, Defense Distributed, the Second Amendment Foundation, and JSD request to submit their position on briefs alone, *see* 5th Cir. R. 34.3, reserving the right to address questions the Court may direct to Defense Distributed, the Second Amendment Foundation, and/or JSD via standard supplemental letter, *see* Fed. R. App. P. 28(j), or a more extensive written supplemental response if one is requested by the Court.

Alternatively, if the Court desires to hear argument from Defense Distributed, the Second Amendment Foundation, and/or JSD in particular, these Appellees request that the Court issue an order to that effect, *see* Fed. R. App. P. 34(b), and consider extending the time for each side's oral argument. *Cf.* 5th Cir. R. 34.12.

# Table of Contents

**Page**

Certificate of Interested Persons .................................................................i

Statement Regarding Oral Argument ........................................................iii

Table of Contents .....................................................................................iv

Table of Authorities ..................................................................................vi

Issues Presented .......................................................................................1

Statement of the Case ................................................................................2

I.      The Rule expands federal law's "firearm" definition to criminalize wide swaths of otherwise legal non-firearm items. .........................2

II.     The district court held the Rule illegal and vacated it. ...................6

Summary of the Argument...........................................................................7

Argument ...................................................................................................9

I.      The Rule violates the Administrative Procedure Act. ....................9

     A.      The Rule violates the APA by contradicting the statute. ...................10

         1.      The district court's analysis is correct. ...................................11

         2.      The "readily be converted" clause applies only to items that are already a "weapon" ......................................13

         3.      The government's view creates meaningless surplusage. ........14

         4.      Congress knows how to distinguish "assembly" from "completion," "production," and "manufacturing." ..............14

         5.      The canons of constitutional avoidance and lenity apply. ........16

B.     The Rule violates the APA because the rulemaking's Second Amendment inquiry violated *Bruen*. .................................................. 19

     1.     ATF's rulemaking process had to conduct a *Bruen*-compliant historical inquiry but clearly did not. ............ 20

     2.     This error warrants relief. ....................................................... 22

C.     The Rule violates the APA by violating the Due Process Clause. ........ 27

II.     The APA violations warrant maximum relief. ............................................... 31

A.     No matter what, the judgment's APA relief should at least extend to the Rule's illegal aspects. .................................................... 32

B.     No matter what, the judgment's APA relief should at least extend to the parties. ............................................................................. 33

C.     Current precedent supports the district court's issuance of APA relief nationwide. ........................................................................... 33

     1.     This district court considered the correct factors. ................... 34

     2.     Precedent authorizes nationwide vacatur. ............................... 36

D.     SAF can obtain relief for its members. .............................................. 37

     1.     The arguments about relief for SAF's members are hypothetical and premature. .................................................... 37

     2.     SAF has standing to pursue relief for its members .................. 38

     3.     An organizational plaintiff's members need not become parties to benefit from a judgment for their organization. ........ 41

Conclusion .......................................................................................................... 44

Certificate of Compliance ................................................................................. 45

# Table of Authorities

## Cases

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
   No. 23-10362, 2023 WL 5266026 (5th Cir. Aug. 16, 2023). ................... 36, 43

*City of Arlington, Tex. v. F.C.C.*,
   668 F.3d 229 (5th Cir. 2012) ........................................................................ 24

*Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*,
   138 S. Ct. 1061 (2018) ................................................................................. 14

*Data Mktg. P'ship, LP v. United States Dep't of Labor*,
   45 F.4th 846 (5th Cir. 2022) ....................................................................... 36

*DeVoss v. Sw. Airlines Co.*,
   903 F.3d 487 (5th Cir. 2018) ....................................................................... 37

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ...................................................................................... 17

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) ................................................................................. 12

*Franciscan All., Inc. v. Becerra*,
   47 F.4th 368 (5th Cir. 2022) ....................................................................... 36

*Hunt v. Washington State Apple Advertising Commission*,
   432 U.S. 333 (1977) ................................................................................. 38, 42

*Jarkesy v. SEC*,
   34 F.4th 446 (5th Cir. 2022) ....................................................................... 18

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) .................................................................................... 17

*Johnson v. United States*,
   576 U.S. 591 (2015)..............................................................27, 29, 30

*Longoria v. Hunter Express, Ltd.*,
   932 F.3d 360 (5th Cir. 2019) ....................................................35, 36

*Luster v. Collins (In re Collins)*,
   170 F.3d 512 (5th Cir. 1999) ........................................................ 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*,
   463 U.S. 29 (1983)........................................................................20

*NAACP v. Ala. ex rel. Patterson*,
   357 U.S. 449 (1958) ......................................................................42

*New York State Rifle & Pistol Association, v. Bruen*,
   142 S.Ct. 2111 (2022) .............................................................*passim*

*Nicholson v. Brown*,
   599 F.2d 639 (5th Cir. 1979) ........................................................ 35

*PDK Labs. Inc. v. U.S. D.E.A.*,
   362 F.3d 786 (D.C. Cir. 2004) ................................................. 23, 24

*Perry v. Schwarzenegger*,
   591 F.3d 1147 (9th Cir. 2010) ...................................................... 42

*Sessions v. Dimaya*,
   138 S. Ct. 1204 (2018) ..................................................................30

*Shinseki v. Sanders*,
   556 U.S. 396 (2009)......................................................................23

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
   245 F.3d 434 (5th Cir. 2001) ........................................................25

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
   143 S. Ct. 2141 (2023) ............................................................ 39, 42

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
  37 F.4th 1078 (5th Cir. 2022) ................................................ 39, 40

*Texas v. United States*,
  50 F.4th 498 (5th Cir. 2022) ...................................................... 9

*Town of Chester v. Laroe Ests., Inc.*,
  137 S. Ct. 1645 (2017) ............................................................. 40

*Tripoli Rocketry v. ATF*,
  437 F.3d 75 (D.C. Cir. 2006.) .................................................. 28

*United States v. Juarez-Duarte*,
  513 F.3d 204 (5th Cir. 2008) .................................................... 35

*United States v. Johnson*,
  632 F.3d 912 (5th Cir. 2011) ............................................... 24, 25

*United States v. Lim*,
  444 F.3d 910 (7th Cir. 2006), .................................................. 28

*United States v. Thompson/Ctr. Arms Co.*,
  504 U.S. 505(1992) ................................................................. 18

*United States v. Walters*,
  418 F.3d 461 (5th Cir. 2005). .................................................. 23

*U.S. Steel Corp. v. U.S. E.P.A.*,
  595 F.2d 207 (5th Cir. 1979) ................................................... 25

*Worldcall Interconnect, Inc. v. FCC*,
  907 F.3d 810 (5th Cir. 2018) ................................................... 26

## Constitutional Provisions

U.S. Const. art. I, § 1 ................................................................ 2

U.S. Const. amend. V. ............................................................. 27

