No. 23-10718

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Jennifer VanDerStok; Michael G. Andren; Tactical Machining, L.L.C., a limited liability company; Firearms Policy Coalition, Incorporated, a nonprofit corporation,

*Plaintiffs-Appellees,*

Blackhawk Manufacturing Group, Incorporated, doing business as 80 Percent Arms; Defense Distributed; Second Amendment Foundation, Incorporated; Not an L.L.C., doing business as JSD Supply; Polymer 80, Incorporated,

*Intervenor Plaintiffs-Appellees,*

v.

Merrick Garland, U.S. Attorney General; United States Department of Justice; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Bureau of Alcohol, Tobacco, Firearms, and Explosives

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division
Case No. 4:22-CV-691-O

## Brief *Amicus Curiae* of Gun Owners of America, Inc., and Tennessee Firearms Association in Support of Plaintiffs-Appellees

Anthony R. Napolitano
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Tel: (602) 848-5449
Fax: (602) 888-7856
anapolitano@bfsolaw.com

John I. Harris III
Schulman, LeRoy & Bennett PC
3310 West End Ave
Suite 460
Nashville, TN 37203

# CERTIFICATE OF INTERESTED PARTIES

*VanDerStok, et al. v. Garland, et al.* (No. 23-10718)

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| *Plaintiffs-Appellees* | *Counsel for Plaintiffs-Appellees* |
|---|---|
| Jennifer VanDerStok | David H. Thompson<br>Peter A. Patterson |
| Michael G. Andren | William V. Bergstrom<br>Cooper & Kirk, PLLC |
| Tactical Machining, LLC | Richard Brent Cooper |
| Firearms Policy Coalition | Benjamin David Passey<br>Cooper & Sculley, P.C. |

| *Intervenor Plaintiffs-Appellees* | *Counsel for Intervenor Plaintiffs-Appellees* |
|---|---|
| Blackhawk Manufacturing Group, doing business as 80 Percent Arms | Michael J. Sullivan<br>Ashcroft Law Firm, L.L.C.<br><br>Brian Daniel Poe<br>Brian D. Poe, Attorney at Law PLLC |
| Defense Distributed | Chad Flores |
| Second Amendment Foundation | Flores Law, P.L.L.C. |

i

| Not An L.L.C., doing business as JSD Supply | J. Mark Brewer<br>Brewer & Pritchard, P.C.<br><br>Matthew Joseph Smid<br>Evans, Daniel, Moore, Evans, Biggs & Smid |
|---|---|
| Polymer80 | Dennis Daniels<br>Bradley Arant Boult Cummings, L.L.P. |

| *Defendants-Appellants* | *Counsel for Defendants-Appellants* |
|---|---|
| Merrick Garland, United States Attorney General | Sean Janda<br>Daniel M. Riess<br>Abby Christine Wright<br>U.S. Department of Justice |
| United States Department of Justice | |
| Steven Dettelbach, in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives | |
| Bureau of Alcohol, Tobacco, Firearms, and Explosives | |

| *Amicus Curiae* | *Counsel for Amicus Curiae* |
|---|---|
| Gun Owners of America, Inc. | Anthony R. Napolitano<br>Bergin, Frakes, Smalley & Oberholtzer, PLLC |
| Tennessee Firearms Association | John I. Harris III<br>Schulman, LeRoy & Bennett PC |

Amicus Gun Owners of America, Inc., is a nonprofit corporation with no parent corporation. No publicly held company owns 10% or more of Gun Owners of America, Inc.

Amicus Tennessee Firearms Association is a nonprofit corporation with no parent corporation. No publicly held company owns 10% or more of Tennessee Firearms Association.

All parties have consented to the filing of this brief.

/s/ Anthony R. Napolitano
Anthony R. Napolitano
*Counsel of Record for*
Amici Curiae

# CONTENTS

CERTIFICATE OF INTERESTED PARTIES............................................i

TABLE OF AUTHORITIES......................................................v

INTEREST OF AMICUS CURIAE....................................1

 I. The Final Rule Usurps Congressional Power and Contradicts the Text of 18 U.S.C. § 921(a)(3)...........................................1

  a. ATF Rearranges and Rewrites the Statute to Suit its Needs...............................................................6

  b. The Final Rule's Definition of "Readily" is Unconstitutionally Vague...............................9

  c. A Firearm Must Have a Frame or Receiver...............13

 II. Having No Frame or Receiver, An Unfinished Frame or Receiver or a Parts Kit Containing One Is Not a Firearm ..15

 III. The Final Rule is Arbitrary and Capricious.........................17

 IV. The Entire Rule Should be Vacated ..................................18

 V. Associational Standing is Appropriate ...............................19

CONCLUSION ......................................................................21

CERTIFICATE OF SERVICE..................................................22

CERTIFICATE OF COMPLIANCE......................................23

# TABLE OF AUTHORITIES

## Cases

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). ................. 17

*Hancock County Bd. Of Supervisors v. Ruhr*, 487 Fed. Appx. 189 (5th Cir. 2012) ........................................................................................ 20

