No. 23-10718

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

JENNIFER VANDERSTOK; MICHAEL G. ANDREN; TACTICAL MACHINING, L.L.C., a limited liability company; FIREARMS POLICY COALITION, INCORPORATED, a nonprofit corporation,

*Plaintiffs-Appellees*,

BLACKHAWK MANUFACTURING GROUP, INC., doing business as 80 PERCENT ARMS; DEFENSE DISTRIBUTED; SECOND AMENDMENT FOUNDATION, INCORPORATED; NOT AN L.L.C, doing business as JSD SUPPLY; POLYMER80, INCORPORATED,

*Intervenor Plaintiffs-Appellees*,

v.

MERRICK GARLAND, U.S. Attorney General; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Texas, No. 4:22-cv-691

## BRIEF FOR *AMICUS CURIAE* NATIONAL SHOOTING SPORTS FOUNDATION, INC. IN SUPPORT OF APPELLEES

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia Bar

*Counsel for* Amicus Curiae *National Shooting Sports Foundation, Inc.*

August 25, 2023

## CERTIFICATE OF INTERESTED PERSONS

1. *VanDerStok et al. v. Garland et al.*, No. 23-10718

*2.* The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

### Plaintiffs-Appellees
- Jennifer VanDerStok
- Michael G. Andren
- Tactical Machining, LLC
- Firearms Policy Coalition, Inc.

### Intervenor Plaintiffs-Appellees
- BlackHawk Manufacturing Group Inc., b/b/a 80 Percent Arms
- Defense Distributed
- Second Amendment Foundation
- Not an L.L.C.
- Polymer80, Inc.

### Attorneys for Plaintiffs-Appellees and Intervenor Plaintiffs-Appellees
- Cooper & Kirk, PLLC
- David H. Thompson
- William V. Bergstrom
- Peter A. Patterson
- Cooper & Scully, PC
- Richard Brent Cooper
- Ashcroft Law Firm, LLC
- Michael J. Sullivan
- Brian Daniel Poe

- Brian D. Poe, Attorney at Law PLLC
- Flores Law, PLLC
- Chad Flores
- J. Mark Brewer
- Brewer & Prichard, P.C.
- Matthew Joseph Smid
- Evans, Daniel, Moore, Evans, Biggs & Smid
- Bradley Arant Boult Cummings, LLP
- Dennis Daniels

**Amicus Curiae**
- National Shooting Sports Foundation, Inc. ("NSSF").
- Gun Owners for Safety
- Firearms Regulatory Accountability Coalition, Inc.
- Brady Center to Prevent Gun Violence
- Everytown for Gun Safety Support Fund
- March For Our Lives
- Gun Owners of America, Inc.
- Tennessee Firearms Association

**Counsel for Amicus Curiae**
- Paul D. Clement
- Erin E. Murphy
- Matthew D. Rowen
- Clement & Murphy, PLLC
- Stephen Obermeier
- Wiley Rein, LLP
- Kathleen Hartnett
- Daniel Grooms
- Adam M. Katz
- Rachel A. Alpert
- Cooley LLP
- Dustin M. Lorenzo

- Jennifer L. Swize
- Megan E. Ball
- Joseph J. Kiessling
- Jones Day
- John I. Harris III
- Schulman, LeRoy & Bennett PC
- Anthony R. Napolitano
- Bergin, Frakes, Smalley & Oberholtzer, PLLC

Amicus National Shooting Sports Foundation, Inc. ("NSSF") is a Connecticut nonprofit corporation recognized under Section 501(c)(6) of the Internal Revenue Code as a professional association.  NSSF does not have a parent corporation and does not issue stock, and no publicly held corporation holds 10% or more of its stock. All parties have consented to the filing of this brief.

s/Erin E. Murphy
Erin E. Murphy
*Counsel of Record*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Amicus Curiae National Shooting Sports Foundation, Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ i

TABLE OF AUTHORITIES ..................................................... v

INTRODUCTION AND INTEREST OF AMICUS CURIAE ............................... 1

SUMMARY OF ARGUMENT ..................................................... 2

ARGUMENT ................................................................ 4

I.    The Rule's Redefinition Of Frame Or Receiver Goes Beyond What The Statutory Text Can Bear ............................................... 4

    A.    The Gun Control Act Allows ATF to Regulate Frames or Receivers, Not Items that Might Be "Converted" into Frames or Receivers ......................................... 4

    B.    ATF's Amici Cannot Save the Final Rule ......................... 13

II.    Lenity And Constitutional Avoidance Buttress The Decision Below ......... 17

III.    The Final Rule Is Part And Parcel Of A Troubling Trend Of Regulatory Overreach By ATF, And Upholding It Would Have Profound Consequences For The Firearms Industry And The People It Serves ............................................... 22

CONCLUSION ............................................................. 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States*,
573 U.S. 169 (2014) ....................................................................18

*Am. Broad. Cos. v. Aereo, Inc.*,
573 U.S. 431 (2014) ....................................................................13

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
707 F.2d 548 (D.C. Cir. 1983) ...................................................14

*Aposhian v. Wilkinson*,
989 F.3d 890 (10th Cir. 2021) ...................................................19

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ....................................................................13