## Statutes

5 U.S.C. § 706 ................................................................................... 8, 10

10 U.S.C. § 7543 ................................................................................... 15

18 U.S.C. § 921 .................................................................................... 3, 13

18 U.S.C. § 922 ....................................................................................... 2

18 U.S.C. § 923 ....................................................................................... 2

19 U.S.C. § 1677j .................................................................................. 15

19 U.S.C. § 2703 ................................................................................... 15

19 U.S.C. § 3203 ................................................................................... 15

19 U.S.C. § 3721 ................................................................................... 15

26 U.S.C. § 599A ..................................................................................... 3

## Regulations

27 C.F.R. § 478.12 .........................................................................*passim*

27 C.F.R. § 478.11 .........................................................................*passim*

*Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) .........................................................................*passim*

*Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) ................. 3

## Other Authorities

5th Cir. R. 34 ........................................................................................ iii

Fed. R. App. P. 28 ............................................................................ iii, 32

## Issues Presented

This appeal is about the legality of President Biden's so-called "ghost gun" regulation, *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022). The district court entered a summary judgment vacating the Rule by holding that the Rule issued in excess of statutory jurisdiction, thereby violating the Administrative Procedure Act. *See id*. The government challenges the district court's given basis for decision. The questions presented are:

I.  Does the Rule violate the Administrative Procedure Act, either on the ground accepted by the district court or on one of the alternative grounds?

    A.  Does the Rule violate the APA by contradicting the statute?

    B.  Does the Rule violate the APA because the rulemaking's Second Amendment inquiry violated *New York State Rifle & Pistol Association, v. Bruen*, 142 S.Ct. 2111 (2022)?

    C.  Does the Rule violate the APA by violating the Due Process Clause?

Yes, the Rule violates the APA in all three respects. Thus, APA relief is warranted and two other issues arise:

II.  Do the APA violations warrant the maximum form and scope of relief?

    A.  Should the entire Rule be remedied or just the two offending aspects?

    B.  Should the Rule's remedy apply nationwide or just to the parties?

**Statement of the Case**

The district court correctly stated the case's statutory and regulatory background, ROA.4745-4748, as well as its procedural posture, ROA.4748-4751. The "Rule" at issue is *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479). Appellees here are three parties that challenged the Rule as intervening plaintiffs below: Defense Distributed, the Second Amendment Foundation, Inc. ("SAF"), and Not An LLC, LLC, doing business as JSD Supply ("JSD").

## I.   The Rule expands federal law's "firearm" definition to criminalize wide swaths of otherwise legal non-firearm items.

"Firearm" is one of American criminal law's most impactful statutory keystones. By exercising its "legislative Powers," U.S. Const. art. I, § 1, Congress used the term "firearm" to create a litany of criminal and civil proscriptions that impact millions of Americans every day. *See, e.g.*, 18 U.S.C. ch. 44 ("Firearms"). It is a crime for many Americans to possess a "firearm." 18 U.S.C. § 922(g). It is a crime for many Americans to transport or receive a "firearm." 18 U.S.C. § 923(a)(1)(A); 18 U.S.C. § 923(a)(3). It is a crime for many Americans to manufacture a "firearm" at all, 18 U.S.C. § 923(a)(1)(A), and a crime for many other Americans to manufacture a "firearm" without a serial number, 18 U.S.C. § 923(i).

Congress gave "firearm" its keystone definition in the Gun Control Act of 1968. The statute defines "firearm" to mean "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. §921(a)(2). Congress never opted to define the "firearm" term's constituent phrase "frame or receiver."

To administer and enforce the Gun Control Act (and other statutes), Congress created within the Department of Justice (DOJ) a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). 26 U.S.C. § 599A(a)(1).  Congress headed ATF with a Director who answers to the Attorney General. *Id.*  DOJ, ATF, and those two administrative officials are this action's Defendants and collectively referred to herein as the "ATF."

Without any Congressional action, ATF redefined the statutory term "firearm" on two key occasions, in 1978 and 2022.

In 1978, ATF promulgated a rule that redefined the Gun Control Act's "firearm" term by defining the constituent phrase "frame or receiver."  Title and Definition Changes, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978) (formerly codified at 27 C.F.R. § 478.11 (2020)) (hereinafter the 1978 Rule).  The 1978 Rule defined

"frame or receiver" to mean "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Id.* Under the 1978 Rule, ATF took the position that "items such as receiver blanks, 'castings' or 'machined bodies' in which the fire-control cavity area is completely solid and un-machined have **not** reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA." ROA.2332. (emphasis added). In other words, ATF used to take the position that the Gun Control Act "does not impose restrictions on receiver blanks that do not meet the definition of a 'firearm.'" *Id.*

In 2022, ATF enacted the Rule at issue: *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022). The Rule overhauled ATF's concept of "firearm" in multiple respects, with especially impactful changes to (1) unfinished firearm components and (2) kits used in the firearm manufacturing processes. The Rule expands the "firearm" definition far beyond the statute's text and beyond what was understood with the 1978 Rule. Under the Rule's new "firearm" definition, ATF criminalizes (1) unfinished frames and receivers—i.e., non-frame and non-receiver articles that may become a frame or receiver if additional processes sufficiently alter their material constitution, and (2) frame and receiver

4

"part kits"—i.e., kits of non-frame and non-receiver articles that may become a frame or receiver if additional processes sufficiently alter their material constitution.

Defense Distributed is a private business corporation headquartered in Austin, Texas. *See* ROA.2328; ROA.3105. Cody Wilson founded Defense Distributed and serves as Defense Distributed's Director. *Id.* Defense Distributed is the first private defense contractor in service of the general public. *Id.* Since 2012's Wiki Weapon project, Defense Distributed has defined the state of the art in small scale, digital, personal gunsmithing technology. *Id.* The district court correctly found—and the government does not now challenge—that Defense Distributed "primarily manufactures and deals products now subject to the Final Rule." ROA.4750.

SAF is a non-profit membership organization that promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control. *See* ROA.2328; ROA.3110-3111. The district court correctly found that SAF has standing to assert the interests of members who are subject to the Rule in their efforts to manufacture firearms with products made by firms like Defense Distributed, who is a SAF member. ROA.4764.

JSD is another business subject to the Rule. The district court correctly found (and no one challenges) that JSD "is a manufacturer and distributor that earns most of its revenue through sales of products now subject to the Final Rule." ROA.4750.

## II.    The district court held the Rule illegal and vacated it.

In the district court, SAF and Defense Distributed sued as intervenors for a judgment setting aside and vacating the Rule's new "firearm" definition; and later JSD did as well. *See* ROA.4750-51. Alongside other plaintiffs, they attacked the Rule "on a host of statutory and constitutional grounds." ROA.4765. The court accepted the first claims, "conclud[ing] that the ATF has clearly and without question acted in excess of its statutory authority." *Id.* It did not reach other claims. *Id.*

The district court's judgment did two main things. It granted "summary judgment on grounds that the Final Rule was issued in excess of ATF's statutory jurisdiction" and then vacated the Rule pursuant to the APA:

1. Plaintiffs' and Intervenor-Plaintiffs' motions for summary judgment on grounds that the Final Rule was issued in excess of ATF's statutory jurisdiction (Counts I and III) are **GRANTED** and Defendants' cross-motion for summary judgment as to those claims are **DENIED**.