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ..................................................... 11

*Russello v. United States*, 464 U.S. 16 (1983) ............................................. 7

*United States v. Annis*, 446 F.3d 852 (8th Cir. 2006) ............................. 16

*VanDerStok, et al., v. Garland, et al.*, No. 4:22-cv-691 (N.D. Tex.), ECF #56 (Sept. 2, 2022) ............................................................................... 10

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ........................................................................................... 12

## Statutes

18 U.S.C. § 921 ..................................................................... 6, 7, 8, 13

18 U.S.C. § 923 ............................................................................... 14

## Other Authorities

Ju-Min Park and Daniel Leussink, *The DIY gun used to kill Japan's Abe was simple to make, analysts say*, Reuters, July 10, 2022 ........... 14

## The Holy Bible

Matthew 13:32. ...................................................................................... 9

## Online Photographs

AR-15 Fully Assembled (www.armalite.com) ............................................ 3

AR-15 Lower Receiver (www.andersonmanufacturing.com) ................... 3

Sig Sauer P320 Fire Control Unit (www.sigsauer.com) ........................... 4

Sig Sauer P320 Fully Assembled (www.sigsauer.com) ............................. 5

Zip Gun (www.thefirearmblog.com) ........................................................ 14

## INTEREST OF AMICUS CURIAE[1]

Amici, Gun Owners of America, Inc., and Tennessee Firearms Association, are nonprofit social welfare organizations, exempt from federal income tax under Internal Revenue Code ("IRC") section 501(c)(4).

Amici organizations were established, *inter alia*, for the purpose of participating in the public policy process, including conducting research, and informing and educating the public on the proper construction of state and federal constitutions, as well as statutes related to the rights of citizens, and questions related to human and civil rights secured by law. Amici organizations work to defend constitutional rights and protect liberties.

## ARGUMENT

### I. The Final Rule Usurps Congressional Power and Contradicts the Text of 18 U.S.C. § 921(a)(3)

The Final Rule is the unconstitutional product of an administrative

---

[1] All parties have consented to the filing of this brief *amicus curiae*. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting the brief. No person other than *amici*, their members, or their counsel contributed money intended to fund preparing or submitting this brief.

branch regulatory and enforcement agency that has decided to claim for itself the power of the legislative pen.  Understanding the magnitude of the Final Rule as a legislative revision of statutory text, not a mere interpretation thereof, hinges on an understanding of what constitutes a complete firearm, what Congress defined as a weapon (§ 921(a)(3)(A)), and what Congress defined as "the frame or receiver of any such weapon," (§ 921(a)(3)(B)).  These are technical terms precisely chosen by Congress for which details and differences matter.

The frame or receiver of a firearm is "the primary structural component[] of a firearm to which fire control components are attached." Final Rule at 24654 (citing *Webster's Third New International Dictionary* 902, 1894 (1971)).  Congress drew a clear line between what is and is not subject to the GCA: either a completed weapon or a frame or receiver—an identified part with a definition in the dictionary—of such a weapon. While the size and shape of a frame or receiver may vary, their function as parts meant to hold and attach to other key parts of a firearm remains consistent.  And while regulated as firearms, Congress used the statutory text to specify that frames and receivers are not weapons themselves.