*Biden v. Nebraska*,
143 S.Ct. 2355 (2023) .................................................................14

*Boland v. Bonta*,
2023 WL 2588565 (C.D. Cal. Mar. 20, 2023) ...........................21

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) ........................................ 19, 20, 23

*Contender Farms, L.L.P. v. USDA*,
779 F.3d 258 (5th Cir. 2015) ......................................................11

*Contender Farms, L.L.P. v. USDA*,
779 F.3d 258 (5th Cir. 2015) ......................................................12

*Crowell v. Benson*,
285 U.S. 22 (1932) .....................................................................20

*Djie v. Garland*,
39 F.4th 280 (5th Cir. 2022) .......................................................25

*Exela Enter. Sols., Inc. v. NLRB*,
32 F.4th 436 (5th Cir. 2022) .........................................................9

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ...............................................................21

*Fed. Election Comm'n v. Cruz*,
    142 S.Ct. 1638 (2022)...........................................................................11

*FTC v. Bunte Bros.*,
    312 U.S. 349 (1941)..............................................................................14

*Gandy Nursery, Inc. v. United States*,
    318 F.3d 631 (5th Cir. 2003) .................................................................9

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    140 S.Ct. 789 (2020)...............................................................................3

*Guns Save Life, Inc. v. Ali*,
    190 N.E.3d 139 (Ill. 2021)....................................................................21

*Hooper v. California*,
    155 U.S. 648 (1895)..............................................................................20

*Jackson v. City & Cnty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ...............................................................20

*Jennings v. Rodriguez*,
    138 S.Ct. 830 (2018).............................................................................20

*Johnson v. United States*,
    576 U.S. 591 (2015)..............................................................................16

*Legal Servs. Corp. v. Velazquez*,
    531 U.S. 533 (2001)..............................................................................22

*Luis v. United States*,
    578 U.S. 5 (2016)..................................................................................17

*Melton v. Phillips*,
    875 F.3d 256 (5th Cir. 2017).................................................................20

*Mock v. Garland*,
    2023 WL 4882763 (5th Cir. Aug. 1, 2023) ................................. *passim*

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ............................................................................ 14

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S.Ct. 2111 (2022) ................................................................. 21, 22

*Nichols v. United States*,
  578 U.S. 104 (2016) ......................................................................... 16

*Republic of Sudan v. Harrison*,
  139 S.Ct. 1048 (2019) ........................................................................ 9

*Rigby v. Jennings*,
  630 F. Supp. 3d 602 (D. Del. 2022) ................................................. 21

*Russello v. United States*,
  464 U.S. 16 (1983) .............................................................................. 9

*Ry. Lab. Executives' Ass'n v. Nat'l Mediation Bd.*,
  29 F.3d 655 (D.C. Cir. 1994) ........................................................... 12

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947) ......................................................................... 14

*The Adventure*,
  1 F.Cas. 202 (C.C.D. Va. 1812) ...................................................... 18

*United States v. Bass*,
  404 U.S. 336 (1971) ......................................................................... 18

*United States v. Davis*,
  139 S.Ct. 2319 (2019) ................................................................. 18, 19

*United States v. Hudson*,
  11 U.S. (7 Cranch) 32 (1812) .......................................................... 18

*United States v. Koutsostamatis*,
  956 F.3d 301 (5th Cir. 2020) ........................................................... 12

*United States v. Standard Brewery*,
  251 U.S. 210 (1920) ......................................................................... 17

*Va. Uranium, Inc. v. Warren*,
  139 S.Ct. 1894 (2019) ...........................................................13

*Wooden v. United States*,
  142 S.Ct. 1063 (2022) ..................................................... 17, 19

**Statutes**

18 U.S.C. §921 ............................................................. *passim*

18 U.S.C. §922 ...................................................................17

18 U.S.C. §924 ...................................................................17

26 U.S.C. §5845 .................................................................23

Gun Control Act, Pub. L. 90-618, ch. 44, 82 Stat. 1213 (1968).............................12

**Rule**

Fed. R. App. P. 29...............................................................1

**Regulations**

27 C.F.R. §478.12 .............................................................3, 5

27 C.F.R. §479.11 ...............................................................19

88 Fed. Reg. 6,479 ..............................................................23

*Definition of "Frame or Receiver" and Identification of Firearms*,
  87 Fed. Reg. 24,652 (Apr. 26, 2022) .........................................5, 24

*Title and Definition Changes*, 43 Fed. Reg. 13,531 (Mar. 31, 1978) .......................5

**Other Authorities**

*Are "80%" or "unfinished" receivers illegal?*, ATF, https://bit.ly/3OEDgFt.........19

Br. of Amicus Curiae NSSF, *Loper Bright Enters., et al., v. Raimondo, et al.*,
  No. 22-451 (U.S. filed July 24, 2023) ...................................................1

Br. of United States, *Syracuse v. ATF*,
  No. 1:20-cv-06885 (S.D.N.Y. filed Jan. 29, 2021), Dkt.98 ...............................15

*Convert*, Merriam Webster (2023 ed.) ........................................................8

*Convert*, Oxford English Dictionary (2023 ed.) ......................................8

*Convert*, Webster's *Third New International Dictionary of the English Language* (1968)....................................................................8

Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 35 (2023) .............................................................22

**INTRODUCTION AND INTEREST OF AMICUS CURIAE**[1]

The National Shooting Sports Foundation, Inc. ("NSSF") is the trade association of the firearm, ammunition, hunting and shooting sports industry. NSSF has approximately 10,000 members, including federally licensed firearm and ammunition manufacturers, distributors, and retailers, as well as manufacturers, distributors, and retailers of products for the hunting, shooting and self-defense market, public and private shooting ranges, gun clubs, sportsmen's organizations, and endemic media. Accordingly, NSSF often submits amicus curiae briefs in cases involving issues that impact Second Amendment freedoms, hunting, and the shooting sports. *See, e.g.*, Br. of Amicus Curiae NSSF, *Loper Bright Enters., et al., v. Raimondo, et al.*, No. 22-451 (U.S. filed July 24, 2023).

NSSF respectfully submits this amicus brief to provide this Court with another perspective on the effort by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to stretch the statutory phrase "frame or receiver" to cover many products that can be "converted" into frames or receivers. Among NSSF's members are enterprises that have manufactured, sold, and purchased such products in the past. And because they were able to do exactly that for many years—and relied on

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for NSSF states that no party's counsel authored this brief in whole or in part, and that no person other than amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief. All parties have consented to the timely filing of this brief. *See* Fed. R. App. P. 29(a)(2).

the widely shared, commonsensical idea that items with the potential to be converted into a "frame or receiver" are, by their very nature, not yet frames or receivers—ATF's new statutory expansion will have significant ramifications for NSSF's membership. Furthermore, the consequences of running afoul of the statute include criminal liability, which makes it all the more important that any change in the law here comes from Congress' plain-spoken word rather than an agency's say-so. But, regrettably, ATF's efforts to blue-pencil the statutory phrase "frame or receiver" to expand its powers is no one-off incident of regulatory overreach. *Cf. Mock v. Garland*, 2023 WL 4882763, at *1 (5th Cir. Aug. 1, 2023) (finding plaintiffs likely to succeed on APA challenge to ATF rule concerning stabilizing arm braces).

Accordingly, NSSF submits this amicus brief to provide additional perspective on why the statutory phrase "frame or receiver" is not a license to regulate as "firearms" items that are not yet frames or receivers but might eventually become frames or receivers.

## SUMMARY OF ARGUMENT

Simple logic dictates that if A can be "converted" to B, then A is not B. Hence the need for conversion. And what is true generally is true of frames and receivers under the plain text of the Gun Control Act ("GCA" or "Act"). Indeed, so said ATF itself for decades. But it has now done an about-face. To be clear, "[t]he law hasn't changed, only an agency's interpretation of it." *Guedes v. Bureau of Alcohol,*

*Tobacco, Firearms & Explosives*, 140 S.Ct. 789, 790 (2020) (Gorsuch, J., dissenting from denial of certiorari). According to ATF's new rule, "partially complete, disassembled, or nonfunctional frame[s] or receiver[s]," "including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," 27 C.F.R. §478.12(c), are *already* "frames or receivers." That rule brings much into ATF's regulatory domain that has long been outside it, and does so with criminal consequences to boot. Such an arrogation of federal power in an area implicating fundamental constitutional rights could be justified only by the plainest of text, if at all. But the Rule defies, rather than follows, both logic and the statutory text.

As the government itself emphasizes, Congress has made clear beyond cavil that *some* incomplete "firearms" *do* count as "firearms" under the GCA and related laws. But Congress did so by using language that is conspicuously absent from the "frame or receiver" provision. Congress' choice to use those words elsewhere must be respected. So must its decision *not* to use those words to modify "frame or receiver." ATF's effort to rewrite a decades-old statute, and unsettle decades-long expectations to boot, thus eviscerates the separation of powers and the liberties our Constitution secures. That ATF has done so in the context of a criminal statute governing constitutionally protected conduct make its effort that much more beyond the pale, as that is the absolute last context in which an agency should have leeway

to stretch the text.  Accordingly, even if there were any statutory ambiguity here—and there is not—the rule of lenity and the canon of constitutional avoidance would both militate against blessing the agency's maximalist reading of the statute.

All of that is reason enough to affirm.  But this rule is just the latest in an increasingly troubling pattern of overreach by ATF—even in contexts where the agency has long taken a different position and criminal liability is on the line.  That conduct would be troubling enough coming from any agency; that it is coming from an agency empowered to regulate constitutionally protected conduct makes it all the more essential for this Court to confine ATF to its statutorily prescribed role.

For all those reasons and more, this Court should affirm the judgment below.

## ARGUMENT

### I.    The Rule's Redefinition Of Frame Or Receiver Goes Beyond What The Statutory Text Can Bear.

#### A.    The Gun Control Act Allows ATF to Regulate Frames or Receivers, Not Items that Might Be "Converted" into Frames or Receivers.

In 1968, Congress passed and President Johnson signed the Gun Control Act, codified at 18 U.S.C. §921 *et seq.*, which defined the term "firearm" as follows:

The term "firearm" means

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
> (B) *the frame or receiver of any such weapon*;
> (C) any firearm muffler or firearm silencer; or
> (D) any destructive device.