2. On these grounds, the Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479 (2022)), is hereby **VACATED**.

ROA.4857. The court then denied all remaining claims as moot. ROA.4857.

## Summary of the Argument

President Biden's new administrative definition of "firearm" illegally expands that term beyond its critical statutory boundaries. This sweeping new "firearm" definition is an unprecedented power grab. It departs from the law Congress actually enacted, deeming illegal for the first time ever vast swaths of traditional Second Amendment conduct that Congress did not and could not choose to make illegal.

Americans have a constitutional right to make their own private firearms. Congress itself cannot criminalize the conduct of making private firearms by statute. Nor can its administrative servants at ATF criminalize that conduct by regulation. No one would dare try to enact such a ban on making private Arms—openly at least.

Thus, President Biden's "ghost gun" Rule refuses to confess its true identity. The Rule masquerades as a harmless hardware definition. By administrative farce, ATF treats the Rule as a mere description of parts subject to light bureaucratic touch. Of course the Rule does not *identify as* contradicting the Constitution and U.S. Code. But make no mistake: This Rule is tantamount to a ban on making private firearms.

Bear your Arms? Yes. Keep your Arms? Yes. Make your Arms? Yes. All that is guaranteed. But to now be jailed for having a part or two that isn't really a gun but might be one? Congress never made that the law and ATF cannot do so by regulation, even if it disguises the ban on Second Amendment conduct as a "firearm" definition.

The district court was right to hold that the Rule's new "firearm" definition "was issued in excess of ATF's statutory jurisdiction." ROA.4857. Congress defined the term "firearm" to include a weapon's finished "frame or receiver." Yet the Rule expands the "firearm" definition to criminalize (1) *unfinished* frames and receivers—*i.e.*, non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes occur, and (2) frame and receiver "part kits"—*i.e.*, kits of non-frame and non-receiver articles that *may become* a frame or receiver *if* additional processes occur. These expanded meanings contradict the GCA's "firearm" definition, which rightly understands that an *unfinished* frame or receiver is not an *actual* frame or receiver and that a *kit* for making a frame or receiver is not an *actual* frame or receiver either. The district court was therefore right to deem the Rule's "firearm" definition an APA violation and issue relief against it. In addition to the ground that was expressly upheld below, the district court's judgment is also justified by several alternative grounds that are just as meritorious.

ATF concedes that, if the Rule violated the APA in the challenged respects, the district court was correct to give the parties APA relief vis-à-vis the challenged provisions. So even if the judgment does not retain its full scope of relief, the Court should at a minimum uphold a judgment giving Defense Distributed, SAF, and JSD relief from the challenged provisions by way of an APA vacatur or its equivalent.

**Argument**

The district court entered a judgment deeming the Rule illegal and vacating it. ROA.4857. It did so by holding that in two respects ATF issued the Rule in excess of its statutory jurisdiction, thereby violating the APA's proscription of agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). *See* ROA.4857. *De novo* review applies. *See Texas v. United States*, 50 F.4th 498, 521 (5th Cir. 2022). The Court should affirm.

## I.    The Rule violates the Administrative Procedure Act.

The district court premised its issuance of APA relief on one express holding. ROA.4857. As a matter of law on summary judgment, it held that the Rule's new "firearm" definition violated the APA because it "was issued in excess of ATF's statutory jurisdiction" in two distinct respects. ROA.4857. ATF now challenges the issuance of any APA relief whatsoever by arguing (at 18-32) that the district court's express holding of an APA violation was wrong, defending both aspects of the Rule as fully compliant with the Gun Control Act. The challenge fails in two respects.

First, the government's main challenge fails because the district court's given holding is correct. The Rule does not faithfully administer the Gun Control Act. It contradicts the statute in both identified respects, illegally criminalizing by regulation

conduct that Congress never actually criminalized. Thus, the Court should affirm this part of the judgment by upholding the ground for decision utilized below.

Second, the government's main challenge fails because, even if the district court's given basis for decision is not sustained, the judgment's APA relief was compelled just as well by multiple alternative grounds for decision. Each was fully pressed below. Each is completely meritorious. Each justifies maximum APA relief. And each deserves a merits ruling. Thus, the Court should affirm the judgment's issuance of APA relief on all of the alternative grounds for decision.

### A. The Rule violates the APA by contradicting the statute.

The Court should affirm the district court's decision to issue APA relief by upholding the ground for decision utilized below. By promulgating the Rule, ATF committed a final agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C), because the new "firearm" definition contradicts the statute at issue. Instead of further defining "firearm" in accordance with the Gun Control Act, two distinct aspects of the Rule redefine "firearm" in contradiction of the Gun Control Act.

First, in 27 C.F.R. § 478.12(c), the Rule exceeds the statute by defining the terms "frame" and "receiver" to include a "partially complete, disassembled, or nonfunctional frame or receiver." That exceeds the statute because the Gun Control

Act defines "frame" and "receiver" to mean an *actual* "frame" and "receiver"; it does not let "frame" be defined to mean an unfinished non-frame article that may become a frame if and only if additional processes sufficiently alter its material constitution; and it does not let "receiver" be defined to mean an "unfinished" non-receiver article that may become a receiver if and only if additional processes sufficiently alter its material constitution.

Second, in 27 C.F.R. § 478.11, the Rule exceeds the statute by defining the terms "frame" and "receiver" to include a "weapon parts kit." That too exceeds the statute because the Gun Control Act still defines "frame" and "receiver" to only mean an actual "frame" and "receiver"; it does not let a "frame" or "receiver" be defined as a kit of non-receiver and non-frame articles that may become a frame or receiver only if additional processes sufficiently alter their material constitution.

### 1.     The district court's analysis is correct.

The district court's analysis at pages 24-35 of the summary judgment order speaks for itself and is correct.  ROA.4766-4777.  There the district court rightly concluded that, "[b]ecause the Final Rule purports to regulate both firearm components that are not yet a 'frame or receiver' and aggregations of weapon parts not otherwise subject to its statutory authority, . . . ATF has acted in excess of its statutory jurisdiction by promulgating it." ROA.4777.  The panel of this Court that

addressed the motion for a stay was correct as well.  It rightly recognized, when viewing essentially the same arguments that ATF now presents, that "the ATF has not demonstrated a strong likelihood of success on the merits."

As to this core merits question, plaintiffs and the court below are correct and the government is wrong.  Ordinary meanings control this textual inquiry, *see, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019), and the ordinary meanings here are evident.  This Rule clearly outruns its statute.

First, the district court was correct to conclude, for the reasons it gave and more, that "[p]arts that may become receivers are not receivers."  ROA.771-775.  An "unfinished" frame is not a frame and an "unfinished" receiver is not a receiver.  By definition, an "unfinished" frame is a non-frame that may become a frame if and only if additional processes sufficiently alter its material constitution; and by definition, an "unfinished" receiver is a non-receiver that may become a receiver if and only if additional processes sufficiently alter its material constitution. *See id.*

Second, the district court was correct to conclude, for the reasons it gave and more, that "[a] weapon parts kit is not a firearm."  ROA.776-779.  By definition, a frame "part kit" is a kit of non-frame items that may become a frame if and only if additional processes sufficiently alter their material constitution; and by definition, a

receiver "part kit" is a kit of non-receiver items that may become a receiver if and only if additional processes sufficiently alter their material constitution. *See id*.