To illustrate why precision in understanding the difference between

what is regulated in § 921(a)(3)(A) and (a)(3)(B) is so critical, here is the lower receiver—the portion controlled by the GCA and given a serial number when imported or manufactured commercially—of an AR-15:



Meanwhile, the following is an example of a fully assembled AR-15 with an arrow pointing to the lower receiver incorporated into it:



---

[2] https://andersonmanufacturing.com/receiver-lower-am-15-open-semi-auto-m16-trigger-pocket-multi-cal-no-logo-anodized-blackd2-k067-ag04.html
[3]
https://www.armalite.com/images//M15TAC16/FINISHED/ON%20WHITE/M15TAC16-1.jpg

Similarly, here is the fire control unit, which constitutes the serial number-bearing frame, of a popular handgun, the Sig Sauer P320 (shown from both sides to display where the serial number is placed):



4



5

4 https://www.sigsauer.com/p320-fcu.html

5
https://www.sigsauer.com/media/catalog/product/cache/2f7933e2ff16f0ec074a16ab6b6195f2/p/3/p320-fcu-left_1_1.jpg

And a complete P320 firearm looks like this, with the majority of the above fire control unit inside the grip module:



6

Congress, for obvious reasons, recognized that these two states, frame/receiver and completed weapon, are not the same and so Congress has both classified and treated them differently in the GCA. Such different treatment is acknowledged by the decision to regulate an item that may "readily" become a completed weapon under § 921(a)(3)(A), but to leave the term "readily" out of § 921(a)(3)(B). A frame or receiver is

---

6

https://www.sigsauer.com/media/catalog/product/cache/2f7933e2ff16f0ec074a16ab6b6195f2/3/2/320x5-9-dh3-3.jpg

just too far removed from the completed weapon of which it is a component for it to function as a weapon by itself, much less for something that is not even *yet* a frame or receiver to be regulated as if it were a fully functioning rifle, pistol, or shotgun.

### a. ATF Rearranges and Rewrites the Statute to Suit its Needs

The Final Rule attempts a regulatory sleight-of-hand, a treacherous transposition of the term "readily" from Section 921(a)(3)(A) into Section 921(a)(3)(B), where Congress deliberately left the term out of the statute's text. The expansive new definition of "frame or receiver," exchanging the longstanding 30-word definition for a disjointed 1700-word scramble, trades on a short section of law defining "firearm" in the Gun Control Act:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may **readily** be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921 (a)(3) (emphasis added). In the statute, Congress applied the term "readily" to its definition of a "weapon" in subsection (A), but Congress chose not to apply the adjective to the definitions in subparts

(B), (C) or (D). Yet, in its Final Rule, ATF materially changes Congress' definition in subsection (B) by expanding that definition from a frame or receiver to include any items that might be "readily" converted into a completed frame or receiver.

ATF's misappropriation of terms is contrary to basic principles of statutory interpretation. Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely." *Russello v. United States*, 464 U.S. 16, 23 (1983). Indeed, appellants acknowledge that the "readily" language belongs only to subsection (A) in their opening brief, citing (A) in its argument that Congress uses the term "[w]hen defining weapons throughout the firearms laws." Appellants' Br. at 20. What they don't explain is why Congress—which Appellants demonstrate was perfectly capable of contemplating and using the term "readily" elsewhere in the GCA—did not use it in the very next independent clause. The other phrase Appellants reference, "designed to," similarly appears elsewhere in § 921's definitions of shotgun and rifle, but still does not appear in the one the Final Rule purports to interpret, § 921(a)(3)(B). 18 U.S.C. § 921(a)(5) and (7).

Appellant's attempted explanation further draws attention to the term "weapon," which appears in both subsections (A) and (B). We see in subsection (A) that "readily" applies to a "weapon" that meets the description in that subsection, but (B) describes "frame or receiver" as just a part of such a "weapon." *Id.* § 921(a)(3). That is, a frame or receiver is not in itself a weapon, just a subpart of one. It makes sense, then, that Congress would choose to regulate as a weapon that which could "readily" be converted into one but would not apply "readily" to an item that is not yet even a functioning *part* of a weapon. In other words, once a frame or receiver is complete, it may be combined with other parts to become a weapon, but when incomplete, this is not possible. Appellants' bicycle analogy cuts similarly (*see* Appellants' Br. at 19): True, a bicycle—with its frame consisting of the structural tubes that hold the other critical components—missing its pedals is still considered a bicycle and may be readily converted into a functioning one, but a triangle of metal tubes that have not yet been machined or welded to even allow for the attachment of wheels, handlebars, gears, brakes, etc., is not a bike, even if those tubes could be turned into a bicycle frame. A mustard seed is not

8

readily "the greatest of shrubs,"[7]  though with the right conditions, it one day may be.

An item that might become a frame or receiver is thus simply not a frame or receiver where it cannot accept the attachment of other parts critical to its function.  That is, even at a state of manufacture in which it is identifiable as something that could at some point become a frame or receiver (but it may also never be made into one), Congress determined that it is not a frame or receiver until its manufacture has finished and it can perform its function of housing critical fire control parts.  This is why Congress did not apply "readily" to subsection (B).  Thus, the Congressional choice in subsection (B) is limited to an item that *is*—present tense—a frame or receiver and Congress excluded things that might at some point readily be further manufactured into a finished frame or receiver.