18 U.S.C. §921(a)(3) (emphasis added).  The GCA also specifically defined "firearm muffler or firearm silencer," *see id.* §921(a)(25), and "destructive device," *see id.* §921(a)(4), but it did not define "frame or receiver."

In 1978, ATF promulgated a rule providing its own definition of "frame or receiver."  *Title and Definition Changes*, 43 Fed. Reg. 13,531, 13,537 (Mar. 31, 1978); ROA.4747.  And so stood the law all the way until April 2022, when ATF published the rule at issue here.  *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (codified at 27 C.F.R. pts. 447, 478, and 479 (2022)) ("Final Rule").  In relevant part, the Final Rule provides that, "[t]he terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver."  27 C.F.R. §478.12(c).  As Plaintiffs have explained, and the district court correctly agreed, in "expand[ing] ATF's authority over parts that may be 'readily converted' into frames or receivers, when Congress limited ATF's authority to 'frames or receivers' as such," ATF exceeded its statutory powers.  ROA.4766.

First and foremost, when Congress wanted the GCA to reach items that could be converted to function as a "firearm" within the meaning of the statute, it said exactly that.  That is evident in the very item in the definition of "firearm," which

includes "any weapon (including a starter gun) which will or is designed to or *may readily be converted to* expel a projectile by the action of an explosive." 18 U.S.C. §921(a)(3) (emphasis added).

It is evident in other definitional provisions as well. For some of the other terms that the GCA defines "firearm" to include, Congress provided an additional definition. And multiple of those definitions include more than just finished and functional versions of those "firearms." Take, for instance, "firearm muffler or firearm silencer." There, Congress left no doubt about its intent to cover more than just the finished product:

> The terms "firearm silencer" and "firearm muffler" mean any device for silencing, muffling, or diminishing the report of a portable firearm, *including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.*

18 U.S.C. §921(a)(25) (emphasis added). By including "any combination of parts … intended for use in assembling or fabricating a firearm silencer or firearm muffler," *id.*, Congress made clear that the definition reaches items that could be and were intended to be used to "assembl[e] or fabricat[e]" a firearm silencer or muffler. Put another way, with respect to *that* kind of statutorily defined "firearms," Congress clearly legislated to capture potential firearm silencers or mufflers.

So too with destructive devices. In relevant part, Congress provided:

> The term "destructive device" means—

    (A) any explosive, incendiary, or poison gas--

        (i) bomb,
        (ii) grenade,
        (iii) rocket having a propellant charge of more than four ounces,
        (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
        (v) mine, or
        (vi) device similar to any of the devices described in the preceding clauses;

    (B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, *or which may be readily converted to*, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

    (C) any combination of parts either designed or intended for use *in converting any device into any destructive device* described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

18 U.S.C. §921(a)(4) (emphases added).  Here again, Congress legislated with a great deal of precision.  Congress specifically included items that could be "use[d] in converting any device into any destructive device," as well as any "weapon[s] … which *may be readily converted to* … expel a projectile by the action of an explosive or other propellant."  *Id.* (emphasis added).  That subsidiary definition mirrors the earlier definition of firearms, which includes "any weapon (including a starter gun)

which will or is designed to or *may readily be converted to* expel a projectile by the action of an explosive." *Id.* §921(a)(3) (emphasis added).

Congress' felt need to say when it wanted to cover things capable of being converted into what the GCA regulates is understandable. In ordinary parlance, "convert" conveys a transformational change—a change in status or kind. Indeed, the government itself supplies a definition of "convert" from a dictionary from around the time of the GCA's enactment that captures exactly that commonplace understanding. *See* USG.Br.26 ("The plain meaning of 'convert' is 'to change or turn from one state to another: alter in form, substance, or quality: transform, transmute.'" (quoting Webster's *Third New International Dictionary of the English Language* 499 (1968))). Modern dictionaries agree. *See, e.g.*, Oxford English Dictionary (2023 ed.) ("To turn or change in character, nature, form or function"); Merriam Webster (2023 ed.) ("[T]o alter the physical or chemical nature or properties of especially in manufacturing" or "to change from one form or function to another"). The simple reality is that if something must (or can) be converted to X, then it is not yet X. An Anglican may be converted to Catholicism, but he is decidedly not yet a Catholic simply because of that potentiality. A change in status— not to mention a number of deliberate acts along the way—would be required.

That basic principle of language dooms the government's position here. The GCA itself expressly embraces the commonsense proposition that something that

can be converted into something else is not yet that thing. Yet while Congress repeatedly went out of its to say when it wanted to regulate not just the thing, but also things capable of being converted into that thing, it did not include any such language when it came to frames and receivers. Indeed, conspicuously absent from the subpart that covers frames and receivers is any similar language or even a hint that the statute covers something that is not a frame or a receiver but one day may be converted into one. ATF's interpretation of the GCA thus violates the bedrock rule that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (brackets and quotation marks omitted). Clearly, "Congress knew how to" define subsets of firearms to include items that could be converted into functional firearms within the meaning of the GCA. *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 442 (5th Cir. 2022). And just as clearly, "Congress chose not to do so" when it came to frames and receivers. *Id.*