### 2.    The "readily be converted" clause applies only to items that are already a "weapon"

The government's main supposed counterpoint about "readily be converted" is wrong.  The government says (at 4) that "the statute expressly includes items that can 'readily be converted' into functional firearms," which is true insofar as it goes.  Then ATF goes on (at 20-21) to carefully insinuate that the "readily be converted" phrase is what picks up unfinished frames and receivers.  Yet close attention of the statute shows that "readily be converted" does not do the work ATF insinuates.

The relevant GCA provision does *not* define weapons to include *nonweapons* that may "readily be converted" into weapons.  The statute's "readily be converted" clause applies only to items *that are already a "weapon" in the first place*.  18 U.S.C. § 921(a)(3)(A) ("'firearm means (A) any weapon … which …may readily be converted to ….").  Part kits are not already "weapons" in the first place, and unfinished frames and receivers and not "weapons" in the first place.  So whether or not these items can be "readily converted" into a weapon is statutorily irrelevant to "firearm" status.  When ATF made that leap in the Rule—the Rule essentially defines "firearm" to include a nonfirearm item that may "readily be converted" into a firearm—it ran headlong into the GCA's carefully circumscribed contrary text.

### 3. The government's view creates meaningless surplusage.

The government's construction also fails to give all provisions of the statute meaning. Sections 921(a)(3)(A) and (B) show that every "firearm" must have a "frame or receiver." Yet the Rule plainly regulates as "firearms" items that do not constitute, and kits that do not contain, an actual "frame or receiver," but merely precursor items that may become a frame or receiver. That goes against a key canon of construction. *See, e.g.*, *Luster v. Collins (In re Collins)*, 170 F.3d 512, 512 (5th Cir. 1999) ("The canons of interpretation are suspicious of surplussage [sic].").

### 4. Congress knows how to distinguish "assembly" from "completion," "production," and "manufacturing."

The government often boldly equates the minimal act of firearm "assembly" with the distinct and more involved acts of firearm production and manufacturing, such as "drilling holes" and "removing plastic rails." (The government pulls this term not from the Section 921(a)(3) definition of "firearm," but instead from the Section 921(a)(30) definition of "handgun," which delineates a subset of "firearms" that are "assembled" into handguns, in contrast with Section (a)(3)'s definition of what constitutes a "firearm" in the first place.). The "assembled" term—a term of supposedly substantial expansion—is the government's way of making the statute go so far. But context shows that Congress does not use the word "assembled" to do nearly so much work. *Cf. Cyan, Inc. v. Beaver Cnty. Employees Ret. Fund*, 138 S.Ct.

14

1061, 1067 (2018) ("Congress does not "hide elephants in mouseholes." (quoting *Whitman v. ATA*, 531 U.S. 457, 468 (2001)).

When Congress wants to cover both the minimal step of item "assembly" *and* more involved conduct like item "completion" or item "production" or item "manufacturing," it says the latter expressly. *See, e.g.*, 19 U.S.C. § 2703 (regulating "production, manufacture, or assembly").[1] Yet Congress here spoke only of fully functional parts from which a firearm can exist if merely "assembled"—not of unfinished parts from which a firearm cannot be merely "assembled" and must instead be "produced" or "manufactured" or "completed."

This key aspect of the statutory context means that the GCA's definition can only be understood to cover that from which a firearm can be "assembled," and not that from which a firearm must be "produced" or "manufactured" or "completed." Yet the Rule sweeps it all in indiscriminately.  Even though virtually all kits and unfinished frames and receivers entail the latter, more involved, conduct—the stuff of "produced" or "manufactured" or "completed" situations—the Rule covers them anyway as though they are the stuff of "assembled" situations.  Instead of giving the "assembled" notion a limiting function, the government conflates it with

---

[1] *See also* 10 U.S.C. § 7543 (regulating "manufacturer, assembler, developer, or other concern"); 19 U.S.C. § 1677j (regulating items that are "completed or assembled"); 19 U.S.C. § 3203 (regulating "production, manufacture, or assembly"); 19 U.S.C. § 3721 (regulating "manufacture, production, or sale").

"completed, assembled, restored, or otherwise converted" as though the distinctions have no difference. That conflation of Congress's careful work is precisely the kind of poor statutory construction that APA review should thwart.

ATF's favorite analogies fail to make their point any better. They say (at 19) that the Rule's definition of "firearm" is akin to saying that a "bicycle is still a bicycle even if it lacks pedals, a chain, or some other component needed to render it complete or allow it to function." ATF B. at 19. But what ATF did in this Rule is more like saying that a cart of groceries at the store is already "dinner." Normal people wouldn't speak that way ordinarily. They wouldn't say that an *unfinished* receiver is an *actual* receiver. They might call it a "gun part," but wouldn't call it a "gun." And they wouldn't say that a kit for making a gun is actually a gun. They'd call it a "kit."

Critically too, the Bill of Rights contains no constitutional right to keep and bear bicycles and ATF here is not trying to criminalize pedals. The fact that the Rule at issue defines criminal consequences of what is otherwise perfectly legal Second Amendment conduct calls for the canons of constitutional avoidance and lenity.

### 5.  The canons of constitutional avoidance and lenity apply.

"Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those

problems." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). At least two serious doubts exist here, both counseling heavily against ATF's position.

First, ATF's position necessarily triggers a serious constitutional problem regarding the Second Amendment. *See N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 142 S. Ct. 2111 (2022). If the Gun Control Act is construed as ATF wishes, the resulting scheme infringes the individual right to make and acquire Arms, which is part and parcel of the right to keep and bear Arms and is inconsistent with this Nation's historical tradition of firearm regulation. *See id.*

The notion that modern unfinished receivers and kits might not have been in common usage at the founding does not matter, for "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). In other words, "even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self defense." *Bruen*, 142 S. Ct. at 2131. As such, the GCA on ATF's view is likely an unconstitutional abridgement of Second Amendment rights. *See supra* at 7.

Second, ATF's position necessarily triggers a serious constitutional problem regarding delegation. *See Jarkesy v. SEC*, 34 F.4th 446, 461 (5th Cir. 2022) ("The two questions we must address, then, are (1) whether Congress has delegated power to the agency that would be legislative power but-for an intelligible principle to guide its use and, if it has, (2) whether it has provided an intelligible principle such that the agency exercises only executive power."). The power at issue—the power to define the Gun Control Act's keystone "firearm" term—would be legislative power but-for an intelligible principle to guide its use. Yet Congress did not, in Gun Control Act's "firearm" definition or anywhere else, supply ATF with an "intelligible principle" to guide that definitional power's use. In particular, Congress supplied no "intelligible principle" by which to define the subsidiary concept of "readily." As such, Congress's supposed delegation of the power to make "firearm" status turn on what ATF thinks "readily" means would likely violate the nondelegation doctrine.

Additionally, the rule of lenity applies because the GCA "firearm" carries criminal consequences—and very severe ones at that. *See United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 (1992).