### b. The Final Rule's Definition of "Readily" is Unconstitutionally Vague

Further, even if "readily" had any place in understanding Section 921(a)(3)(B), despite Congress's intent to leave it out, ATF's definition of

---

[7] Matthew 13:32.

"readily" in the Final Rule is incomprehensible.  The agency's past framework examined items based on the presence or absence of "certain difficult milling operations' (*e.g.*, you may do A, B, and C, but not X, Y, or Z) and was thus understandable, whereas the Final Rule's new policy (don't cross the magic, critical line of "readily") is vague beyond an ordinary person's ability to determine where the line is.

As the district court noted below, the Final Rule "cop[ies] language used throughout the statutory definition" and "cobbl[es] them together to form ATF's own definition," which "may add a patina of credibility to the drafting, but ... tarnish[es] Congress's carefully crafted definition." *VanDerStok, et al., v. Garland, et al.*, No. 4:22-cv-691 (N.D. Tex.), ECF #56, at *12 (Sept. 2, 2022).  The result is a complete course change from ATF's prior black-and-white approach to what constitutes a frame or receiver (based on which specific machining steps have been performed), the Final Rule now adopts infinite shades of gray, opining that even a "partially complete" or "nonfunctional frame or receiver," including a "frame or receiver parts kit" (an unfinished frame or receiver sold together with "templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" to finish it)—*i.e.*, items that ATF admits

are not a "frame or receiver"—nevertheless may be a "frame or receiver." Final Rule at 24739.

ATF, in apparent recognition that, despite the Final Rule's lengthy definition of what allegedly constitutes "readily" completed or converted, in reality, no one will have any idea which items are readily completed into a frame or receiver, proffers yet another standard: "clearly identifiable." Final Rule at 24739. But it appears it's "turtles all the way down." To regulate 80% frames and receivers which it admits *are not* frames or receivers, ATF has created an informal definition (primordial state), within another informal definition (clearly identifiable), within another informal definition (partially complete frame or receiver), within a regulatory statutory rewrite ("readily"), within a statutory definition ("frame or receiver"), of a statutory term ("firearm"). Final Rule at 24691.

The Final Rule thus spins an impenetrable web, with layer upon layer of gobbledygook, which is not only unconstitutionally vague but also in direct conflict with the plain text of the statute.

To be sure, "a court cannot wave the ambiguity flag just because it found the regulation impenetrable on first read." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). But here, the ambiguous language lies not in the

structure or organization of the rule but in discreet, identified phrases—each a term devoid of objective or clear meaning: "clearly identifiable," "critical stage," "critical line," "substantial step," "sufficiently complete," "primordial state," "without more," etc.  No ordinary person could have any hope of delineating which items constitute firearms, yet a miscalculation as to one of these can transform a person's life by making her into a felon and stripping her of liberty, voting, and Second Amendment rights.

In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, the Court explained that the permissible "degree of vagueness ... depends in part on the nature of the enactment," and there is a "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."  455 U.S. 489, 498-99 (1982).  As this case involves what items constitute firearms under federal law, the Final Rule's precision must be exacting, as serious criminal penalties attach for violation thereof.  Moreover, the Court in Hoffman explained that "perhaps the most important factor affecting the clarity ... is whether it threatens to inhibit the exercise of constitutionally protected rights," *id.* at 499, such as the Second Amendment right

implicated in this case.  On lenity alone, Hoffman condemns the Final Rule's definition of "readily."

### c. A Firearm Must Have a Frame or Receiver

As noted above, Congress was specific in crafting the relevant federal law, which provides that, in order to constitute a firearm, an item must either be (i) a "weapon" or (ii) "the frame or receiver of any such weapon."  18 U.S.C. § 921(a)(3). The text thus demonstrates that every "weapon" in the firearms context must contain a "frame or receiver."  And subsection (B) makes clear it is the frame or receiver which constitutes a firearm, regardless of whether it stands alone or is assembled as a "weapon."