ATF's interpretation also runs headlong into the rule that courts should not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Republic of Sudan v. Harrison*, 139 S.Ct. 1048, 1058 (2019); *accord Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 638 (5th Cir. 2003). If, as ATF posits, the phrase "frame or receiver" has always encompassed

things capable of being converted into frames or receivers, then presumably all the *other* items that qualify as "firearms" under 18 U.S.C. §921(a)(3) also include things that might be "converted" into those items. But if that is the case, then Congress would have had no need to take such pains to repeatedly define other terms to make explicit what ATF claims is already implicit. ATF's *sub silentio* convertability principle thus would render superfluous *all* the statutory language concerning items that might be converted into a "weapon" or "destructive device" (or "fabricat[ed]" into a silencer). ATF's flawed logic seemingly dictates that items that can be converted into other kinds of firearms are already those sorts of weapons, destructive devices, etc. Clearly, Congress did not agree.

Indeed, the agency's position not only creates superfluity, but makes nonsense of the statute. If something that must be "converted" into something else could be treated as the latter even pre-conversion, then there would have been no need for Congress to specify that "firearm" includes "any weapon … which … may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. §921(a)(3). Nor would it have made sense to include such specificity in the definition of "destructive device." *Id.* §921(a)(4)(B). Or consider the definition of "antique firearm." *See id.* §921(a)(16)(C). Congress explained that that term does *not* include "any muzzle loading weapon which can be readily converted to fire fixed ammunition…." *Id.* If Congress silently included a free-floating convertability

10

principle, as ATF seems to think, then much of the statute is nonsensical.  In reality, the statute makes perfect sense.  Knowing that people ordinarily expect an item's *current* status to be determinative, Congress made clear throughout the GCA's definitional section when it wanted to override that expectation and regulate something based on what it could be converted into.  Agencies, like courts, must respect that legislative choice.

The government is thus left arguing that "nothing in the statute *precludes* ATF['s]'" interpretation.  USG.Br.19.  That is highly debatable, as even "a broad grant of general rulemaking authority does not allow an agency to make amendments to statutory provisions" to add language that Congress conspicuously excluded. *Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 273 (5th Cir. 2015). But in all events, the government's everything-not-denied-is-permitted approach grossly misunderstands the relationship between Congress and agencies.[2]  "An agency, after all, literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Cruz*, 142 S.Ct. 1638, 1649 (2022) (quotation marks omitted).  Agencies thus must show that statutory text *authorizes* their action, not merely that Congress has not explicitly

---

[2] And of course, if one simply catalogues the adjectives that do not expressly modify "frame or receiver," then one should add "partially complete, disassembled, or nonfunctional" to the list.  USG.Br.7.

prohibited it. "Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony[.]" *Ry. Lab. Executives' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc); *see also Contender Farms, L.L.P. v. USDA*, 779 F.3d 258, 274 (5th Cir. 2015) ("We also reject the USDA's argument that it can maintain this scheme merely because Congress did not expressly disallow such regulation."). Mere statutory silence cannot support ATF's rule.[3]

Nor can the government's appeal to statutory purposes salvage the rule. It is a bedrock rule that "[n]o legislation pursues its purposes at all costs." *United States v. Koutsostamatis*, 956 F.3d 301, 310 (5th Cir. 2020). And that rule applies with especial force here, as the GCA makes explicitly clear that "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession or use of firearms appropriate to the purpose of … lawful activity," and likewise, that it is not meant to "provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title." Gun Control Act, Pub. L. 90-618, ch. 44, §101, 82 Stat. 1213-14 (1968).

---

[3] Nor would any supposed statutory silence implicate *Chevron* deference. That is both because this is a criminal statute and because the government has not made any claim to *Chevron* deference. *See Cargill*, 57 F.4th at 464-68.

Striking the right balance between those purposes and the GCA's salutary goal of reducing violent crime is a difficult job—but it is one that Congress has already done in the enacted text of the GCA. ATF has no license to recalibrate that balance as it sees fit. That is true even if some bad actors may abuse any purported "loopholes" in Congress' handiwork; whether and how to close any such loopholes is a question for Congress alone. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) ("We will not alter the text in order to satisfy the policy preferences of the Commissioner."); *Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 462 (2014) (Scalia, J., dissenting) ("It is not the role of this Court to identify and plug loopholes," but it is "the role of Congress to eliminate them if it wishes.").

In short, "[i]n this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write." *Va. Uranium, Inc. v. Warren*, 139 S.Ct. 1894, 1900 (2019) (plurality op.). And Congress simply did not write what the Final Rule says.