The definitional power ATF claims to be exercising is not a reasonable construction of the GCA, and even if it were, the doctrines of constitutional avoidance and lenity would counsel against it. For these reasons as well, the district

18

court rightly concluded that the GCA is not amenable to the construction ATF's Rule places upon it.

Finally, the district court's given ground for decision is correct for the reasons given by the Response Brief for Plaintiffs-Appellees and Intervenor Plaintiff-Appellee Polymer 80 at pages 14-36, which Defense Distributed, SAF, and JSD hereby adopt by reference. *See* Fed. F. App. P. 28(i).

For these reasons, the Court should reject the government's main challenge by upholding the district court's given ground for decision. The judgment below correctly deems the Rule a violation of the APA, warranting maximum relief.

## B. The Rule violates the APA because the rulemaking's Second Amendment inquiry violated *Bruen*.

Regardless of whether the district court's given basis for decision is upheld, the judgment's APA relief was compelled just as well by the motion for summary judgment on Count Two of Defense Distributed and SAF's complaint, which was fully pressed below[2] to constitute an alternative ground for decision in this Court.

---

[2] *See* ROA.2346-47 (complaint pleading this ground); ROA.3113 (summary judgment motion asserting this ground); ROA.3116 (summary judgment brief arguing on this ground); ROA.4092 (same).

### 1.    ATF's rulemaking process had to conduct a *Bruen*-compliant historical inquiry but clearly did not.

Defense Distributed and SAF's Count Two is a unique[3] process-based claim about ATF having violated the APA by promulgating the Rule with insufficient constitutional considerations under *New York State Rifle & Pistol Association, v. Bruen*, 142 S.Ct. 2111 (2022). Whenever an agency makes a rule, the rulemaking process "must examine" "relevant factors" and "relevant data." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*, 463 U.S. 29, 43 (1983).

For this rule, ATF had to consider the "relevant" Second Amendment inquiry upheld by *Bruen*. That is, the APA required ATF to consider whether this "regulation is consistent with this Nation's historical tradition of firearm regulation" without using the kind of scrutiny *Bruen* deemed unconstitutional. *Id.* at 2126-32.

When promulgating the Rule, ATF doubly violated the APA by both (1) failing to consider the factors and data that *Bruen* deems constitutionally mandatory and (2) relying instead on factors and data that *Bruen* deems constitutionally improper. The administrative record is glaring in both respects.

---

[3] Count Two is *not* the same as Defense Distributed and SAF's Count One—the district court's ground for decision—which asserts an *outcome*-based APA violation (the Rule's contradiction of its enabling statute) and is asserted by other claimants. Nor is it the same as Defense Distributed and SAF's other *outcome*-based APA claims about constitutional violations, which are asserted by other claimants as well. Count Two is *process*-focused instead of *outcome*-focused and, though it invokes Second Amendment precedent, the resulting violation is of the APA and not the Constitution. No other party asserts this claim.

Most importantly, the record shows no *Bruen*-compliant considerations because ATF did not even try to determine whether this "regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-32. Likewise, ATF never attempted to consider whether the Rule "addresses a general societal problem that has persisted since the 18th century," and if so whether there was "a distinctly similar historical regulation addressing that problem." *Id.*

Instead of promulgating the Rule by considering the legally relevant factors and data, the administrative record shows that ATF compounded its APA violation by relying upon legally irrelevant matters. They infected their rulemaking process with the very presumptions of legality and means-ends scrutiny that *Bruen* deems illegal. *Compare* 87 Fed. Reg. 24,676-24,677 (relying on "compelling governmental interests" and "presumptively lawful regulatory measures"), *with Bruen*, 142 S. Ct. at 2126 ("*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

Given that ATF did not even attempt to consider the correct Second Amendment factors and historical sources, it is no surprise to see that the resulting Rule violates the Constitution. But that important result-based violation is a different

and distinct problem addressed by other claims.  At issue in Defense Distributed and SAF's Count Two is ATF's procedural failure to consider the historical factors and data that *Bruen* deems relevant—a process-based APA illegality that warrants setting the Rule aside regardless of how outcome-based claims turn out.

## 2.    This error warrants relief.

ATF opposed Count Two below by claiming harmless error.  ROA.3309-3310. Assuming that its failure to conduct a *Bruen*-compliant Second Amendment inquiry violated the APA, ATF said that this APA violation warrants no relief because Defense Distributed and SAF cannot show that it caused harm.  *Id.*  But this is wrong because (1) ATF did not carry *its burden* of negating harm, and (2) harm is evident.

First, the Court should reject the harmless error argument because ATF bears the burden of showing harmlessness.  ATF certainly did *not* carry a burden of affirmatively demonstrating harmless.  All they did is deny harm, which is not the same as showing the opposite.  There is, for example, no assertion by ATF (and certainly no proof) that the Final Rule would have come out same if a *Bruen*-compliant historical analysis had occurred.  So if ATF had the burden of showing harmlessness, their harmless-error argument fails.

ATF bears the burden of establishing harmlessness under two legal rules. Each is independently sufficient to prove the point. The first applicable burden-allocating rule comes from federal law's overall harmless error doctrine, which applies to APA matters, *see Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). The rule is that the government bears the burden of showing harmlessness where the government commits an error regarding the Constitution or in depriving citizens of liberty. *See United States v. Walters*, 418 F.3d 461, 464 (5th Cir. 2005). The second applicable burden-allocating rule comes from APA-specific precedent. The rule is that, when courts cannot tell whether or not harm stemmed from an APA violation about what material agency considered, harm is presumed. *PDK Labs. Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("What weight [the agency] gave to those circumstances (or any others) is impossible to discern. The decision upholding the suspension orders must therefore be set aside and the case remanded.").

These burden-allocating rules apply. The first applies because ATF committed an error regarding the Constitution (what the Second Amendment requires) in depriving citizens of liberty; so the government therefore bears the burden of showing harmlessness. *See Walters*, 418 F.3d at 464. The second applies because ATF's error controlled what material the agency considered; so even if the record about harm is silent (it is not for reasons explained next), harm is presumed.

*See PDK Labs*, 362 F.3d at 799.  One way or the other, ATF bore the burden; and since they did not do the work of showing lack of harm, Count Two warrants relief.

Regardless of where the burdens lie, the Court should reject the harmless-error argument by holding that harm is evident.  "In conducting the harmless error inquiry, we inform our analysis with a number of potentially relevant factors, including (1) 'an estimation of the likelihood that the result would have been different'; (2) 'an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result'; (3) 'a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings'; and (4) 'a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.'"  *City of Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 244 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013).  Under this framework, Defense Distributed and SAF need not necessarily show an actual Second Amendment violation.  That is one way of proving harm.  But it is not the only way.  Relief is warranted if the Count Two APA violation caused *any harm* deemed meaningful, and several such harms are evident here.