Apparently not content with the statutory language, ATF reimagined the text such that an object (or collection of items) nevertheless can constitute a "firearm" even though ATF concedes there is no "frame or receiver" present. By that logic, hardware stores would need a federal firearms license, because they sell pieces of wood and metal pipe which constitute "items that 'may readily be converted to expel a projectile,'" such as the homemade firearm used to kill Shinzo

Abe.[8]   Indeed, a crude, improvised firearm can be made in just a few minutes utilizing common household objects, as seen here.[9]



ATF's new definition contradicts other portions of the law that confirm a firearm under § 921(a)(3)(A) and (B) must have a receiver.  For instance, federal law requires importers and manufacturers to "identify by means of a serial number engraved or cast on the receiver or frame of the weapon."   18 U.S.C. § 923(i).   But if, as Appellants now claim, not every firearm contains a frame or receiver, then where would such alleged firearms be serialized, and how would they be recorded in the

---

[8] Ju-Min Park and Daniel Leussink, *The DIY gun used to kill Japan's Abe was simple to make, analysts say*, Reuters, July 10, 2022 (https://www.reuters.com/world/asia-pacific/diy-gun-used-kill-japans-abe-was-simple-make-analysts-say-2022-07-09/).
[9] Image of a zip gun.   https://www.thefirearmblog.com/blog/wp-content/uploads/2019/03/25zipgun.jpg

records of dealers or be traced by ATF?

And this is not by mistake, as a frame or receiver is a firearm's primary structural component.  By contrast, by ATF's own admission, a prohibited "weapon parts kit" does not contain a "frame or receiver," but merely an unfinished and incomplete part that could be constructed into a frame or receiver, but also may never be.  If a given item is determined by ATF to not yet constitute a "frame or receiver," then that item (even with additional unregulated parts) cannot be a "weapon" because, again, by definition, a "weapon" must have a "frame or receiver."  The statutory language itself forecloses ATF's clearly erroneous assertion that not every "weapon" under § 921(a)(3)(A) and (B) need have a frame or receiver, and Congress had good reason to establish this requirement: to find otherwise sets no limits on what the Gun Control Act, and therefore ATF, controls.

## II.    Having No Frame or Receiver, An Unfinished Frame or Receiver or a Parts Kit Containing One Is Not a Firearm

An unfinished frame or receiver, therefore, cannot be a firearm because it has no frame or receiver.  This is distinguishable from Appellants' argument, Br. at 20, that Congress has chosen to regulate non-operational weapons because § 921(a)(3)(B)'s inclusion of a *completed*

frame or receiver is an example of just that: a portion of a weapon, insufficient on its own to operate as a weapon, regulated as a firearm. Frames and receivers are Congress's chosen end point for what is regulable. ATF cannot beat additional administrative authority out of this dead dog.

It is also distinguishable from courts' recognition that unfinished, or nonoperational, *weapons* may constitute "firearms," such as in *United States v. Annis*, 446 F.3d 852, 857 (8th Cir. 2006). Those cases involved an actual firearm, with a complete frame or receiver, which had merely been disassembled, unloaded, or broken. In *Annis*, for instance, a criminal defendant argued that his sentence should be reduced "because the gun was missing both the clip and the bolt," but the court rejected this argument, noting he "could easily make the rifle operational in just a few seconds by putting the bolt in," and "[t]he same can be said for the clip." *Id.* Annis' rifle had a functional receiver and could be restored to full operability in seconds. These types of cases are thus inapposite when considering an item that has not even become a frame or receiver yet.

Entirely unlike *Annis*, the Final Rule's "weapon parts kit" does not contain a complete "frame or receiver" that was merely disassembled,

unloaded, or broken, but rather an incomplete, unfinished precursor item that ATF admits is not (and never has been) a "frame or receiver."  Thus, requiring much more than to be merely repaired, assembled, or loaded, a "weapon parts kit" must first be manufactured into a firearm—by taking an incomplete and unfinished frame or receiver and cutting, milling, grinding, sanding, filing, and/or drilling it to completion.  And even then, the frame or receiver would not yet be a weapon, just a part thereof.

In plain terms, by definition, an unfinished frame or receiver, alone or in a kit, has no frame or receiver itself.  It, therefore, cannot be a firearm under § 921(a)(3).

## III.  The Final Rule is Arbitrary and Capricious

Beyond its abuse of statutory text, ATF fails to even acknowledge the sea change the Final Rule represents, betraying a lack of awareness sufficient to find the Final Rule to be arbitrary and capricious.  "[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).  Yet Appellants argue "[t]he correctness of ATF's interpretation is likewise confirmed by its consistency with previous regulatory

practice." Appellants' Br. at 21. But ATF has never used the term "readily" in this context. ATF has never applied the term "readily" to its prior enforcement of § 921(a)(3)(B). Nor has it previously based application of this criminal statute on layers of nebulous terms as described in Part I.b., *supra*. On the contrary, the agency's past framework examined items based on the presence or absence of "certain difficult milling operations" (you may do A, B, and C, but not X, Y, or Z) and was thus understandable, whereas the Final Rule's new policy (don't cross the magic "critical line" of "readily") is incomprehensibly vague.