### B.     ATF's Amici Cannot Save the Final Rule.

Implicitly betraying a lack of confidence in the agency's own efforts, ATF's amicus Gun Violence Prevention Groups offers an entirely different approach. Gun Violence Prevent Groups Amicus Br. at 7-9. But their unpreserved argument does

not and cannot save the Final Rule.[4]  According to the Gun Violence Prevention

Groups, "when (B) refers to 'the frame or receiver of any such weapon,' it

incorporates the description of 'weapon' in (A), which covers both items already

configured to fire *and* items that are 'designed to or may readily be converted' into

operable firearms."  *See* Gun Violence Prevention Groups Amicus Br. at 8.  And by

their telling, since (A) covers objects designed, intended, or readily converted into

weapons, "(B) includes near-complete frames or receivers as well, so long as they

are 'designed to' be or may 'readily be converted' into the frame or receiver of an

operable firearm."  *Id.* at 8-9.  That convoluted reading suffers from several

defects—which presumably explains why the government has not advanced that

argument in any of the many briefs it has filed in the district court, in this Court, and

at the Supreme Court.[5]

---

[4] To the extent ATF's new regulation is a legislative rule, *see Mock*, 2023 WL 4882763 at *23-31, then presumably post hoc rationalizations of any kind—much less those found in an amicus brief—cannot sustain the Final Rule under *Chenery*. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 707 F.2d 548, 561 (D.C. Cir. 1983) (explaining that the *Chenery* rule applies to "agency decisions made pursuant to … legislative rulemaking").

[5] Those omissions are telling.  "A longstanding 'want of assertion of power by those who presumably would be alert to exercise it' may provide some clue that the power was never conferred."  *Biden v. Nebraska*, 143 S.Ct. 2355, 2383 (2023) (Barrett, J., concurring) (quoting *FTC v. Bunte Bros.*, 312 U.S. 349, 352 (1941)).  In

To the contrary, while the Gun Violence Prevention Groups argue that the phrase "designed to or may readily be converted" extends to the "frame or receiver" clause, Gun Violence Prevention Groups Amicus Br. at 9, the government (in 2021) argued the precise opposite:

> Importantly, the "designed to" and "readily be converted" language are only present in the first clause of the statutory definition. 18 U.S.C. §921(a)(3)(A). Therefore, an unfinished frame or receiver does not meet the statutory definition of "firearm" simply because it is "designed to" or "can readily be converted into" a frame or receiver. Instead, a device is a firearm either: (1) because it *is* a frame or receiver or; (2) it is a device that is designed to or can readily be converted into a device that "expel[s] a projectile by the action of an explosive." *Id.* §921(a)(3)(A)-(B).

Br. of United States at 4, *Syracuse v. ATF*, No. 1:20-cv-06885 (S.D.N.Y. filed Jan. 29, 2021), Dkt.98; *see also id.* at 26 (explaining why "An Unmachined Frame or Receiver Cannot Be Readily Converted Into a Device that Expels a Projectile"). That makes sense, as amici's argument ignores that the words "designed to or may readily be converted to" do not stand in isolation in part (B); only something that "is designed to or may readily be converted to *expel a projectile by the action of an explosive*" falls within part (B). 18 U.S.C. §921(a)(3)(A) (emphasis added). Yet there is no argument that frames or receivers fit that definition. They must be paired

---

the same way, that the government has not embraced this novel defense of its rule is itself powerful evidence that it is not viable.

with *other* parts to "to expel a projectile by the action of an explosive"—and that goes double for items which must be converted to frames or receivers.

Consider another example. Suppose a statute defined a "racecar" as "(a) a vehicle which can or is designed to or can readily be converted to go over 180 miles per hour or (b) the engine of any such vehicle." And suppose an unfinished engine can, with some work, become capable of NASCAR speeds. Before that work is done, would anyone think that subpart (a) and the subsequent "such vehicle" meant that the unfinished engine was already a "racecar"? Clearly not. One does not usually think of an engine as a racecar at all, and until the engine has both been souped up and joined with the other necessary parts of a car, it cannot "go over 180 miles per hour." Indeed, by itself, it cannot *go* an inch. Just so here.

In all events, whatever else might be said of them, neither the government's reading nor amici's alternative is a remotely natural one. But courts "interpret criminal statutes, like other statutes, in a manner consistent with ordinary English usage." *Nichols v. United States*, 578 U.S. 104, 111 (2016). And the criminal law must "give ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 576 U.S. 591, 595 (2015). If the text of the GCA is as twisted as the government's interpretation or amici's recursive reading suggest, then it can hardly be said to give fair notice of what the law demands on pain of imprisonment. *See also infra* pp.17-19.

\*    \*    \*

"Administrative rulings cannot add to the terms of an act of Congress and make conduct criminal which such laws leave untouched." *United States v. Standard Brewery*, 251 U.S. 210, 220 (1920).  The district court rightly concluded that ATF's attempt to regulate items that can be "readily converted" into frames and receivers is *ultra vires*.  And neither the government nor its amici have identified any reason to disturb that conclusion.

## II.    Lenity And Constitutional Avoidance Buttress The Decision Below.

ATF's regulatory overreach is particularly troubling because the GCA creates criminal liability and implicates fundamental constitutional rights.  "Violating the GCA exposes one to criminal penalties," *Mock*, 2023 WL 4882763 at \*4; *see also* 18 U.S.C. §§922, 924, and ATF's rule has significant implications for Second Amendments rights since it directly regulates critical components of protected arms, *see Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring).  Accordingly, while the district court's reading of the statute is the right one, to the extent this Court considers the statutory text unclear, both the rule of lenity and the canon of constitutional avoidance counsel against blessing ATF's maximalist reading of "frame or receiver."