Specifically, the Count Two APA violation caused sufficient harm by impacting the rulemaking procedure used and the substance of the decision reached.  Harm warranting relief occurs when an APA error has a "bearing on" either "the

procedure used" or "the substance of the decision reached." *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011) ("In this circuit, an administrative body's APA deficiency is not prejudicial "only 'when [it] is one that clearly had no bearing on the procedure used or the substance of decision reached.'""); *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 215 (5th Cir. 1979) ("Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to petitioners."). The requisite "bearing" exists when the erroneous aspect of the process "directly informed" and "guided" the agency's conclusion. *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001).

Here, the Count Two APA violation had a "bearing" on the "procedure used" and a "bearing" the "substance of the decision reached," as it (wrongly) defined the universe of historical materials ATF had to account for and (wrongly) told them to employ means-ends scrutiny. *See* ROA.3100 (showing ATF's heavy reliance on "compelling governmental interests" and "presumptively lawful regulatory measures"). Depriving this rulemaking process of its constitutionally-required methods and ingredients necessarily infected the end result. Such process harms are especially evident where, as here, the rule concerns a "complex regulatory decision" and not a mere "yes or no" decision. *Johnson*, 632 F.3d at 932.

*Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810 (5th Cir. 2018) (cited by the ATF below), is the flip side of the coin. That case's APA violations caused no harm because they "clearly had no bearing on the procedure used or the substance of the decision reached." *Id.* at 819; *see also* ("the references appear unimportant"). Here by contrast, the APA violation (failure to conduct a *Bruen*-compliant historical analysis) had both relevant bearings. The Court should therefore follow *U.S. Steel*'s holding: "Here the Agency's error plainly affected the procedure used, and we cannot assume that there was no prejudice to petitioners." *U.S. Steel Corp.*, 595 F.2d at 215.

For these reasons, the Court should reject the government's main challenge by upholding Count Two of Defense Distributed and SAF's complaint as a meritorious alternative ground for affirmance. Just like the district court's given ground, this alternative ground shows an APA violation warranting full APA relief.

### C.    The Rule violates the APA by violating the Due Process Clause.

Again regardless of whether the district court's given basis for decision is upheld, the judgment's APA relief was also compelled by the motion for summary judgment on Defense Distributed and SAF's Due Process Clause claim, which was fully pressed below[4] to constitute an alternative ground for decision in this Court.

The Fifth Amendment's Due Process Clause forbids deprivations of life, liberty, or property without due process of law.  U.S. Const. amend. V.  Its vagueness doctrine is violated by criminal laws that either deny defendants fair notice of what is punishable or invite arbitrary enforcement by lack of standards.  *E.g.*, *Johnson v. United States*, 576 U.S. 591 (2015).  The Rule does this in three distinct ways.

First, the Rule violates the Due Process Clause's vagueness prohibition by defining "frame" and "receiver" to include a "partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." 27 C.F.R. § 478.12(c).  Those inherently

---

[4] *See* ROA.2349-50 (complaint pleading this ground); ROA.3114-15 (summary judgment motion asserting this ground); ROA.3117 (summary judgment brief arguing this ground); ROA.4102 (same); ROA.1976-1985, 1997-2000 (summary judgment brief arguing this ground that was adopted by reference, *see* ROA.3114); ROA.2501-2503, 2510-11 (summary judgment brief arguing this ground that was adopted by reference, *see* ROA.3114); ROA.4012-4024 (summary judgment brief arguing this ground that was adopted by reference, *see* ROA.4102); ROA.4080-4086 (summary judgment brief arguing this ground that was adopted by reference, *see* ROA.4102).

amorphous terms—especially "readily," even as defined by 27 C.F.R. § 478.11—present an unconstitutional level of vagueness that denies citizens fair notice of what is punishable.  The rule does not say, and no reasonable person can reliably infer, what point of evolution a piece of metal or plastic crosses the "readily" barrier to become a "frame or receiver."  Vacuous metrics like this are invalid.  *See Tripoli Rocketry v. ATF*, 437 F.3d 75, 81 (D.C. Cir. 2006.).   Objectified, specific measurements would be needed to cure this fault, *see United States v. Lim*, 444 F.3d 910, 916 (7th Cir. 2006), and the Rule has none.

Second, the Rule also violates the Due Process Clause's vagueness prohibition by defining "frame" and "receiver" to sometimes include "a forging, casting, printing, extrusion, unmachined body, or similar article," depending on whether or not it has "reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material)." 27 C.F.R. § 478.12(c).  Here again, inherently amorphous terms—especially "clearly identifiable"—present an unconstitutional level of vagueness that denies citizens fair notice of what is punishable.  Much like the vagueness problem regarding "readily," the Rule does not say, and no reasonable person can reliably infer, what point of evolution defines the "clearly identifiable" threshold.

28

Third, the Rule also violates the Due Process Clause's vagueness prohibition by providing that, "[w]hen issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit." 27 C.F.R. § 478.12(c). Those terms violate the vagueness doctrine by inviting arbitrary enforcement. The Rule does not say, and no reasonable person can reliably infer, exactly what set of materials ATF thinks are relevant to this inquiry—let alone how the bureaucrats will construe them to make the critical determination.

Crimes cannot be defined by government imagination. So held *Johnson v. United States*, 576 U.S. 591 (2015), which deemed the law at issue unconstitutionally vague because it "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* The Rule here is just as bad, in that it ties the definition of all "firearm" based crimes to an administratively imagined notion of what a complete and operable "firearm" really is, based on little more than a bureaucrat's ipse dixit. "It is one thing to apply an imprecise . . . standard to real-world facts; it is quite another to apply it to a judge-

imagined abstraction." *Id.* The Rule's ATF-imagined abstraction of when a gun becomes a true gun is no better.

"Each of the uncertainties in the [Rule] may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Id.* (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948)). "Invoking so shapeless a provision to condemn someone to prison . . . does not comport with the Constitution's guarantee of due process." *Id.*

It is no answer for the government to say that *some* cases make for easy application of the Rule. The controlling holdings—both *Johnson* and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)—"squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 576 U.S. at 602. Just as in *Johnson* and *Sessions*, the Rule produces "more unpredictability and arbitrariness than the Due Process Clause tolerates." *Sessions*, 138 S. Ct. at 1215.

For these reasons, the Court should reject the government's main challenge by upholding the Due Process Clause Claim as a meritorious alternative ground for affirmance. Just like the district court's given ground, this alternative ground shows an APA violation warranting full APA relief.

Given that the core of district court's decision below is justified by both its given ground and two alternative grounds for affirmance, the Court should uphold the judgment's issuance of APA relief in general and proceed to the questions regarding remedy type and scope. Alternatively, if the Court does not uphold the district court's decision to issue APA relief on one of the grounds argued on appeal—either the district court's given ground or one of the two alternative grounds for affirmance pressed by this brief—then Court should remand the case to the district court so that it may consider in the first instance any and all claims that would lead to that same relief but have yet to be adjudicated.

## II.    The APA violations warrant maximum relief.

After challenging the district court's issuance of any relief whatsoever, the government challenges the scope of relief arguing (at 32-45) that the district court wrongly acted against the entire Rule instead of just the two offending aspects and that the court wrongly applied relief nationwide instead of just to the parties. The Court should hold that, at a bare minimum, the district court's judgment correctly issued relief for the parties vis-à-vis the Rule's APA offending aspects. Additionally, the Court should hold that existing Circuit precedent authorizes nationwide relief.