Obviously, if the previous 30-word definition achieved the same results regarding frames and receivers, ATF would not have opted to place 1700 words in its stead. But ATF was not clarifying its prior interpretation, its objective and its purpose was to massively expand the interpretation but to do so it had to change the bright line that Congress had imposed. The Final Rule is a dramatic departure from ATF's past practice, and its refusal to acknowledge this establishes a violation of the Administrative Procedure Act under *Fox*.

## IV. The Entire Rule Should be Vacated

The challenged portions of the Final Rule should not be severed

from the rest, but the whole rule should be vacated. The assertion that the Rule's provisions operate independently of the challenged portions is misleading. The Final Rule is a carefully constructed regulatory framework, with provisions that are intertwined and interdependent. The new, improper, definition of "frame or receiver" is a chief example. What coherence the Final Rule has relies on a consistent understanding of these definitions. Vacating the challenged provisions without addressing their implications on other sections could lead to an inconsistent and confusing regulatory landscape. The muffler and silencer frame or receiver requirements are nonsense on their own, but even more so where the "frame or receiver" definition for § 921(a)(3)(A)-(B) and portions of the rule related to it are (correctly) eliminated. And the engraving a recordkeeping provisions are also altered in a way no rational agency would accept. Therefore, without the challenged provisions, the clarity and enforceability of the updated definitions could be compromised.

## V.   Associational Standing is Appropriate

Appellants are incorrect and contrary to precedent in their arguments against associational standing, including their assertion that

"the district court should not have extended relief to … unidentified members of the plaintiff organizations."  Appellants' Br. at 40.  In particular, Appellants expressly name Amici Gun Owners of America, despite it not being a direct party to this case, to argue that the potential for overlap among the memberships of large organizations should preclude these associations from bringing suit, especially in separate jurisdictions.  *Id.* at 42-43.  This is both an incorrect statement of law and a threat to millions of individuals' access to the courts as members join groups like Gun Owners of America precisely in order to pool resources to litigate in their interest where the individuals would not be able to fund such litigation alone.  That some individuals may care so deeply about their civil rights as to give money to or join more than one organization dedicated to protecting those rights should not—cannot— bar access to relief.

"The first prong of the associational standing test requires that at least one member of the association satisfy the Article III elements and have standing to sue in his or her own right."  *Hancock County Bd. Of Supervisors v. Ruhr*, 487 Fed. Appx. 189, 195 (5th Cir. 2012).  In essence, if one member of the association may sue in his or her own right, the

association may sue in that individual's stead. Thus, even if Appellants' spurious concern of membership overlap were to be considered, it is overcome, and associational standing is appropriate, whenever there is at least one individual with Article III standing who is a member of one of the organizations but not the other.

## CONCLUSION

For the foregoing reasons, the Final Rule, in its entirety, should be vacated.

Dated August 25, 2023.                Respectfully submitted,

/s/ *Anthony R. Napolitano*

Anthony R. Napolitano
Bergin, Frakes, Smalley &
Oberholtzer, PLLC
4343 East Camelback Road, Ste. 210
Phoenix, Arizona 85018
Tel: (602) 848-5449
Fax: (602) 888-7856
*Counsel for Amicus Curiae*
*Gun Owners of America, Inc.*

John I. Harris III
Schulman, LeRoy & Bennett PC
3310 West End Ave, Ste 460
Nashville, Tennessee 37203
Tel: (615) 244 6670
Fax: (615) 254-5407
*Counsel for Amicus Curiae*
*Tennessee Firearms Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished through this Court's CM/ECF system.

/s/ *Anthony R. Napolitano*
Anthony R. Napolitano

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P 27(d)(2) because this motion contains 3,659 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

This brief also complies with the requirements of Fed. R. App. P.27(d)(1)(E), 32(a)(5), and 32(a)(6) because this document has been prepared in Century Schoolbook 14-point typeface, a proportionally spaced serif typeface of Microsoft Word for Windows.

Dated: August 25, 2023          */s/ Anthony R. Napolitano*
                                 Anthony R. Napolitano