"The 'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly.'" *Wooden v. United States*, 142 S.Ct. 1063, 1082

(2022) (Gorsuch, J., concurring) (quoting *The Adventure*, 1 F.Cas. 202, 204 (C.C.D. Va. 1812) (Marshall, C.J.)).  That time-tested principle both reflects and supports the separation of powers.  In our constitutional order, only Congress—"[t]he legislative authority of the Union"—can "make an act a crime."  *United States v. Hudson*, 11 U.S. (7 Cranch) 32 (1812); *accord United States v. Davis*, 139 S.Ct. 2319, 2323 (2019).  As the Supreme Court has repeatedly explained, "because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity."  *United States v. Bass*, 404 U.S. 336, 348 (1971).  And what is true for courts is just as true for executive agencies.  In either case, respecting the exclusively legislative function of determining what conduct should be a federal crime demands enforcing concomitant limits on the other branches' powers.

That the Executive is tasked with enforcing criminal laws does not give it greater latitude to interpret them.  In fact, the Supreme Court has been pellucid that "criminal laws are for courts, not for the Government, to construe."  *Abramski v. United States*, 573 U.S. 169, 191 (2014).  The government's bald assertion that Congress left "it to ATF to [define frame or receiver] in interpreting the statutory terms," USG.Br.23, is thus simply not so.  Indeed, the fear of "hand[ing] responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges" is one of the motivating forces behind the prohibition on vague criminal

laws. *Davis*, 139 S.Ct. at 2325. And "making ATF the expositor, executor, *and* interpreter of criminal laws," *Cargill v. Garland*, 57 F.4th 447, 471 (5th Cir. 2023) (en banc) (quoting *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (Tymkovich, C.J., dissenting)), poses a very real risk of locking up citizens for doing things that the legislature has not actually prohibited.

For all those reasons, the rule of lenity bolsters the district court's decision. While the district court correctly concluded that the plain text of the GCA forecloses ATF's power grab, at a bare minimum, the statute is ambiguous on that point. Indeed, ATF itself took the position for decades that the statute did *not* encompass unfinished frames and receivers. *See* VanDerStok.Resp.Br.21 (citing *Are "80%" or "unfinished" receivers illegal?*, ATF, https://bit.ly/3OEDgFt). That is powerful evidence that the statute does not clearly mean what ATF now claims. Moreover, whereas the agency's prior position had the benefit of offering relative clarity and a measure of certainty to industry and individuals (in addition to having a firm grounding in statutory text), ATF's new standard offers neither—a problem both illustrated and compounded by the fact that ATF apparently plans to assess whether an otherwise-unformed hunk of metal is "readily" convertible into a frame or receiver based on an eight-factor balancing test. *See* 27 C.F.R. §479.11; *cf. Wooden v. United States*, 142 S.Ct. 1063, 1080 (2022) (Gorsuch, J., concurring) ("Multi-factor balancing tests of this sort, too, have supplied notoriously little guidance in

many other contexts, and there is little reason to think one might fare any better here."). Accordingly, the rule of lenity counsels strongly against allowing the agency to exploit any ambiguity in the statute. *See Cargill*, 57 F.4th at 470 (holding that the rule of lenity applied where the Court was "wholly persuaded that if the definition of 'machinegun' does not unambiguously exclude non-mechanical bump stocks, its inclusion of the latter is at the very least ambiguous"); *see also Melton v. Phillips*, 875 F.3d 256, 265 n.8 (5th Cir. 2017) (en banc) ("This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum.").

So does the canon of constitutional avoidance. Under that time-tested principle, "when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S.Ct. 830, 836 (2018); *see, e.g.*, *Crowell v. Benson*, 285 U.S. 22, 62 (1932); *Hooper v. California*, 155 U.S. 648, 657 (1895). ATF's interpretation raises just such serious constitutional doubts.

The Second Amendment safeguards "the right of the people to keep and bear Arms," U.S. Const., amend. II, which necessarily encompasses things necessary to make the right to keep and bear arms meaningful. *See, e.g.*, *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) ("'[T]he right to possess firearms for protection implies a corresponding right' to obtain the bullets necessary

to use them."); *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) ("[T]he right to maintain proficiency in firearm use" is "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense."); *Mock*, 2023 WL 4882763, at *21    (Willett, J., concurring) ("[P]rotected Second Amendment 'conduct' likely includes making common, safety-improving modifications to otherwise lawfully bearable arms."); *Boland v. Bonta*, 2023 WL 2588565, at *5 (C.D. Cal. Mar. 20, 2023) ("The Second Amendment also protects attendant rights that make the underlying right to keep and bear arms meaningful."); *Guns Save Life, Inc. v. Ali*, 190 N.E.3d 139, 145 (Ill. 2021) (recognizing "a law-abiding citizen's right to acquire a firearm and the necessary ammunition for self-defense").

Because people cannot obtain arms unless arms are actually available, "the right to keep and bear arms implies a corresponding right to manufacture arms." *Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022).  Indeed, that right belongs to individuals as much as industry.  By imposing constraints on the citizenry's ability to acquire materials for the manufacture of privately made firearms, the Final Rule burdens that constitutionally protected conduct.  And given the importance of history to Second Amendment analysis, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111, 2131 (2022) ("It is this balance—struck by the traditions of the American people—that demands our unqualified deference."), it

bears emphasis that "there were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 35, 78 (2023). Accordingly, if the GCA does all that ATF claims, then there is a serious question whether the burdens it imposes on constitutional rights can be squared with "the traditions of the American people." *Bruen*, 142 S.Ct. at 2131.