ATF essentially concedes (at 32) that, if the Rule violated the APA in the two challenged respects, the district court was correct to supply APA relief that applies to the parties and the challenged Rule aspects.  It says (at 32) that the court should "should have limited any vacatur to the provisions of the Rule it held invalid," and that the court should have "limit[ed] its relief to the specific named plaintiffs." These unsurprising concessions are important and should be given full effect.

The district court's chosen scope of relief is correct for the reasons given by the Response Brief for Plaintiffs-Appellees and Intervenor Plaintiff-Appellee Polymer 80 at pages 36-41 and 48-49, which Defense Distributed, SAF, and JSD hereby adopt by reference.  *See* Fed. F. App. P. 28(i).

### A.    No matter what, the judgment's APA relief should at least extend to the Rule's illegal aspects.

First, assuming for the sake of argument the government wins its point about the target of relief—*i.e.*, even if the district court erred by issuing relief against the entire Rule instead of just the two offending aspects—the Court should still uphold the decision below to the extent that it provided relief against the Rule's challenged provisions, vacating or otherwise setting aside  (1) the APA-violating Rule provisions now codified in 27 C.F.R. § 478.12(c) that define the terms "frame" and "receiver" to include a "partially complete, disassembled, or nonfunctional frame or receiver,"

and (2) the APA-violating Rule provisions now codified in 27 C.F.R. § 478.11 that

define the terms "frame" and "receiver" to include a "weapon parts kit."

**B.** **No matter what, the judgment's APA relief should at least extend to the parties.**

Second, assuming for the sake of argument the government wins its point

about the scope of relief— *i.e.*, assuming that the district court erred by issuing relief

nationwide instead of just to the parties— the Court should still uphold the decision

below to the extent that it provided relief for the parties, vacating or otherwise setting

aside the challenged provisions as to the action's original and intervenor plaintiffs,

including Defense Distributed, the Second Amendment Foundation, and JSD.

**C.** **Current precedent supports the district court's issuance of APA relief nationwide.**

The government's main scope-of-remedy argument says (at 35-46) that the

district court wrongly issued APA nationwide, as opposed to just for the parties. The

Court should reject this argument because current Fifth Circuit precedent supports

the district court's decision.  The government's desired result requires precedential

changes that only *en banc* proceedings or new Supreme Court precedent could afford.

### 1.     This district court considered the correct factors.

The district court did not "fail to consider either the balance of equities or the public interest," as the government alleges (at 35-36).  The point here is not that the nationwide relief was necessarily wrong (the government argues that later), but that the district court failed to consider equities and the public interest in selecting that remedy.

The point fails first because the district court *did* consider these matters.  The summary judgment order demonstrates that the district court considered the following equities and public interest in its selection of remedies:

> Whether remand-without-vacatur is the appropriate remedy "turns on two factors: (1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur."

> Vacatur is appropriate given the Court's conclusion that the ATF has exceeded its statutory authority. An illegitimate agency action is void ab initio and therefore cannot be remanded as there is nothing for the agency to justify. Defendants tacitly acknowledge this, noting that "if vacatur is authorized under the APA, it is not warranted here in the event that Plaintiffs succeed on the merits of any procedural claim, because the agency can likely correct any such error on remand." Moreover, vacating the unlawful assertion of the agency's authority would be minimally disruptive because vacatur simply "establish[es] the status quo" that existed for decades prior to the agency's issuance of the Final Rule last year.

ROA.4778-4779 (citations and footnote omitted).

If a district court renders a decision with the correct result, reviewing courts usually presume that the district court did so by considering the decision's correct factors. *See, e.g.*, *United States v. Juarez-Duarte*, 513 F.3d 204, 212 (5th Cir. 2008). That presumption is warranted here. If agencies like ATF get a presumption of regularity, *see, e.g.*, *Nicholson v. Brown*, 599 F.2d 639, 649 (5th Cir. 1979), surely the Article III courts reviewing them do too.

ATF's argument about a supposed failure to consider equities and the public interest also fails for lack of preservation. In the summary judgment proceedings that yielded this judgment, ATF did not ask the district court for consideration of the "equities" and the "public interest" that it now says was essential and missing. *See* ROA.3783; ROA.4402. The closest it came was in arguing about what the district court addressed above. Besides that, ATF chose to argue only that the APA *never* authorizes universal vacatur—not that it sometimes allows it but doesn't here due to "the balance of equities or the public interest." ATF therefore failed to preserve for appeal any argument about the need to consider any more "equities" and the "public interest" than the decision obviously did. *See, e.g.*, *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364 (5th Cir. 2019) ("Because the Defendants did not ask the district court to conduct that review as part of its discretionary call . . . the claim . . . was not

preserved for appeal."); *see also DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 489 n.1 (5th Cir. 2018) (an argument was "forfeited" because it wasn't "structured").

### 2. Precedent authorizes nationwide vacatur.

ATF challenges (at 36-45) the district court's decision to apply vacatur beyond the parties and impose a so-called "universal vacatur." But the district court should not be reversed by this Court for following this Court's precedents, which is all that the district court's judgment does.

The district court reasoned that Fifth Circuit precedent has already crossed the bridge many times to permit vacatur under 5 U.S.C. § 702(2). ROA.4778. That is true. This Court's existing precedent has, indeed, already decided to permit vacatur under 5 U.S.C. § 702(2) as the "default rule." *Data Mktg. P'ship, LP v. United States Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). And this Court's precedent has, indeed, already gone so far as to conclude that "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75 (5th Cir. 2022). The Court's most recent treatment of the issue confirmed that, "[u]pon a successful APA claim, vacatur effectively rescinds the unlawful agency action." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 5266026, at *30 (5th Cir. Aug. 16, 2023).

Unless and until the currently controlling precedents are overruled, the district court did not err in following them.

### D.    SAF can obtain relief for its members.

#### 1.    The arguments about relief for SAF's members are hypothetical and premature.

ATF argues (at 40-43) that "the district court should not have extended relief to … unidentified members of the plaintiff organizations," including the Second Amendment Foundation. This argument does not warrant reversal for three reasons.

First, this argument does not warrant reversal because the district court did *not* do what ATF says. The existing judgment under review does not deliver its relief in terms of giving something to SAF "and its members." It delivers its relief in the so-called "universal" fashion that reaches both parties and everyone else in the nation. ROA.4857. If the Court decides to affirm the existing judgment as such, ATF's argument about how to write a party-specific judgment does not matter.

Second, ATF's attempt to exclude SAF's members from a hypothetical future judgment's scope of relief is premature. Assuming for the sake of argument that the case needs a new judgment awarding less-than-nationwide APA relief, this Court should not formulate that judgment. Instead, the Court should remand the case to the district court so that it can do so in the first instance. Having the district court

go first is especially appropriate where the question to be decided involves "equitable factors" that may be quite fact-intensive, as ATF says (at 42-43) is the case here.