That is precisely the kind of question that the constitutional avoidance canon counsels against answering when another reading of the statute is available: "[W]hen there are two reasonable constructions for a statute, yet one raises a constitutional question, the Court should prefer the interpretation which avoids the constitutional issue." *See, e.g.*, *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 545 (2001). As with the rule of lenity, this canon also mitigates against endorsing ATF's maximalist account of the GCA.

## III.    The Final Rule Is Part And Parcel Of A Troubling Trend Of Regulatory Overreach By ATF, And Upholding It Would Have Profound Consequences For The Firearms Industry And The People It Serves.

Statutory text and bedrock interpretative tools suffice to resolve this case. But as this Court's recent cases show, ATF has taken an aggressive approach to the interpretation of the statutory regime governing NSSF's members and others. Understood in that context, the importance of checking the overambitious interpretation propounded by the rule here is made all the clearer.

Consider, for instance, ATF's recent bump stock rule.  As this Court explained in *Cargill*:

> When ATF first considered the type of bump stocks at issue here, it understood that they were not machineguns.  ATF maintained this position for over a decade, issuing many interpretation letters to that effect to members of the public.  But ATF reversed its longstanding position in 2018, subjecting anyone who possessed a bump stock to criminal liability.

57 F.4th at 450.  The law had not changed at any point, but the agency's goals had.  And so regulated parties were forced into federal court to stave off the risk of facing criminal penalties based on ATF's novel and aggressive interpretation of the law.

The same pattern was on display in *Mock v. Garland*.  That case concerned ATF's recent about-face on stabilizing arm braces for pistols.  ATF previously expressly determined that stabilizing arm braces could be affixed to pistols without converting them into "rifles" within the meaning of the National Firearms Act, 26 U.S.C. §5845(c), or "short-barreled rifle[s]" under the GCA, 18 U.S.C. §921(a)(7)-(8).  *See* 88 Fed. Reg. 6,479-6,480.  For almost a decade, manufacturers and individuals alike relied on that interpretation as arm braces grew in popularity.  *See id.* at 6,479.  ATF then abruptly changed its mind, concluding that "millions of Americans were committing a felony the entire time they owned a braced pistol." *Mock*, 2023 WL 4882763 at *15.  After careful review of the rulemaking process, this Court concluded that ATF's "Final Rule was not a logical outgrowth of the Proposed Rule, and the monumental error was prejudicial." *Id.* at *19.

These sorts of regulatory shifts have profound consequences for the citizenry and members of the firearms industry. NSSF's members are heavily regulated, and everything up to and including criminal liability is possible for violations of the intricate legal regime governing their conduct. In the case of both bump stocks and pistol braces, industry relied on guidance from ATF about the metes and bounds of a statutory regime, and thus engaged in the production and sales of products that had been deemed legal. By completely reversing its position on the legality of those products, ATF pulled the rug out from under regulated entities and suddenly created the possibility of prosecution for conduct it has previously blessed.

The same pattern has played out here. As ATF has acknowledged, its new rule will sweep into its regulatory ambit—and create potential criminal liability for—much that did not fall within it before. *See* 87 Fed. Reg. at 24,694 ("the Department will not grandfather ATF determinations that a partially complete, disassembled, or nonfunctional frame or receiver, including a parts kit, was not, or did not include, a firearm 'frame or receiver' as defined prior to this rule, including those where ATF determined that the item or kit had not yet reached a stage of manufacture to be one."). That kind of 180-degree change in regulatory practice not only foists uncertainty and instability on members of the firearms industry—as it would for any industry—but also leaves industry members guessing whether their next popular product will become a font of criminal liability overnight notwithstanding prior and

express determinations to the contrary from their regulator. That makes it all the more critical for courts to continue checking ATF's persistent overreach.

*       *       *

In sum, the district court's decision is eminently correct, as ATF's novel effort to expand the GCA's "frame or receiver" defies statutory text and structure. Worse still, ATF seeks to expand the scope of a criminal law that governs conduct protected by the Second Amendment, implicating both the rule of lenity and the canon of constitutional avoidance. At bottom, "[w]hen a regulation attempts to override statutory text, the regulation loses every time." *Djie v. Garland*, 39 F.4th 280, 285 (5th Cir. 2022). The district court was correct to so hold here.

## CONCLUSION

For the reasons set forth above as well as in the Appellees' briefing, this Court should affirm the district court's judgment.

Respectfully submitted,

s/Erin E. Murphy
PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Supervised by principals of the firm who are members of the Virginia Bar

**Counsel for** Amicus Curiae *National Shooting Sports Foundation, Inc.*

August 25, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF COMPLIANCE**

I certify that:

1) This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,215 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32.2.

2) This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

3) Any required privacy redactions have been made pursuant to Circuit Rule 25.2.13, the electronic submission is an exact copy of the paper submission, and the brief has been scanned for viruses using Windows Defender and is free of viruses.

August 25, 2023

s/Erin E. Murphy
Erin E. Murphy