Third, ATF's arguments about relief for SAF's members are clearly wrong. So if the Court should end up reaching the question of how to formulate a judgment that gives less than nationwide relief, and if the Court does not have the district court on remand address that issue in the first instance, it should reject ATF's arguments and hold that relief should extend to both SAF *and its members*.[5]

## 2.     SAF has standing to pursue relief for its members.

Standing is ATF's main denial. The government says (at 40) that SAF and other organizational plaintiffs "failed to demonstrate that they have standing to litigate on behalf of their members, because they have not shown that they are bona fide membership organizations." The district court correctly rejected this argument, ROA.4763-4764, and this Court should do for both those reasons and more.

SAF's evidence established that it is a "traditional voluntary membership organization" within the meaning of *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342 (1977), that meets the Supreme Court's associational standing requirements. The proof shows this by explaining that "SAF is a non-profit

---

[5] To be clear, ATF does not argue that SAF itself should not receive a judgment's benefits. The sole matter ATF disputes (at 40-43) is whether a judgment's APA relief should extend to SAF's "unidentified members."

*membership* organization *incorporated* under the laws of the State of Washington," ROA.3126 (emphasis added), and specifying that SAF has actual "members nationwide and in this district." *Id.* The members are identifiable and some are identified. *Id.* ("Defense Distributed is a SAF member with [whom] a substantial number of other SAF members do business."). Those plain facts alone—that SAF is an actually "incorporated" association with actual "members"—make it a "traditional voluntary membership organization."

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141, 2158 (2023) (applying *Hunt* and its progeny), now puts a quick end to ATF's standing denial: "Where, as here, an organization has identified members and represents them in good faith, [the Supreme Court's decisions] do not require further scrutiny into how the organization operates." *Id.* at 2158. The district court correctly deemed that case decisive for SAF. ROA.4763-64.

Prior Fifth Circuit precedent is in accord. Even if the Supreme Court's 2023 decision had not put the nail in the coffin, this Court's precedent already confirmed SAF's ability to obtain relief for its members.

SAF is like the entity deemed a "traditional membership organization" by *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1084-86 (5th Cir. 2022), because both are a "validly incorporated 501(c)(3) nonprofit with

[thousands of] members who joined voluntarily to support its mission." *Id.* In contrast, *Hunt*'s government commission was "not a traditional voluntary membership organization such as a trade association, *for it ha[d] no members at all.*" *Hunt*, 432 U.S. at 342 (emphasis added). Under the *Hunt* line of authority that now includes 2023's *Students for Fair Admissions* Supreme Court decision, SAF's constitution of actual members makes all the difference. No more was required.

ATF errs (at 40-41) by double counting and adding an extra element to the definition of "traditional voluntary membership organization." ATF demands "traditional voluntary membership organization" status to be shown not just by proof of actual members, but also by proof of particular governance methods. But under *Hunt*, proof of governance methods is *not* a part of the threshold "traditional voluntary membership organization" test. It is instead part of the functional inquiry that occurs *later*, if and only if an entity did not establish "traditional voluntary membership organization" status in the first place by showing actual members.

Additionally, ATF's standing denial regarding relief for SAF's members does not work for a wholly separate reason. Only "one plaintiff must have standing to seek each form of relief requested," *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017), and standing to seek the relief in question for SAF's members is clearly held by Defense Distributed. Indeed, the summary judgment evidence shows that

Defense Distributed is a SAF member needing relief from this Rule so that Defense Distributed can sell the items in question *to SAF's members*. ROA.3121-3217; *see also* ROA.4093-94 (Defense Distributed's summary judgment brief establishing standing).

### 3. An organizational plaintiff's members need not become parties to benefit from a judgment for their organization.

ATF ends the argument about relief for SAF's members by saying (at 42) that "equitable principles would compel forgoing relief to any member who has not been identified in district court and agreed to be bound by the judgment." Again, assuming that issue of how to form a party-specific judgment is reached in this proceeding—the proper course is to have that question addressed, if at all, by the district court in the first instance—the Court should reject ATF's position for two reasons.

First, this Court should not impose ATF's requirement because ATF did not ask for it below. If this Court is to issue the judgment the district court should have, that judgment would not need to include a condition ATF never requested. Imposing ATF's requirement now, when raised for the first time on appeal, would be especially improper because ATF's failure to make the argument below means that SAF had no occasion to develop facts to be used in opposition. That is both a reason to punt the issue altogether and, if the issue is reached, a reason to reject ATF's requirement.

Second, this Court should not impose ATF's requirement because it is unprecedented and wrong.  ATF cites no case ever imposing this requirement and counsel knows of none.  The reason no known decision uses ATF's extraordinary requirement is that it proves too much.  Requiring an organizational plaintiff's members to show in the action as full-fledged individual parties defeats the whole point of an organization having representational standing to sue on members' behalf. *See, e.g.*, *Students for Fair Admissions, Inc.*, 143 S. Ct. 2141; *Hunt*, 432 U.S. 333. Moreover, the ATF's proposed disclosure requirement raises serious concerns about chilling and abridgement of First and Second Amendment freedoms.  *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 461 (1958) ("the First Amendment supplies a privilege that protects litigants from discovery efforts that have the "practical effect 'of discouraging' the exercise of constitutionally protected political rights"); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010) ("The freedom to associate with others for the common advancement of political beliefs and ideas lies at the heart of the First Amendment. Where, as here, discovery would have the practical effect of discouraging the exercise of First Amendment associational rights, the party seeking such discovery must demonstrate a need for the information sufficient to outweigh the impact on those rights."); *see also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022) ("This Second Amendment standard accords with how

we protect other constitutional rights. Take, for instance, the freedom of speech in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms.").

Those equitable concerns outweigh any concerns on the other side of the scale, which are minimal. For as the district court properly recognized, the issuance of APA relief against this Rule "would be minimally disruptive because vacatur simply 'establish[es] the status quo' that existed for decades prior to the agency's issuance of the Final Rule last year." ROA.4779. This Court's July 27 order denying the stay request correctly agreed: Halting the Rule's challenged provisions "effectively maintains . . . the status quo that existed for 54 years from 1968 to 2022." Relative to an injunction, vacatur can therefore rightly seen as the *less* invasive solution, since "vacatur does not order the defendant to do anything; it only removes the source of the defendant's authority." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 23-10362, 2023 WL 5266026, at *30 (5th Cir. Aug. 16, 2023).

**Conclusion**

The district court's decision to deem the Rule illegal in the challenged respects and award APA relief to Defense Distributed, the Second Amendment Foundation, and JSD should be affirmed, either on the grounds the district court's decision expressly upheld or on one or more of the alternative grounds herein advanced.

Respectfully submitted,

/s Chad Flores
Chad Flores
cf@chadfloreslaw.com
Texas Bar No. 24059759
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 893-9440

Counsel for Appellees Defense Distributed, the Second Amendment Foundation, Inc., and Not An LLC, LLC, doing business as JSD Supply

## Certificate of Compliance

This filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 because it contains 9,505 not-exempted words.

This filing complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 and Fifth Circuit Rule 32 because it has been prepared in a proportionally spaced typeface in 14-point font using Microsoft Word for Mac Version 16.74.

/s/ Chad Flores
Chad Flores